**POLSINELLI LLP**
Randye B. Soref (SBN 99146)
Tanya Behnam (SBN 322593)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:     310.556.1801
Facsimile:      310.556.1802
Email:          rsoref@polsinelli.com
Email:          tbehnam@polsinelli.com

*Attorneys for Panthers Capital LLC*

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>CIS INTERNATIONAL HOLDINGS (N.A.) CORPORATION,<br><br>　　　　　Debtor. | Case No. 2:25-bk-18374-BR<br><br>Chapter 7<br><br>**PANTHERS CAPITAL LLC'S MOTION TO RECONSIDER ORDER APPROVING STIPULATION BETWEEN DEBTOR AND PETCO FOR TURNOVER**<br><br>Hearing:<br><br>[To Be Determined By The Court] |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

Panthers Capital LLC's ("**Panthers**") hereby moves this Court (the "**Motion**") pursuant to Federal Rule of Bankruptcy Procedure 9024, Federal Rule of Civil Procedure 60(c), Local Bankruptcy Rule 9013-4, and 28 U.S.C. §157(c)(1), to reconsider the *Order Approving Stipulation Between Debtor and Petco for Turnover* [Docket No. 22] (the "**Petco Order**"). In the event the Court sets a hearing on the Motion, Panthers will serve the Motion and all supporting pleadings in accordance with Local Bankruptcy Rule 9013-1 and provide notice of the Motion in accordance with Local Bankruptcy Rule 9013-1(f) and (h).

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

106975898

1

Respectfully submitted,

2

3    Dated:    November 6, 2025                    POLSINELLI LLP

4

5                                        By:    _____
                                                        */s/ Tanya Behnam*
6                                                       Randye B. Soref
                                                        Tanya Behnam
7
                                               *Attorneys for Panthers Capital LLC*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**
106975898

# <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND ......................................................................................... 2

    A. The Factoring Agreement ................................................................. 2

    B. Panthers' UCC Filing ....................................................................... 4

    C. CSC's UCC-3 Termination ............................................................... 4

    D. Debtor's Default ............................................................................... 5

    E. Panthers' Breach of Contract Lawsuit ............................................. 5

    F. The Bankruptcy Case ....................................................................... 5

III. ARGUMENT .............................................................................................. 8

    A. Legal Standard ................................................................................. 8

    B. Reconsideration of the Petco Order Is Warranted under Rules 60(b)(3),
       (4), and (6). ........................................................................................ 8

    C. Relief Is Warranted under Rule 60(b)(3) Because the Order Was Obtained
       through Misrepresentation and Prevented a Full and Fair Presentation of
       the Facts. ........................................................................................... 9

    D. The Petco Order Violates Panthers' Due Process Rights, and is therefore
       Void Under Rule 60(b)(4). ................................................................ 13

    E. Alternatively, Relief is Warranted under Rule 60(b)(6) Because Debtor's
       Failure to Provide Notice and Withholding of Material Facts from the
       Court Constitute Extraordinary Circumstances Justifying Reconsideration
       of the Petco Order. ........................................................................... 14

IV. REQUEST FOR ACCOUNTING ............................................................... 16

V. CONCLUSION ........................................................................................... 17

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**
106975898

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aarons*,
    No. 2:19-BK-18316-NB, 2024 WL 3085754 (Bankr. C.D. Cal. June 21, 2024) ...................15

*Anthony California, Inc. v. Fire Power Co.*,
    No. EDCV 15-876-JGB, 2018 WL 6240845 (C.D. Cal. Aug. 9, 2018) ................................12

*Bailey v. United States*,
    250 F.R.D. 446 (D. Ariz. 2008), *aff'd*, 384 F. App'x 670 (9th Cir. 2010).............................10

*Bunch v. United States*,
    680 F.2d 1271 (9th Cir. 1982) ...........................................................................................9

*Cmty. Dental Servs. v. Tani*,
    282 F.3d 1164 (9th Cir. 2002) .....................................................................................15, 16

*Cox v. Horn*,
    757 F.3d 113 (3d Cir. 2014)..............................................................................................14

*In re Ctr. Wholesale, Inc.*,
    759 F.2d 1440 (9th Cir. 1985) ..........................................................................................13

*De Saracho v. Custom Food Mach.*,
    206 F.3d 874 (9th Cir. 2000) ..........................................................................................9, 12

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*,
    495 F.3d 1062 (9th Cir. 2007) ..........................................................................................11

*Dusenbery v. United States*,
    534 U.S. 161 (2002)..........................................................................................................13

*Dynamic Changes Hypnosis Ctr., Inc. v. PCH Holding, LLC*,
    306 B.R. 800 (E.D. Va. 2004)............................................................................................13

*In re Eachpole, Inc.*,
    No. 20-10956-ABL, 2025 WL 351823 (Bankr. D. Nev. Jan. 24, 2025) ...............................10

*In re Firrone*,
    272 B.R. 213 (Bankr. N.D. Ill. 2000) ................................................................................10

*In re Franklin*,
    No. 24-22967, 2025 WL 2413118 (Bankr. E.D. Cal. Aug. 19, 2025).....................................9

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

106975898

*In re Greenstein*,
   576 B.R. 139 (Bankr. C.D. Cal. 2017), *aff'd*, 589 B.R. 854 (C.D. Cal. 2018),
   *aff'd*, 788 F. App'x 497 (9th Cir. 2019) ................................................................13

*Harvest v. Castro*,
   531 F.3d 737 (9th Cir. 2008) ................................................................14

*In re Jacobson*,
   676 F.3d 1193 (9th Cir. 2012) ................................................................10, 11

*In re Keese*,
   671 F. Supp. 3d 1053 (C.D. Cal. 2023) ................................................................10

*Klapprott v. United States*,
   335 U.S. 601 (1949) ................................................................14

*Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*,
   791 F.2d 1334 (9th Cir. 1986) ................................................................9, 12

*Latshaw v. Trainer Wortham & Co.*,
   452 F.3d 1097 (9th Cir. 2006) ................................................................9, 14

*In re Martin's Aquarium, Inc.*,
   225 B.R. 868 (Bankr. E.D. Pa. 1998) ................................................................16

*Matanuska Valley Farmers Coop. Ass'n v. Monaghan*,
   188 F.2d 906 (9th Cir. 1951) ................................................................11

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
   970 F.3d 133 (2d Cir. 2020) ................................................................14

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................13

*Nevitt v. United States*,
   886 F.2d 1187 (9th Cir. 1989) ................................................................8

*Schepp v. Langmade*,
   416 F.2d 276 (9th Cir. 1969) ................................................................8

*Union Pac. R. Co. v. Chicago M. St. P. & P. R. Co.*,
   549 F.2d 114 (9th Cir. 1976) ................................................................11

*United States v. Sierra Pac. Indus., Inc.*,
   862 F.3d 1157 (9th Cir. 2017) ................................................................12

*United States v. Sparks*,
   685 F.2d 1128 (9th Cir. 1982) ................................................................14

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

106975898

*United Student Aid Funds, Inc. v. Espinosa,*
        559 U.S. 260 (2010)..................................................................................................13

**Statutes**

*11 U.S.C. § 542* ........................................................................................1, 6, 9, 10

**Other Authorities**

Fed. R. Civ. P. 60(b) ...........................................................................................8

Fed. R. Civ. P. 60(c) ...........................................................................................8

Fed. R. Bankr. P. 9024..........................................................................................8

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

106975898

## I.    **INTRODUCTION**

The Petco Stipulation (defined below), entered into by CIS International Holdings (N.A.) Corporation ("**Debtor**") and Petco Animal Supplies, Inc. ("**Petco**") less than two weeks into this bankruptcy case, represents an egregious attempt by Debtor to mislead the Court and circumvent Panthers' ownership and due process rights, all in the name of "avoid[ing] motion practice." *Stipulation for Turnover (11 U.S.C. § 542) Between CIS and Petco* ("**Petco Stipulation**") [Docket No. 15], at p. 2. Under the Petco Stipulation, Debtor and Petco agreed, without consultation with, the consent of, or notice to Panthers, that it would alter the terms of the Three-Party Agreement (defined below) to which (i) each of Debtor, Petco, and Panthers are party to, and (ii) explicitly required Panthers' written consent to amend and/or modify.

Panthers has owned all of Debtor's accounts receivable generated by Debtor's sales to Petco since Debtor and Panthers entered into a Factoring Agreement in December 2024. Using the Petco Stipulation, however, Debtor and Petco orchestrated a bilateral modification of an existing and enforceable contract whereby Petco would remit the accounts receivable owned by Panthers directly to Debtor. Such bilateral agreement is in direct contravention to and in violation of the Three-Party Agreement.

Both Debtor's conduct surrounding the filing of the Petco Stipulation and the face of the Petco Stipulation itself reveal that the Debtor intentionally concealed the true nature and impact of the Petco Stipulation from both Panthers and the Court. Panthers never received notice of the Petco Stipulation, either before or after it was filed, and was only made aware of the existence of the Petco Stipulation *after* it was approved by Court Order. Additionally, the Petco Stipulation fails to disclose Panthers' ownership rights over the relevant accounts receivable, and did not even bother to attach copies of either the underlying Factoring Agreement or the Three-Party Agreement.

Accordingly, Panthers moves the Court to reconsider the Petco Order. Debtor procured the Petco Order by misleading the Court and depriving Panthers of its property rights without proper notice or opportunity to be heard. The interests of justice and due process, therefore, require the Court vacate the Petco Order and grant relief under Federal Rule of Civil Procedure 60(b).

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

106975898

## II. **BACKGROUND**

### A. **The Factoring Agreement**

1. On or about December 1, 2024, Debtor and Panthers entered into that certain *Factoring Facility Agreement* (the "**Factoring Agreement**"), pursuant to which Panthers agreed to purchase certain unencumbered invoices of an account receivable ("**Factor Account**") and sign exclusive payment rights of the Factor Account to Panthers of Debtor up to a maximum of $3,000,000.00 at any given time. A true and correct copy of the Factoring Agreement is attached to the *Declaration of Benjamin Isaacov in Support of Panthers Capital LLC's Notice of Motion and Motion to Reconsider Order Approving Stipulation Between Debtor and Petco for Turnover* (the "**Isaacov Declaration**"), at Exhibit A thereto. (Isaacov Declaration, at ¶ 2).

2. Charitha I. Samarasinghe, CIS International Distributors Inc., Live Aquaria Holdings Corp., Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics, Siam Tropical Fish Ltd., and Tropical Aquarium Fish (Fiji) Ltd. (collectively, the "**Factoring Guarantors**") jointly and severally guaranteed Debtor's obligations under the Factoring Agreement, as evidenced by the Guaranty of Performance executed by each of the Guarantors and incorporated within the Factoring Agreement (the "**Factoring Guaranty**"). (Isaacov Declaration, at ¶ 3).

3. To establish Panthers' ownership in the Petco accounts receivable, Debtor pledged and absolutely assigned to Panthers all of Debtor's right, title, and interest in the following:

> 19.1. All accounts, including without limitation, all deposit accounts, accounts receivable, and other receivables, as those terms are defined by Article 9 of the Uniform Commercial Code (the "**UCC**"), now or hereafter owned or acquired by Seller; and
>
> 19.2 All Seller's proceeds, as such term is defined by Article 9 of the UCC. (collectively, the "**Collateral**")

(Factoring Agreement, at ¶ 19; Isaacov Declaration, at ¶ 4).

4. The Factoring Agreement specifies an *absolute assignment* of accounts by Debtor to Panthers (the "**Factoring Assignment**"). Specifically, under the terms of the Factoring Agreement, Debtor assigned to Panthers "as absolute owner…all accounts receivable created now

2

or in the future by Debtor's credit sales" to Petco Animal Supplies Stores, Inc. ("**Petco**", and the "**Petco A/R**"). The Factoring Assignment clause states:

> 1.1 **Assignment of Accounts Receivable.** Seller hereby assigns to Purchaser as absolute owner, and Purchaser purchases and accepts from Seller without recourse to Seller, except as set forth in this Agreement, all accounts receivable created now or in the future by Seller's credit sales to Petco. Such accounts receivable are acceptable to Purchaser and represented by Seller to be bona fide existing obligations of Petco, arising out of and acquired by it in the ordinary course of its business. These accounts receivable are or will be due and owing to Seller without defense, offset, or counterclaim. For purposes of this Agreement, accounts receivable include all accounts, notes, trade acceptances, bills of exchange, pledges, mortgages, choses in action, or any other form of obligation.

(*See* Factoring Agreement, at ¶ 1.1; Isaacov Declaration, at ¶ 5).

5.      Upon execution of the Factoring Agreement and Factoring Guaranty by Debtor and the Factoring Guarantors, Panthers purchased certain invoices of Debtor, Debtor assigned exclusive payment rights of the Factor Account to Panthers, and Panthers began to advance funds to Debtor in accordance with the terms and conditions set forth in the Factoring Agreement. (Isaacov Declaration, at ¶ 6).

6.      On December 4, 2024, Panthers, Debtor, and Petco entered into that certain *Three-Party Addendum to Factoring Facility Agreement* ("**Three-Party Agreement**") whereby to induce further funding by Panthers, Petco and Debtor specifically agreed that on and after November 27, 2024, all Petco A/R owed to Debtor shall be paid to Panthers. A true and correct copy of the Three-Party Agreement is attached to the Isaacov Declaration as Exhibit B thereto. (Isaacov Declaration, at ¶ 7).

7.      The Three-Party Agreement states as follows:

> **Amendment and Modification**. This Agreement may only be amended, modified or supplemented by an amendment in writing signed by **all** Parties. (Emphasis added).

(Three-Party Agreement, at ¶ 11) (emphasis added).

8.      From November 2024 through April 2024, Petco asked Panthers to stabilize Debtor, a Petco key supplier, by purchasing Debtor's receivables and paying off pressing UCC lienholders so that Petco could continue to receive product without disruption. Panthers did so, paying off multiple creditors and obtaining UCC terminations or UCC restraint lifts on Petco,

which allowed Petco to resume and continue remitting pursuant to the Three-Party Agreement. **True and correct copies of the relevant email exchange between Petco and Panthers and the various UCC lifts and terminations** are attached to the Isaacov Declaration as Exhibits C-R thereto. A ledger tracking advances made by Panthers to pay off other creditors is attached to the Isaacov Declaration as Exhibit S thereto. (Isaacov Declaration, at ¶ 9).

9.       Pursuant to the Factoring Agreement, Debtor consented to the jurisdiction of the courts of the State of Connecticut, with Connecticut law governing all matters arising thereunder. (Isaacov Declaration, at ¶ 10).

10.       Panthers is, and at all relevant times has been, the lawful owner and holder of the Factoring Agreement. (Isaacov Declaration, at ¶ 11).

B.       **Panthers' UCC Filing**

11.       To perfect its security interest in future Petco A/R and establish its priority lien interest in the Collateral, Panthers noticed and filed a UCC-1 Financing Statement with the State of California Office of the Secretary of State on November 18, 2024, as File No. **U240089083636 (the "UCC Financing Statement"). A true and correct copy of the UCC Sta**tement is attached to the Isaacov Declaration as Exhibit T thereto.  (Isaacov Declaration, at ¶ 12).

C.       **CSC's UCC-3 Termination**

12.       In April 2025, Panthers flagged a public UCC-1 filing against the Collateral filed by Corporation Service Company ("**CSC**"), in its capacity as representative of Settle Funding, LLC ("**Settle**") against "all assets and personal property of Debtor" (the "**CSC Financing Statement**"). **A true and correct copy of the CSC Financing Sta**tement is attached to the Isaacov Declaration as Exhibit U thereto.  (Isaacov Declaration, at ¶ 13).

13.       After discovering the CSC Financing Statement, Debtor's principal, Charitha Samarasinghe ("**Sam**")[1], provided Panthers with a UCC-3 termination showing that CSC's lien was paid in full (the "**CSC Termination Statement**"). **A true and correct copy of the CSC**

---

[1] The Debtor's Petition [Docket No. 1] states that Sam is the President and 90% shareholder of the Debtor. The Debtor's Statement of Financial Affairs, at Section 28, states Sam is the Chief Executive Officer and Varuna Samarasinghe is the other shareholder presumably holding the remaining 10%. [Docket No. 65].

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

106975898

**Termination Sta**tement is attached to the Isaacov Declaration as Exhibit V thereto. Panthers relied on the CSC Termination Statement and continued purchasing Debtor's Petco receivables in good faith. (Isaacov Declaration, at ¶ 14).

14.    On or around July 2025, Panthers engaged in email correspondence with Settle. In that correspondence, Settle asserted that it never authorized the CSC Termination Statement and then promptly filed corrective statements. (Isaacov Declaration, at ¶ 15).

### D.    Debtor's Default

15.    Debtor defaulted on the Factoring Agreement in July 2025 by engaging in actions that violated and undermined Panthers' contractual rights. Specifically, and without limitation, Debtor (i) misrepresented the unencumbered status of certain invoices submitted to Panthers, (ii) submitted identical invoices to Panthers that it had previously sold to Panthers, (iii) subsequently sold invoices to third parties that were already sold to Panthers. (Isaacov Declaration, at ¶ 16).

### E.    Panthers' Breach of Contract Lawsuit

16.    On August 5, 2025, Panthers filed a Summons and Complaint in the State of Connecticut's Stamford JD Superior Court, against Debtor and the Guarantors for breach of contract, fraudulent misrepresentation, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act. Panthers filed an amended complaint on August 27, 2025 (the "**Amended Complaint**"). A true and correct copy of the Amended Complaint is attached to the Isaacov Declaration as Exhibit W thereto. (Isaacov Declaration, at ¶ 17).

### F.    The Bankruptcy Case

17.    On September 22, 2025 (the "**Petition Date**"), Debtor filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Central District of California [Docket No. 1].

18.    As of the Petition Date, Panthers is owed approximately $529,332.14 under the

Factoring Agreement and $1,281,948.00 under the MCA Agreement[2], plus attorney's fees and costs.[3] (Isaacov Declaration, at ¶ 18).

19.    Debtor's debt to Panthers continues to increase. As of the filing of this Motion, Panthers is owed approximately $1,811,280.14. (Isaacov Declaration, at ¶ 19).

20.    On October 3, 2025, before counsel for Panthers appeared in this case, without notice or service to Panthers and without an opportunity to object and/or request a hearing, Debtor and Petco entered into and filed the Petco Stipulation. (Isaacov Declaration, at ¶ 20).

21.    The Petco Stipulation stated the "Debtor shall serve this Stipulation on Panthers contemporaneously with filing, and will subsequently file a proof of service." (Isaacov Declaration, at ¶ 21).

22.    Panthers did not receive service of the Petco Stipulation on October 3, 2025, nor did Debtor file proof of service as it claimed it would in the Petco Stipulation. (Isaacov Declaration, at ¶ 22).

23.    Instead, four (4) days after the Petco Stipulation was filed and without notice to Panthers and an opportunity to object and request a hearing, the Petco Order was entered on October 7, 2025 [Docket No. 22].

24.    On October 8, 2025, one day *after* the Petco Order was entered, Debtor filed its *Declaration of Service Re: Stipulation and Order Approving Stipulation Between Debtor and Petco for Turnover* (11 U.S.C. § 542) (the "**October 8 Proof of Service**") [Docket No 23]. As reflected therein, Debtor waited for the Petco Order to be entered before serving Panthers with the Petco Stipulation and the Petco Order via Email and U.S. Mail on October 8, 2025.

25.    The Three-Party Agreement, at ¶ 11, states "This Agreement may only be amended, modified or supplemented by an amendment in writing **signed by all Parties**." (Emphasis Added).

---

[2] The MCA Agreement is more thoroughly described in and attached to the Declaration of Benjamin Isaacov in support of Panthers' oppositions to the Emergency Motions at Docket No. 59, paragraphs 11-18 and Exhibit C thereto.

[3] Each of the Factoring Agreement the MCA Agreement and the Three-Party Agreement provide for Panthers' entitlement to recover all reasonable attorney's fees and costs incurred seeking recovery of the Collateral. See Factoring Agreement, at ¶ 13, MCA, at ¶ 28, and Three-Party Agreement, at ¶ 4.

At no time did Panthers consent (in writing or orally) to the Petco Stipulation. (Isaacov Declaration, at ¶ 23).

26.     Following entry of the Petco Order, Petco ceased paying Panthers directly, as required by the Three-Party Agreement. (Isaacov Declaration, at ¶ 24).

27.     On October 9, 2025, counsel to Debtor sent Panthers an email requesting Panthers' consent to use Debtor's cash collateral on an emergency basis through October 14, 2025. (Isaacov Declaration, at ¶ 25).

28.     On October 10, 2025, Panthers filed the *Notice of Non-Consent to the Use of Cash Collateral* with the Bankruptcy Court (the "**Notice of Non-Consent**") [Docket No. 30].

29.     On October 10, 2025, Debtor filed *Debtor's Emergency Motion for Entry of an Order: (I) Authorizing the Debtor to Use Cash Collateral; (II) Scheduling Final Hearing; and (III) Granting Related Relief* (the "**Emergency Cash Collateral Motion**") [Docket No. 35], and *Debtor's Emergency Motion for Entry of an Order: (I) Authorizing the Debtor to Pay Prepetition Vendors in the Ordinary Course; (II) Authorizing Banks and Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Granting Related Relief* (the "**Emergency Critical Vendors Motion**") [Docket No. 34], among other emergency motions (collectively, the "**Emergency Motions**").

30.     On October 17, 2025, Panthers filed oppositions to the Emergency Cash Collateral Motion and the Emergency Critical Vendors Motion. *See Panthers Capital LLC's Opposition to Debtor's Emergency Motion for Entry of Order: (I) Authorizing the Debtor to Use Cash Collateral; (II) Scheduling Final Hearing; and (III) Granting Related Relief* and *Panthers Capital LLC's Opposition to Debtor's Emergency Motion for Entry of an Order: (I) Authorizing the Debtor to Pay Prepetition Vendors in the Ordinary Course; (II) Authorizing Banks and Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Granting Related Relief* at Docket Nos. 57 and 58, respectively.

31.     On October 21, 2025, the Court held a series of hearings on the Emergency Motions. At the October 21 hearings, the Court denied each of the Emergency Motions (*see* Docket

Nos. 73-78) and subsequently converted the bankruptcy case to Chapter 7 [Docket No. 80].

32. On October 23, 2025, a chapter 7 trustee was appointed. [Docket No. 81].

## III. ARGUMENT

### A. Legal Standard

Under Federal Rule of Civil Procedure ("**Rule**") 60(b), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024, a court may relieve a party from a final judgment or any order based on: "(3) fraud, misrepresentation, or misconduct by an opposing party… (4) the judgment is void…or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). A Rule 60(b) motion must be made within a reasonable time, and, with respect to subsections (b)(1) and (b)(3), "not more than one year after the judgment, order, or proceeding was entered or taken." *Nevitt v. United States*, 886 F.2d 1187, 1188 (9th Cir. 1989) (quoting Fed. R. Civ. P. 60(c)). Whether to grant relief under Rule 60(b) lies "within the sound discretion of the trial court." *Schepp v. Langmade*, 416 F.2d 276, 278 (9th Cir. 1969).

### B. Reconsideration of the Petco Order Is Warranted under Rules 60(b)(3), (4), and (6).

Relief from the Petco Order is warranted under Rule 60(b)(3), (4), and (6). Through the Petco Stipulation, Debtor and Petco deliberately (i) withheld from the Court that Panthers outright owns the Petco A/R under the Factoring Agreement, (ii) failed to disclose that the Three-Party Agreement required Petco to remit those receivables directly to Panthers, (iii) failed to disclose that the Three-Party Agreement prohibited modification without Panthers' written consent, and (iv) excluded Panthers as a party and provided no notice or opportunity to object before the Court entered the order. By concealing Panthers' ownership and omitting Panthers as a necessary party to any modification of the payment terms under the Three-Party Agreement, Debtor obtained the Petco Order through its fraudulent and deceitful misrepresentation to the Court, thus mandating relief under Rule 60(b)(3).

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**
106975898

1    Moreover, Debtor's failure to provide Panthers with notice of the Petco Stipulation and an

2    opportunity to be heard unfairly strips Panthers of its property in incontrovertible violation of its

3    due process rights, further warranting relief from the Petco Order pursuant to Rule 60(b)(4).

4    Finally, under Rule 60(b)(6), Debtor's withholding of material facts and its failure to

5    provide notice created extraordinary circumstances that caused concrete prejudice to Panthers by

6    unfairly stripping it of its property rights in the Petco A/R. Accordingly, the Petco Order cannot

7    stand.

8    **C.    Relief Is Warranted under Rule 60(b)(3) Because the Order Was Obtained**

9    **through Misrepresentation and Prevented a Full and Fair Presentation of the**

10    **Facts.**

11    Because Debtor obtained the Petco Order through misrepresentation and concealment of

12    material facts, relief under Rule 60(b)(3) is appropriate. Rule 60(b)(3) permits a court to relieve a

13    party from an order obtained through "fraud, misrepresentation, or misconduct by an opposing

14    party." Fed. R. Civ. P. 60(b)(3); *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1102 (9th

15    Cir. 2006). The rule "is aimed at [orders] which were unfairly obtained." *De Saracho v. Custom*

16    *Food Mach.*, 206 F.3d 874, 880 (9th Cir. 2000). To prevail on a claim under Rule 60(b)(3), the

17    moving party must establish by clear and convincing evidence the order "was obtained through

18    fraud, misrepresentation, or other misconduct," and "that the conduct complained of prevented the

19    moving party from fully and fairly presenting the case." *Lafarge Conseils Et Etudes, S.A. v. Kaiser*

20    *Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir. 1986); *Bunch v. United States*, 680 F.2d

21    1271, 1283 (9th Cir. 1982). "[B]oth intentional and unintentional misrepresentations and failures

22    to disclose are a sufficient basis for relief." *In re Franklin*, No. 24-22967, 2025 WL 2413118, at

23    *6 (Bankr. E.D. Cal. Aug. 19, 2025).

24    Debtor and Petco knowingly entered into and filed the Petco Stipulation with the Court

25    *without* including Panthers as a necessary party. (Petco Stipulation, at p. 1). The Petco Stipulation

26    requests that the Court, under 11 U.S.C. § 542, authorize Petco to turnover the Petco A/R directly

27    to Debtor in contravention to the requirements of the Three-Party Agreement. (Petco Stipulation,

28

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

1  at pp. 1–2). In doing so, however, Debtor failed to disclose two material facts to the Court: (1) the

2  Petco A/R is owned by Panthers, and (2) the Three-Party Agreement cannot be modified without

3  Panthers' written consent.

4       First, in presenting the Petco Stipulation to the Court, Debtor conveniently withheld that

5  the Petco A/R is not property of the bankruptcy estate, but rather is owned by Panthers pursuant

6  to the Factoring Agreement. Indeed, under the terms of the Factoring Agreement, Debtor assigned

7  to Panthers "**as absolute owner…all accounts receivable created now or in the future by**

8  **Debtor's credit sales to Petco.**" (Factoring Agreement, at ¶ 1.1) (Emphasis added). In the Ninth

9  Circuit, a party seeking turnover must prove by a preponderance of the evidence that the property

10  at issue constitutes property of the estate. *In re Jacobson*, 676 F.3d 1193, 1201 (9th Cir. 2012); *In*

11  *re Keese*, 671 F. Supp. 3d 1053, 1063 (C.D. Cal. 2023) (explaining that "a trustee has the burden

12  of proof, by a preponderance of the evidence, to establish that the property is in the possession of

13  a noncustodial third party and the property constitutes property of the estate."); *see also In re*

14  *Eachpole, Inc.*, No. 20-10956-ABL, 2025 WL 351823, at *119 (Bankr. D. Nev. Jan. 24, 2025)

15  ("Recovery under 11 U.S.C. § 542 is limited to assets that are undisputedly property of the estate.")

16  (citations omitted). Debtor did not make such a showing.

17       As the Petco A/R belongs to Panthers—not Debtor—how could Debtor and Petco lawfully

18  stipulate to the turnover of property Debtor does not own? Debtor did not and cannot establish that

19  it is the rightful owner of the Petco A/R, and seemingly went to great lengths to conceal Panthers'

20  ownership of the Petco A/R from the Court. The Petco Stipulation does not describe either the

21  Factoring Agreement or Three-Party Agreement in any detail, and conveniently fails to attach a

22  copy of the very agreement it is seeking to modify. *See In re Firrone*, 272 B.R. 213, 215 (Bankr.

23  N.D. Ill. 2000) ("Rule 60(b)(3) misconduct includes withholding information that one is obliged

24  to disclose." (quotations omitted)); *see also Bailey v. United States*, 250 F.R.D. 446, 451 (D. Ariz.

25  2008), *aff'd*, 384 F. App'x 670 (9th Cir. 2010) (finding Rule 60(b)(3) is only applicable when a

26  party deliberately withholds evidence, misrepresents crucial information, or engages in other

27  conduct that prejudices their case). Had Debtor properly presented the Court with a copy of the

28

Factoring Agreement or Three-Party Agreement in conjunction with its stipulation request, the Court would have quickly discovered that the Petco A/R is not property of the bankruptcy estate, and therefore could not be turned over to Debtor. *In re Jacobson*, 676 F.3d 1193, 1201 (9th Cir. 2012).

Second, Debtor misled the Court by deceitfully withholding the terms of the Three-Party Agreement amended by the Petco Stipulation. Under that agreement, Petco is required to remit the Petco A/R directly to Panthers, and any modification to this arrangement expressly required "an amendment in writing **signed by all Parties**." (Three-Party Agreement, at ¶ 11) (emphasis added). Without disclosing these terms to the Court, Debtor sought to circumvent the express language of the Three-Party Agreement and unilaterally modify a three-party contract through a two-party stipulation, thereby depriving the Court of the ability to make a fully informed decision.[4] Case law is clear that a party cannot unilaterally modify the terms of a contract and "must obtain the other party's consent before doing so." *Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir. 2007); *Union Pac. R. Co. v. Chicago M. St. P. & P. R. Co.*, 549 F.2d 114, 118 (9th Cir. 1976) ("One party cannot unilaterally modify a contract without the consent of the other party"); *Matanuska Valley Farmers Coop. Ass'n v. Monaghan*, 188 F.2d 906, 909 (9th Cir. 1951) ("It is well established that parties to a contract can, *by mutual agreement*, modify… a contract…" (emphasis added)). Despite the clear terms of the Three-Party Agreement, Debtor made no effort to obtain Panthers' consent and instead induced the Court to approve a stipulation that effectively usurped Panthers' contractual rights and authorized turnover of receivables Debtor does not own.

In addition to Debtor's failure to obtain Panthers' written consent to the Petco Stipulation, Debtor failed to provide *any* notice of the Petco Stipulation to Panthers **before** it was filed. The relevant timeline is as follows:

On Friday, October 3, 2025 at 2:35 PM, Debtor filed the Petco Stipulation with the Court. The Petco Stipulation represented that Debtor "shall serve this Stipulation on Panthers

---

[4] As reflected in the Stipulation, the Debtor did not attach a copy of the Three-Party Agreement as an exhibit.

contemporaneously with filing, and will subsequently file proof of service." (Petco Stipulation, at ¶ 4). No certificate or other proof of service evidencing service of the Petco Stipulation on Panthers contemporaneously with the filing was filed by Debtor. Four days later, on Tuesday, October 7, 2025 at 2:28 PM, the Court entered the Petco Order. (Docket No. 22). On Wednesday, October 8, 2025 at 11:54 AM, Debtor's counsel filed its first proof of service reflecting that it served Panthers with a copy of both the Petco Stipulation and the Petco Order on October 8, 2025. (October 8 Proof of Service, at ¶ 3).

The Petco Stipulation explicitly stated that Debtor would serve the stipulation on Panthers contemporaneously with its filing, and subsequently file proof of service. (Petco Stipulation, at ¶ 4). In reality, however, Debtor did neither. Panthers never received a copy of the Petco Stipulation, and Debtor never filed proof of service confirming that it had served it. (Isaacov Declaration, at ¶ 22). It was only *after* the Court had already entered the Petco Order that Debtor finally served Panthers with the Petco Stipulation and Petco Order and filed its proof of service. (October 8 Proof of Service, at ¶ 3). Taken together, Debtor's actions suggest a calculated scheme to induce the Court to approve the Petco Stipulation while concealing the true ownership of the Petco A/R, its governing agreements, and to delay notice to Panthers to prevent its timely objection. Such an order, obtained through fraud, misrepresentation and concealment, is precisely the type of unfairly procured order that Rule 60(b)(3) is designed to remedy. *See De Saracho*, 206 F.3d at 880 (finding that Rule 60(b)(3) "is aimed at [orders] which were unfairly obtained."); *Lafarge*, 791 F.2d at 1338 (finding that relief is warranted where misrepresentation and misconduct prevents an opposing party from fully and fairly presenting its case).[5] Accordingly, the Court should grant Panthers relief from the Petco Order under Rule 60(b)(3).

---

[5] Debtor's conduct satisfies Rule 60(d)(3)'s "fraud on the court" standard—which is higher than Rule 60(b)(3)'s standard—as it reflects "an unconscionable plan or scheme… designed to improperly influence the court in its decision," where the misrepresentations "go to [a] central issue and affect the outcome of the case." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1167–68 (9th Cir. 2017) (quotation marks omitted) (noting that Rule 60(b)(3) imposes a lower bar than Rule 60(d)(3)); *Anthony California, Inc. v. Fire Power Co.*, No. EDCV 15-876-JGB (SPx), 2018 WL 6240845, at *2 (C.D. Cal. Aug. 9, 2018).

**D.      The Petco Order Violates Panthers' Due Process Rights, and is therefore Void Under Rule 60(b)(4).**

In addition to Debtor's material omissions, Debtor failed to provide Panthers with proper notice and an opportunity to be heard in opposition to the Petco Stipulation, in clear violation of Panthers' due process rights. Rule 60(b)(4) "applies only in the rare instance where a judgment is premised…on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *see also In re Greenstein,* 576 B.R. 139, 164 (Bankr. C.D. Cal. 2017), *aff'd,* 589 B.R. 854 (C.D. Cal. 2018), *aff'd,* 788 F. App'x 497 (9th Cir. 2019) (same).

It is well-settled that due process requires the owner of property to receive notice and an opportunity to be heard where his rights are affected. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated… to apprise interested parties of the… action and to afford them an opportunity to present their objections."); *Dynamic Changes Hypnosis Ctr., Inc. v. PCH Holding, LLC*, 306 B.R. 800, 809-10 (E.D. Va. 2004) ("Due Process… entitles parties whose property interests are at stake in a judicial proceeding to notice and an opportunity to be heard." (quoting *Dusenbery v. United States*, 534 U.S. 161 (2002) (quotations omitted)); *see e.g. In re Ctr. Wholesale, Inc.,* 759 F.2d 1440 (9th Cir. 1985) (finding cash collateral order was void because it violated due process by not affording junior secured creditor enough time to prepare and present its objections).

Due process itself "requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (internal quotations omitted). As detailed above, despite representing that it would serve notice contemporaneously with filing, Debtor's failure to timely serve Panthers with the Petco Stipulation *before* the Petco Order was entered deprived Panthers of any opportunity whatsoever to appear,

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

object to the Petco Stipulation, and protect its ownership interest in the Petco A/R.[6] Had Panthers been afforded notice and the opportunity to be heard, it could have presented an objection that would likely have altered the outcome of the Petco Order, presented a more complete factual record to the Court, and avoided the diversion of its duly-owned accounts receivable.

Debtor's failure to provide Panthers with notice of the Petco Stipulation resulted in a clear and unjust deprivation of Panthers' property rights and a violation of Panthers' due process rights. Accordingly, the Petco Order must be deemed void pursuant to Rule 60(b)(4).

**E.    Alternatively, Relief is Warranted under Rule 60(b)(6) Because Debtor's Failure to Provide Notice and Withholding of Material Facts from the Court Constitute Extraordinary Circumstances Justifying Reconsideration of the Petco Order.**

Relief from the Petco Order is further proper under Rule 60(b)(6). Rule 60(b)(6)'s catch-all provision allows a court to relieve a party from an order for any other reason—in addition to those specified in Rules 60(b)(1)–(5)—that justifies relief. *Latshaw*, 452 F.3d at 1102 (quoting Fed. R. Civ. P. 60(b)(6)). The rule gives a court "power to vacate judgments 'whenever such action is appropriate to accomplish justice.'" *United States v. Sparks*, 685 F.2d 1128, 1130 (9th Cir. 1982) (quoting *Klapprott v. United States*, 335 U.S. 601 (1949)). Courts exercising their broad discretion under Rule 60(b)(6) evaluate whether, in light of all the circumstances, denying relief would work an extreme or undue hardship and whether reopening the order is necessary "to prevent manifest injustice." *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (quoting *Latshaw*, 452 F.3d at 1102–03); *see also Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (finding that Rule 60(b)(6) "is properly invoked… when the judgment may work an extreme and undue hardship"); *Cox v. Horn*, 757 F.3d 113, 115 (3d Cir. 2014) (finding 60(b)(6) relief proper where "extraordinary circumstances" exist and "without such relief, an extreme and unexpected hardship would occur"). Relief under Rule 60(b)(6) is available in extraordinary

---

[6] And, realistically speaking, even if Debtor had contemporaneously served Panthers with a copy of the Petco Stipulation, how would it even have had sufficient time to object? The Petco Stipulation was filed on a Friday afternoon, and the resulting Petco Order was entered just four days later which included a two-day weekend.

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**
106975898

circumstances such as when a party demonstrates both injury and circumstances beyond its control prevented it from fully and fairly presenting its case. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) (finding Rule 60(b)(6) relief appropriate when a party demonstrates "both injury and circumstances beyond his control that prevented him from proceeding with the…defense of the action in a proper fashion").

The circumstances here *are* extraordinary. As outlined in detail above, Debtor failed to confer with Panthers before filing the Petco Stipulation, did not seek to include Panthers in the Petco Stipulation despite such stipulation (and the order thereon) effectuating a modification of the Three Party Agreement without Panthers' written consent, failed to disclose that Panthers owns the Petco A/R,[7] and did not provide notice until after the resulting Petco Order was entered, despite representing that it would serve notice contemporaneously with filing. (Petco Stipulation, at ¶ 4; October 8 Proof of Service, at ¶ 3). The Petco Order has resulted in a diversion of the Panthers-owned Petco A/R to Debtor (and now the Chapter 7 Trustee), directly causing Panthers specific and substantial prejudice and harm. If this is not an extraordinary circumstance, what is?[8]

Rule 60(b) "cannot [be used] to reargue points already made, or that could have been made, in dispute of the underlying motion." *In re Aarons*, No. 2:19-BK-18316-NB, 2024 WL 3085754, at *3 (Bankr. C.D. Cal. June 21, 2024). This case is precisely the kind that warrants relief because the dispute was never litigated. This procedural deprivation constitutes a circumstance beyond Panthers' control that prevented it from fairly presenting a defense to the Petco Stipulation "in a proper fashion." *See Tani*, 282 F.3d at 1168.

---

[7] Even if Debtor's failure to disclose the terms of the Factoring Agreement and Three-Party Agreement—or to confer with and timely serve Panthers regarding the Petco Stipulation—was inadvertent, relief is nevertheless warranted because the Petco Order constitutes a clear and unjust deprivation of Panthers' property rights.

[8] The circumstances surrounding the funding of the Factoring Agreement alone are sufficiently extraordinary so as to warrant relief. Through the CSC Termination Filing, Debtor used a fraudulent UCC-3 to induce Panthers to keep funding CIS and to continue the Petco A/R assignments well before it filed for bankruptcy. That inducement, coupled with the information and documentation withheld in the Petco Stipulation, underscores the need to vacate the Petco Order and restore the contractually required Petco receivables routing to Panthers, pending a full accounting.

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**

Taken together, Debtor's misconduct constitutes extraordinary circumstances warranting relief under Rule 60(b)(6). Because these circumstances—entirely outside Panthers' knowledge or control—prevented it from objecting to the Petco Stipulation and caused substantial financial injury, the Court should vacate the Petco Order to accomplish justice. *See Tani*, 282 F.3d at 1168.

## IV.    REQUEST FOR ACCOUNTING

In addition to relief from the Petco Order under Rule 60(b), Panthers respectfully requests that the Court order Debtor and the Trustee to provide a full and complete accounting of all funds transferred from Petco to Debtor and from Petco to the Trustee from the Petition Date to present, including all receipts, disbursements, transfers, supporting invoices, ledgers, bank statements, and identifying information for any accounts to which such funds were deposited or from which they were expended, to determine, with specificity: (a) the amount of funds that were improperly transferred from Petco to Debtor that rightfully belong to and are owed to Panthers; and (b) the amount of funds that were held back by Petco until entry of the Petco Order.

This relief is warranted pursuant to Paragraph 16 of the Factoring Agreement, which mandates that "[a]ll books, records, accounts, corporate records, bank statements and records of deposit of [Debtor], as well as any other financial records maintained by [Debtor], shall be open to inspection by [Panthers], and any accountant or auditor designated by [Panthers], for all purposes and at all times during normal business hours at Seller's main place of business." (Factoring Agreement, at p. 6). Additionally, an accounting under these circumstances is necessary to (i) ascertain the extent to which Panthers' property was turned over to Debtor or the Trustee, (ii) establish any derivative or constructive trust interests, (iii) trace the flow of funds, and (iv) craft appropriate relief.

Bankruptcy courts routinely exercise their equitable authority to compel an accounting where necessary to identify and recover property, evaluate disputed ownership, and remedy potential diversion or misallocation of funds. *See, e.g.*, *In re Martin's Aquarium, Inc.*, 225 B.R. 868, 880 (Bankr. E.D. Pa. 1998) ("[I]t is clear that a debtor may, in an appropriate case, be required

to produce an accounting, and that a bankruptcy court does indeed have the power to so order."). Accordingly, an order for an accounting is appropriate under these circumstances.

## V.    **CONCLUSION**

WHEREFORE, Panthers respectfully requests this Court to (i) grant its Motion for Reconsideration under Rules 60(b)(3), (4), and/or (6), (ii) vacate the Petco Order, (iii) return the parties to the status quo under the Three-Party Agreement, requiring Petco to remit all Debtor-origin Petco receivables to Panthers; (iv) compel Petco and the Trustee to deliver a full, invoice-level accounting of Debtor-origin receivables pre- and post-conversion, respectively, including payment journals, remittance advices, offsets/chargebacks, vendors credits, and corresponding bank records, from the cut-off date to present; (v) direct that any Debtor-origin Petco A/R already received by the Trustee (or CIS due to vendors credits) be segregated in an interest-bearing account and escrowed pending adjudication of ownership and priority, without prejudice to Panthers' claims; (vi) order immediate turnover to Panthers, or direction to Petco to pay Panthers, of all sums due and to become due on the affected invoices up to $1,811,280.14, plus attorney's fees and costs; (vii) require segregation and periodic reporting/accounting of any future Petco receivables as adequate protection for Panthers' interests, with replacement liens in all proceeds to the extent applicable; and (viii) for such other relief as the Court deems just and proper.


Dated:    November 5, 2025          **POLSINELLI LLP**



By:          */s/ Tanya Behnam*

                    Randye B. Soref
                    Tanya Behnam

            *Attorneys for Panthers Capital LLC*

**MOTION TO RECONSIDER ORDER APPROVING PETCO STIPULATION**
106975898

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2049 Century Park East, Suite 2900, Los Angeles, CA 90067

**A TRUE AND CORRECT COPY OF THE FOREGOING DOCUMENT ENTITLED (*SPECIFY*): PANTHERS CAPITAL LLC'S MOTION TO RECONSIDER ORDER APPROVING STIPULATION BETWEEN DEBTOR AND PETCO FOR TURNOVER**
 will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 6, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) November 6, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 6, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY OVERNIGHT MAIL (FEDERAL EXPRESS)**
Hon. Barry Russell
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 6, 2025 | Cindy M. Cripe | *Cindy M. Cripe* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
106464755.1

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (Continued)**

Ismail Amin on behalf of Creditor Newtek Bank, N.A.
iamin@talglaw.com, pgilmore@talglaw.com;kvescera@talglaw.com;
shalberstadt@talglaw.com;cstark@talglaw.com;ckim@talglaw.com;eavakian@talglaw.com

Tanya Behnam on behalf of Creditor Panthers Capital LLC
tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com

Christopher Beyer on behalf of Creditor North Star Leasing, a Division of Peoples Bank
cab@replevin.com, ecf@writofseizure.com

Michael D Breslauer on behalf of Interested Party Courtesy NEF
mbreslauer@swsslaw.com, sdurazo@swsslaw.com

Dennis A Dressler on behalf of Creditor Tokyo Century (USA) Inc.
ddressler@dresslerpeters.com

Michael Jones on behalf of U.S. Trustee United States Trustee (LA)
michael.jones4@usdoj.gov

Ron Maroko on behalf of U.S. Trustee United States Trustee (LA)
ron.maroko@usdoj.gov

Byron Z Moldo on behalf of Debtor CIS International Holdings (N.A.) Corporation
bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com

Scott Olson on behalf of Creditor Settle Funding, LLC
solson@seyfarth.com, scott-olson-
2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com,chidocket@seyfarth.com

Amitkumar Sharma on behalf of Creditor Ford Motor Credit Company LLC, c/o AIS Portfolio Services, LLC
amit.sharma@aisinfo.com

Randye B Soref on behalf of Creditor Panthers Capital LLC
rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com

Chase Aleksander Stone on behalf of Debtor CIS International Holdings (N.A.) Corporation
cstone@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com,cmacan@ecjlaw.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Cranston J Williams on behalf of Creditor Southern California Gas Company
cwilliams3@socalgas.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
106464755.1

**F 9013-3.1.PROOF.SERVICE**