**BAKER & HOSTETLER LLP**
Adam L. Fletcher (OH SBN 0085201) (*pro hac vice*)
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 861-7517
Facsimile: (216) 696-0740
Email: afletcher@bakerlaw.com

Lauren T. Attard (CA SBN 320898)
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: (310) 442-8896
Facsimile: [ADD]
Email: lattard@bakerlaw.com

*Attorneys for Petco Animal Supplies Stores, Inc.*

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CIS INTERNATIONAL HOLDINGS (N.A.) CORPORATION,<br><br>Debtor. | Case No.: 2:25-bk-18374-BR<br><br>Chapter 7<br><br>**OPPOSITION OF PETCO ANIMAL SUPPLIES STORES, INC. TO PANTHERS CAPITAL LLC'S MOTION TO RECONSIDER ORDER APPROVING STIPULATION BETWEEN DEBTOR AND PETCO FOR TURNOVER** |

Petco Animal Supplies Stores, Inc. ("Petco") hereby submits its Opposition to Panthers Capital LLC's ("Panthers") *Motion to Reconsider Order Approving Stipulation between Debtor and Petco for Turnover* (Dkt. No. 100) (the "Motion"). For the reasons that follow, the Motion should be denied or, alternatively, any order granting the Motion should protect Petco, including with regard to actions already taken by Petco in reliance on and compliance with the prior order of this Court.

Dated: December 2, 2025

**BAKER & HOSTETLER LLP**

By:  /s/ *Lauren T. Attard*
Lauren T. Attard
Adam L. Fletcher

*Attorneys for Petco Animal Supplies Stores, Inc.*

1

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 5

ARGUMENT ................................................................................................................ 11

     A.     The Stipulation Did Not Impermissibly "Modify" the 3-Party Agreement
           Without Panthers' Consent, the Bankruptcy Code Overrode It ........................... 12

     B.     Panthers Misstates the Nature of Panthers' Interest Under the UCC and
           the Effect of Debtor's Bankruptcy on That Interest ............................................. 12

     C.     Ordering Petco to Pay the A/R to Panthers Would Modify the 3-Party
           Agreement Without Petco's Consent Unless the Court Adjudicates
           Panthers' Priority Vis-à-Vis Settle ....................................................................... 15

     D.     Debtor's Failure to Provide Panthers Notice of the Stipulation
           Contemporaneous with Its Filing Was Unintentional and Resulted From a
           Clerical Error ........................................................................................................ 16

     E.     The Order Should Not Be Vacated Now Because Panthers Suffered No
           Prejudice as a Result of the Service Mishap, Whereas Vacating the Order
           Would Severely Prejudice Petco After Petco Took Irreversible Action in
           Reliance on the Order ........................................................................................... 17

     F.     Any Modification of the Order Should Protect Petco .......................................... 19

     G.     Panthers' Request for an Accounting from Petco Should Be Denied ................... 19

CONCLUSION ............................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Briscoe v. LaHue*,
    460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983) ........................................................ 18

*Catalano v. C.I.R.*,
    279 F.3d 682 (9th Cir. 2002) ........................................................................................ 14

*Coverdell v. Dep't of Soc. & Health Servs., State of Wash.*,
    834 F.2d 758 (9th Cir. 1987) ........................................................................................ 18

*Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*,
    547 F.2d 1 (1st Cir. 1976) ............................................................................................ 18

*King v. Rell*,
    No. 3:06-cv-1703 (VLB), 2008 U.S. Dist. LEXIS 22678 (D. Conn. Mar. 24,
    2008) ............................................................................................................................ 18

*Lee v. U.S. Bank N.A.*,
    102 F.4th 1177 (11th Cir. 2024) .................................................................................. 14

*In re Leeling*,
    129 B.R. 637 (Bankr. Colo. 1991) ............................................................................... 14

*Maness v. Meyers*,
    419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975) ................................................ 18

*In re Mattheiss*,
    214 B.R. 20 (Bankr. N.D. Ala. 1997) ......................................................................... 14

*Mays v. Sudderth*,
    97 F.3d 107 (5th Cir. 1996) ......................................................................................... 18

*Milledge v. Carolina Acceptance (In re Milledge)*,
    639 B.R. 334 (Bankr. S.C. 2022) ................................................................................ 14

*Miller v. Slotkin Defective Trust of December 14, 2012 (In re Slotkin)*,
    Adv. No. 2:20-ap-01672, 2023 Bankr. LEXIS 1261 (Bankr. C.D. Cal. Jan. 3,
    2023) ............................................................................................................................ 18

*In re Moffett*,
    356 F.3d 518 (4th Cir. 2004) ....................................................................................... 14

*Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*,
    677 F.3d 869 (9th Cir. 2012) ....................................................................................... 18

*In re Robinson*,
  285 B.R. 732 (Bankr. W.D. Okla. 2002) ............................................................... 14

*United States v. Whiting Pools, Inc*,
  462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ......................................... 13

**Statutes**

11 U.S.C. § 362 ......................................................................................... *passim*

11 U.S.C. § 362(d)(2) ................................................................................ 14

11 U.S.C. § 541 ......................................................................................... *passim*

11 U.S.C. § 541(a)(1) ................................................................................ 13

11 U.S.C. § 542 ......................................................................................... *passim*

11 U.S.C. § 542(b) .................................................................................... *passim*

Uniform Commercial Code ........................................................................ *passim*

Uniform Commercial Code Article 9 ........................................................ 2, 13

Uniform Commercial Code Section 1-201(b)(35) ................................... 13

Uniform Commercial Code Section 9-109(a)(3) ..................................... 13

Uniform Commercial Code Section 9-109(c) ......................................... 13

Uniform Commercial Code Section 9-109(d) ......................................... 13

Uniform Commercial Code Section 9-109(d)(4)-(7) .............................. 13

Uniform Commercial Code Section 9-404 .............................................. 8

Uniform Commercial Code Sections 9-406 and 9-607(a)(3) ............... 5, 12

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

1

# **INTRODUCTION**

2      Panthers attempts to paint itself as the victim of a plot by Debtor and Petco to "unilaterally

3  modify" the 3-Party Agreement[1] with Panthers and circumvent Panthers' supposed "absolute"

4  ownership of A/R owed by Petco to Debtor through deception on the Court and intentional

5  deprivation of Panthers' right to due process.  But for all its posturing, Panthers is not the victim in

6  this bankruptcy case, it is the villain.

7      Prior to the petition date, Petco received a competing account-debtor demand from Settle,

8  another secured creditor of Debtor, whose security interest in A/R was perfected earlier than that

9  of Panthers.  Accordingly, Petco suspended payment of A/R to Panthers as Petco was entitled to do

10  under the 3-Party Agreement.  Panthers stopped lending to Debtor and repeatedly threatened Petco

11  in an attempt to force Petco to resume paying A/R to Panthers despite Settle's demand.  When

12  Panthers' predatory loan and refusal to negotiate with Debtor later forced Debtor into bankruptcy,

13  Debtor rightfully demanded turnover of the remaining A/R owed by Petco to Debtor's estate under

14  11 U.S.C. § 542(b).  Given Panthers' threats, Debtor and Petco entered into the Stipulation

15  memorializing that turnover under Section 542(b) and sought Court approval thereof to protect

16  Petco from retaliation by Panthers.

17      Far from the nefarious intent Panthers alleges (purely on bald speculation), the actual

18  explanation for why Panthers did not receive notice of the Stipulation prior to the Court's entry of

19  the Order approving the Stipulation is mundane—a clerical error on the part of Debtor's counsel.

20  Debtor's counsel instructed their paralegal to serve the Stipulation on Panthers the same day it was

21  filed with the Court, just as the Stipulation itself required Debtor to do.  But a miscommunication

22  between Debtor's counsel and their paralegal resulted in the Stipulation not getting served on

23  Panthers until after the Order was entered.  Not only was that failure unintentional, neither Petco

24  nor Debtor's counsel even learned of it until Panthers filed the Motion a month later.  Nor would

25  Petco have known of this error, as the obligation to serve Panthers belonged to Debtor, not Petco

26      What *is* nefarious is Panthers' continuing *post-petition* pressure on Petco to immediately

27  pay all remaining, unpaid A/R Petco owes to Debtor directly to Panthers.  Panthers' demands on

28

---

[1] Capitalized terms have the meaning assigned to them in the Factual Background section below.

1

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

1  Petco are an attempt to wrest control of that A/R entirely outside of the bankruptcy process, in

2  blatant violation of the automatic stay and without adjudication by this Court of the competing

3  claims to those funds asserted by multiple other secured creditors with record liens in A/R that are

4  facially superior to Panthers.

5       Panthers accuses Debtor and Petco of tricking the Court into entering the Order by

6  withholding key information from the Court.  But the Stipulation did not obfuscate the existence of

7  the pre-petition 3-Party Agreement nor hide that it required Petco to pay A/R owed to Debtor

8  instead to Panthers. Those facts were transparently disclosed in the second whereas clause of the

9  Stipulation.  Thus, it was clear from the face of the Stipulation that the terms of the Stipulation

10  (which called for remaining A/R to be turned over by Petco to Debtor) dictated a result different

11  than what was called for under the pre-petition 3-Party Agreement.

12       Panthers' cries of deception are a stunning example of projection.  In fact, it is Panthers that

13  attempts to deceive the Court through distortions of fact and misstatements of law.  In the Motion,

14  Panthers asserts that it "purchased" the A/R owed by Petco to Debtor and so Panthers, not Debtor,

15  "owns" that A/R.  From there, Panthers argues that such A/R is not property of Debtor's estate

16  under 11 U.S.C. § 541 and so it cannot be the subject of turnover to Debtor under 11 U.S.C. §

17  542(b).  Instead, Panthers argues Petco should have continued paying A/R directly to Panthers as

18  "owner" of that A/R despite Debtor's bankruptcy filing (not to mention the competing demand on

19  Petco from Settle, whose security interest in the A/R is facially senior to that of Panthers).

20       Panthers egregiously fails to mention that, under the UCC, the "interest of…a buyer of

21  accounts," like Panthers, falls squarely within the definition of a "security interest" governed by

22  Article 9 of the UCC.  Panthers also fails to mention decisions (including from the U.S. Supreme

23  Court) holding that property of a debtor remains property of its bankruptcy estate under 11 U.S.C.

24  § 541, protected by the stay under 11 U.S.C. § 362 and subject to turnover under 11 U.S.C. § 542,

25  regardless of whether that property is partially or even fully encumbered by a security interest.

26       Panthers withholds this key information in the Motion so that Panthers can mischaracterize

27  the Stipulation as a "unilateral modification" of the 3-Party Agreement designed to trample

28  Panthers' supposedly clear right to direct payment of the A/R from Petco.  In fact, the Stipulation

1    did not "modify" the 3-Party Agreement at all (indeed, the Stipulation and Order both expressly

2    provided that all parties' rights and defenses, including as to liens, priority, and the 3-Party

3    Agreement, were reserved).  Instead, the 3-Party Agreement's requirement that Petco pay A/R

4    owed to Debtor directly to Panthers as secured creditor was *overridden* by the effects of 11 U.S.C.

5    §§ 362, 541 and 542.  The Stipulation merely reflects the effect of the Bankruptcy Code (which

6    changed the pre-petition status quo) in a formal filing that could be approved by order of the Court

7    on notice to Panthers.  That extra step of documenting the effects of the Bankruptcy Code in a

8    Stipulation to be approved by the Court was taken solely to provide Petco with assurance before it

9    acted in compliance with the requirements of the Bankruptcy Code in order to protect Petco from

10   the risk of later attack by Panthers (whose hyper-aggressive bully tactics and disregard for both

11   facts and the law Petco was already familiar with based on pre-petition interactions).

12        Panthers should have gotten notice of the Stipulation contemporaneous with its filing

13   (indeed, Petco itself was the party that *insisted* that such notice be a requirement *in* the Stipulation).

14   But Debtor's service mishap has *not prejudiced* Panthers since all the funds paid to Debtor by Petco

15   under the Stipulation remain in the estate today. Petco, however, *would be prejudiced* if the Order

16   is vacated.  Petco has already paid $709,400 of A/R into the estate post-petition in good faith

17   reliance on, and in compliance with, the terms of the Stipulation and Order.  Vacating the Order

18   now would expose Petco to risk and uncertainty, and run directly contrary to the strong public

19   policy that persons are entitled to rely on and comply with standing court orders without fear of

20   reprisal.

21        Vacating the Order would also leave Petco uncertain as to whom it should pay the remaining

22   $497,621.80 of A/R that Petco has yet to pay into the estate (because Petco no longer has working

23   wire instructions for an estate account).  Pre-petition, Petco had already instituted a holdback under

24   the terms of the 3-Party Agreement freezing payments of A/R to Panthers thereunder because Petco

25   had received a competing account-debtor demand from Settle, whose security interest in A/R was

26   perfected prior to Panthers.  Now, Newtek, another secured creditor whose security interest in

27   Debtor's A/R was perfected even earlier than Settle, has appeared in the bankruptcy case and has

28   asserted that it has the superior interest in the A/R.  In the absence of the Stipulation and Order,

3

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

1  Petco may be exposed to multiple suits by the various claimants to the A/R in disparate courts

2  around the country.  It would be unjust to place such risk on Petco, an innocent party that simply

3  wishes to pay the money it owes Debtor into a neutral location where competing claimants to those

4  funds can then have their rights in it adjudicated.  This Court is the ideal (and possibly only) venue

5  for such adjudication given Debtor's undeniable interest in the funds as property of Debtor's estate

6  and the fact that all known secured creditors with claims to the funds have already appeared in the

7  bankruptcy case and so the Court has jurisdiction over all of them.

8       For the foregoing reasons, the Order should not be vacated. If, however, the Court does

9  choose to modify the existing Order, then any such modification should protect Petco and provide

10 that the A/R already paid into the estate by Petco under the Stipulation, as well as the remaining

11 A/R owed by Petco, should be paid to and held in segregation by the Trustee or be interpled into

12 the registry of the Court by the Trustee (who has indicated he is willing to do so), and in either case

13 that such payment of the funds by Petco discharges Petco's liability for the A/R paid as to both

14 Debtor and to any potential claimants claiming through Debtor, who can then assert their alleged

15 interests in such funds in the bankruptcy case.

16      Finally, in the Motion, Panthers also requests an accounting from Petco. That request is not

17 appropriate because it is predicated on the terms of the Factoring Agreement between Panthers and

18 Debtor, to which Petco is not even a party.  Panthers' request for an accounting from Petco should

19 also be denied because Panthers has not shown why it needs that information now, especially since

20 Panthers has yet to establish that it is even the senior secured creditor in the A/R.  Moreover,

21 Panthers has other avenues to obtain the information it seeks, including from Debtor and the

22 Trustee, or through normal discovery under the Bankruptcy Rules and Federal Rules of Civil

23 Procedure, which contain mechanisms to protect Petco from overly burdensome requests.

24      In sum, Panthers has not demonstrated a basis for this Court to take the extraordinary step

25 of vacating its prior Order after Petco has acted in reliance on it.  Thus, the Motion should be denied

26 or, alternatively, any modification of the prior Order should protect Petco's prior reliance on the

27 original Order and provide an avenue for the A/R (both that already paid and that remaining to be

28 paid) to be held by the Trustee in segregation or paid into registry of the Court by the Trustee (who

4

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

1   has indicated he is willing to do so) and, thereby, remove Petco from the middle of the dispute

2   between Debtor's competing secured creditors over that A/R.

3   **FACTUAL BACKGROUND**

4   Petco is a national retailer operating stores that sell pets and pet care products. *See*

5   Declaration of Adam L. Fletcher, attached hereto as <u>Exhibit A</u>, at ¶ 5. CIS International Holdings

6   (N.A.) Corporation ("<u>Debtor</u>") was one of Petco's vendors, supplying fish for sale in Petco's stores.

7   *Id*.

8   In November of 2024, Petco began receiving multiple, competing account-debtor demand

9   letters under Sections 9-406 and 9-607(a)(3) of the Uniform Commercial Code ("<u>UCC</u>") from

10  lenders who purported to have security interests in accounts receivable ("<u>A/R</u>") owed by Petco to

11  Debtor, including demands from Kash Advance, LLC, Launch Funding Group LLC, Top Tier

12  Capital, Turbo Funding LLC, and Panthers. *Id.* at ¶ 6 and <u>Exhibit A-1</u> through <u>Exhibit A-5</u>.

13  Panthers, in particular, was extremely aggressive, demanding an immediate response from Petco

14  (who had never even heard of Panthers) and threatening Petco with legal action if it did not comply

15  with Panthers' demands. Ex. A at ¶ 7.

16  Petco reached out to Debtor for information to evaluate the validity of the account-debtor

17  demands Petco was receiving, especially the demand from Panthers. *Id.*at ¶ 8. Debtor confirmed

18  that the account-debtor demands Petco had begun receiving were valid and that the demanding

19  parties had security interests in A/R owed to Debtor. *Id*. Debtor also indicated that it wished to

20  continue its borrowing relationship with Panthers and pleaded with Petco to agree to certain things

21  Panthers was requesting from Petco, in particular that Petco commit to paying all A/R owed by

22  Petco to Debtor directly to Panthers until Panthers' demand on Petco was satisfied. *Id.* at ¶ 9.

23  Petco responded to Debtor and Panthers that this request was problematic because paying

24  the A/R to Panthers could expose Petco to the risk of double payment since Petco had already

25  received an account-debtor demand from another lender, Kash Advance, LLC, whose security

26  interest was perfected by a UCC-1 financing statement filed on November 12, 2024, making it

27  senior in priority to the security interest of Panthers (which was perfected by a UCC-1 financing

28  statement filed on November 18, 2024). Ex. A at ¶ 10; Ex. A-1 at 5; Ex. A-6. Petco also noted to

5

1   Debtor and Panthers that the UCC filing records reflected a number of other secured lenders to

2   Debtor who likewise had security interests in A/R owed to Debtor that were also senior to Panthers

3   (several of which lenders later sent Petco competing demands over the following weeks).  Ex. A at

4   ¶ 11.   Petco explained that those interests also posed risks to Petco if it agreed to Debtor's and

5   Panthers' request that Petco commit to paying all future A/R directly to Panthers.  *Id.*

6        Panthers responded that Petco's concerns were unfounded because, as part of its

7   continued lending to Debtor, Panthers would be providing Debtor with sufficient funds to pay off

8   or reach settlements with its other secured lenders and those other lenders' UCC filings would soon

9   be terminated.  *Id.* at ¶ 12.   Nonetheless, Petco insisted that if it were to commit to paying A/R

10  owed to Debtor directly to Panthers going forward, Petco must be fully protected from the risk of

11  liability to other demanding creditors of Debtor who were senior in priority to Panthers.  *Id.* at ¶

12  13.

13       During these negotiations, Panthers took an assignment of a UCC-1 filed on May 22, 2023,

14  by an affiliate of Panthers called Quick Funding Group, which UCC-1 related to an earlier lending

15  relationship between Debtor and Quick Funding.  *Id.* at ¶ 14.  Panthers asserted that the assignment

16  of that UCC-1 to Panthers allowed Panthers to step into the priority of that UCC-1 with regard to

17  its own security interest going forward.  *Id.*  Petco disagreed on the basis that, from what Petco

18  could gather, the prior loan between Debtor and Quick Funding Group had been fully satisfied and,

19  in any event, the assignment of a UCC-1 only allows the assignee to control that assigned record

20  as filed, but it does not allow the assignee to mix and match the assigned UCC-1 with a different

21  security interest granted to the assignee later under a different security agreement and thereby

22  elevate the priority of that later acquired security interest.  *Id.*  Thus, Petco informed Panthers that

23  Petco regarded as more senior than Panthers any secured creditor with a UCC-1 filed prior to the

24  UCC-1 Panthers had filed on November 18, 2024.  *Id.*

25       Ultimately, Petco, Panthers and Debtor were able to reach an agreement, which was

26  embodied in that certain *Three-Party Addendum to Factoring Facility Agreement* dated December

27  4, 2024. Ex. A at ¶ 15 and <u>Exhibit A-7</u> (the "<u>3-Party Agreement</u>").  Under the 3-Party Agreement,

28  Petco, Panthers and Debtor agreed that going forward all A/R owed by Petco to Debtor would be

6

1  paid directly to Panthers until Panthers' account-debtor demand on Petco (which was subject to

2  increase upon requisite notice to Petco) was fully satisfied.  *See* Ex. A at ¶ 16; Ex. A-7 at § 1.

3  Crucially, the 3-Party Agreement addressed Petco's concerns about demands from other secured

4  creditors that were senior in priority to Panthers.  Ex. A at ¶ 17.  Panthers agreed that it would

5  indemnify Petco against the demands Petco had already received from Kash Advance, LLC and

6  Launch Funding Group LLC (both of which Panthers indicated would be, and which were in fact,

7  paid off through Panthers' further funding to Debtor).  Ex. A at ¶ 17; Ex. A-7 at § 4.  Moreover,

8  the 3-Party Agreement provided that if Petco received a new account-debtor demand from any other

9  creditor with a UCC-1 properly filed prior to November 18, 2024, then Petco would be entitled to

10  halt payment of A/R to Panthers under the 3-Party Agreement and holdback any further payment

11  unless and until either Panthers agreed in writing to indemnify Petco against such new demand or

12  Petco was presented with a final non-appealable court order providing that Petco should pay further

13  A/R to Panthers rather than the new demanding creditor.  Ex. A at ¶ 18; Ex. A-7 at § 2.

14       For months following the execution of the 3-Party Agreement, Petco proceeded to pay

15  millions of dollars of A/R directly to Panthers in response to Panthers' account-debtor demand (the

16  total amount of which demand continued to increase).  Ex. A at ¶ 19.  Then, on August 19, 2025,

17  Petco received a new account-debtor demand from Settle Funding, LLC ("Settle"), from which

18  Petco had not previously received any demand.  Ex. A at ¶ 20 and Exhibit A-8.  In its demand,

19  Settle asserted a security interest in and demand for payment of A/R owed by Petco to Debtor.  *Id.*

20  Upon investigation in the UCC filing records, Petco discovered that: Settle had filed its UCC-1 on

21  April 17, 2024 (many months before Panthers filed its UCC-1 on November 18, 2024); on April

22  27, 2025 (after Petco entered into the 3-Party Agreement), *Debtor* had filed a UCC-3 purporting to

23  terminate Settle's UCC-1;[2] and on July 16, 2025 and August 13, 2025, Settle had filed, respectively,

24  a UCC-3 and then a UCC-5 information statement which both indicated that Debtor had not been

25  authorized by Settle to file the UCC-3 purporting to terminate Settle's UCC-1, and therefore such

26  termination was ineffective.  Ex. A at ¶ 21, Ex. A-8 at 3, and Exhibit A-9 through Exhibit A-11.

27

28  [2]  Although Petco has not yet seen direct evidence, Settle's counsel has indicated that Panthers
instructed Debtor to file this UCC-3 purporting to terminate Settle's UCC-1 even though Panthers
knew that Debtor had not paid off the loan from Settle.  Ex. A at ¶ 22.

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

1    On September 2, 2025, Petco gave Panthers formal notice that Petco had received a

2    competing demand from Settle and that Petco had instituted a holdback of further payments to

3    Panthers pursuant to Section 2 of the 3-Party Agreement. Ex. A at ¶ 23 and Exhibit A-12. Over the

4    next week, Petco and Panthers exchanged a series of emails in which Panthers took the position

5    that Settle's demand did not trigger Petco's right to institute a holdback under Section 2 of the 3-

6    Party Agreement because Settle's UCC-1 had been terminated pursuant to the UCC-3 filed by

7    Debtor on April 27, 2025. Ex. A at ¶ 24 and Exhibit A-13.[3] Petco disputed Panthers' position,

8    pointing out Settle's multiple UCC filings asserting that Debtor's UCC-3 was unauthorized and

9    that, under the UCC this meant the termination was ineffective. Ex. A at ¶ 25; Ex. A-13 at 9. Petco

10    indicated that for Petco to lift the holdback under Section 2 of the 3-Party Agreement, Panthers

11    must tender a written agreement to indemnify Petco against Settle's demand in accordance with the

12    requirements of the 3-Party Agreement. Ex. A at ¶ 26; Ex. A-13 at 4. While Panthers initially

13    indicated it was willing to do so, Panthers ultimately refused to tender the written agreement to

14    indemnify Petco as required by Section 2 of the 3-Party Agreement; indeed, Panthers bizarrely

15    asserted that its prior indication of a willingness to indemnify Petco was merely a "test." Ex. A at

16    ¶ 27; Ex. A-13 at 2-3 & 8. As such, Petco continued maintaining the holdback of A/R owed to

17    Debtor and did not pay that A/R to Panthers nor to Settle. Ex. A at ¶ 29.

18    On August 22, 2025, starved of cashflow and having reached a stalemate in its own

19    negotiations with Panthers, Debtor filed this bankruptcy case under chapter 11 of the Bankruptcy

20    Code. *See* Dkt. No. 1. Shortly thereafter, Debtor requested that Petco resume paying all A/R

21    directly to Debtor pursuant to the requirements of 11 U.S.C. §§ 362, 541 and 542. Ex. A at ¶ 31;

22    Declaration of Chase A. Stone, attached hereto as Exhibit B, at ¶ 10. Petco explained to Debtor

23    that the existence of the 3-Party Agreement with Panthers, as well as the competing demand from

24    Settle, created significant uncertainty for Petco and that in order to institute direct payment of the

---

[3] During this exchange, Petco also informed Panthers that, as of September 10, 2025, there was no
A/R currently owed to Debtor by Petco due to Petco's recoupment of certain credits and vendor
deductions arising directly under the vendor agreement between Petco and Debtor, which Panthers
then disputed on the basis that those credits and deductions were somehow setoffs (even though
they were clearly recoupments permissible under UCC 9-404 because they arose under the terms
of the overarching vendor agreement between Petco and Debtor). Ex. A at ¶ 28 and Ex. A-13 at 1
& 4.

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

A/R to Debtor, Petco would require an order from this Court authorizing and directing Petco to do so.  Ex. A at ¶ 32; Ex. B. at ¶ 10.  Initially, Debtor indicated that it would prepare a motion for turnover under 11 U.S.C. § 542 to obtain such an order, but Debtor later pivoted to a more expedient path given that Petco did not intend to oppose such a motion.  Ex. A at ¶ 33; Ex. B at ¶ 11.

Instead, Debtor and Petco agreed to execute a stipulation that would call for Petco to pay A/R directly to Debtor and that would also address Petco's right to recoup credits and vendor deductions under the vendor agreement prior to making such A/R payments.  *Id.*  Petco was clear with Debtor that such stipulation must provide that the stipulation would not become effective until approved by order of this Court and that Panthers needed to receive notice of the stipulation contemporaneous with its filing.  Ex. A at ¶ 34, <u>Exhibit A-14</u>, and <u>Exhibit A-15</u>; Ex. B. at ¶ 12.  Those requirements were included in the Stipulation ultimately executed by Debtor and Petco.  *See* Dkt. No. 15 at ¶¶ 1 & 4.  The Stipulation likewise provided that although A/R would be paid to Debtor once this Court approved the Stipulation, "[a]ll Parties' rights and defenses, including as to liens, priority and the Three-Party Agreement, are reserved."  *Id.* at ¶ 2.

Petco and Debtor, through their counsel, signed the Stipulation on October 3, 2025, and Debtor's counsel filed the Stipulation on the docket in this case the same day.  Ex. A at ¶ 35; Ex. B. at ¶ 13; Dkt. No. 15.  When Debtor's counsel sent the filed Stipulation and initial proof of service to Petco's counsel on October 3, 2025, Debtor's counsel indicated that they were "working out an issue with the proof of service – a supplemental proof of service will be filed shortly."  Ex. A at ¶ 36 and <u>Exhibit A-16</u>; Ex. B. at ¶ 16.  A few days later, on October 6, 2025, Petco's counsel reached out to Debtor's counsel to inquire whether Debtor would be filing an emergency motion to seek the Court's expedited approval of the Stipulation, which approval was required for it to become effective.  Ex. A at ¶ 37 and <u>Exhibit A-17</u>; Ex. B. at ¶ 17.  Debtor's counsel responded that they had spoken with the Court's clerk and had been advised to wait on filing an emergency motion while the Court reviewed the Stipulation.  *Id.*  The next day, October 7, 2025, Debtor's counsel advised that the Court had approved the Stipulation and sent Petco's counsel a copy of the Order approving it.  Ex. A at ¶ 38; Ex. B. at ¶ 18; Dkt. No. 22.

Petco then proceeded to immediately pay over to Debtor the initial $709,400 of net A/R

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

1   currently due and payable, as called for under Paragraph 1 of the Stipulation. Ex. A at ¶ 39; Ex. B.

2   at ¶ 18; Dkt. No. 15 at ¶ 1.  Petco did so in reliance upon and compliance with the terms of the

3   Stipulation and this Court's Order approving it.  Ex. A at ¶ 39.  At the time, Petco had no reason to

4   suspect that Panthers had not received notice of the Stipulation contemporaneous with its filing

5   since the Stipulation itself specifically required that and, moreover, because Debtor's counsel had

6   represented to Petco that they were providing such contemporaneous notice to Panthers.  Ex. A at

7   ¶ 39; *see also* Dkt. No. 15 at ¶ 4; Ex. A-15 at 2 (stating "I plan to serve Panthers contemporaneously

8   when we file [the Stipulation] today"); Ex. A-16 at 1 (stating that Debtor would file a "supplemental

9   proof of service…shortly"); Ex. B. at ¶ 19.

10      Debtor's bankruptcy case was subsequently converted to Chapter 7 and David Goodrich

11  was appointed as the Chapter 7 trustee (the "Trustee").  *See* Dkt. Nos. 80 & 81.  Petco's subsequent

12  attempts to pay further A/R to Debtor pursuant to the terms of the Stipulation were unsuccessful

13  because wires to Debtor's bank account were returned (possibly because of the conversion of the

14  case to Chapter 7, which Petco did not learn of until later).  Ex. A at ¶ 40.  As such, Petco currently

15  owes Debtor $497,621.80 of remaining A/R net of credits and vendor deductions recouped by Petco

16  under the terms of the vendor agreement with Debtor (as contemplated in the Stipulation).  *Id.*

17  Based on the Debtor's final report as debtor-in-possession, it appears that nearly all of the $709,400

18  that Petco already paid into the estate in compliance with the Stipulation remains in the estate.  *See*

19  Dkt. No. 116 at 2 (reflecting "Cash balance on hand at date of conversion" as "$708,382.98

20  estimated (gross) as of October 22, 2025").

21      A month after the Stipulation was approved by the Order, Petco was served with Panthers'

22  Motion asserting that Panthers had not received notice of the Stipulation until after the Order

23  approving it had been entered.  Ex. A at ¶ 41.  Petco was surprised because that was inconsistent

24  with the terms of the Stipulation and the representations of Debtor's counsel that Debtor was

25  serving Panthers with the Stipulation contemporaneous with its filing.  Ex. A at ¶ 41; Ex. B at ¶ 19.

26      Petco's counsel contacted Debtor's counsel, seeking clarification on whether Panthers had

27  been served with the Stipulation prior to the entry of the Order.  Ex. A at ¶ 42; Ex. B at ¶ 20.

28  Debtor's counsel replied that he had investigated and that, immediately after the Stipulation was

10

filed, Debtor's counsel had instructed a paralegal in their office to serve a copy of the Stipulation on "a lot more of the creditors on the creditor matrix" and "in particular, Settle and Panthers," and that Debtor's counsel had responded affirmatively when their paralegal then asked if they should file a supplemental proof of service. Ex. A at ¶ 42; Ex. B at ¶ 21 and Exhibit B-1 (which is a redacted copy of the email between Debtor's counsel and their paralegal). However, due to an apparent miscommunication or misunderstanding, the paralegal never actually served the Stipulation on Panthers or Settle at that time. Ex. B. at ¶ 21. Instead, the Stipulation was not served by Debtor upon Panthers until after the Court entered the Order approving it. Ex. B at ¶ 22.

Petco has since conferred with the Trustee, as well as counsel for Panthers, Settle and Newtek, in an effort to find a consensual resolution to the issues raised in Panthers' Motion. Ex. A at ¶ 43. The Trustee indicated that he was willing to hold in segregation the funds already paid into the estate by Petco (as well as any further A/R owed by Petco if paid into the estate) while the rights of claimants therein are adjudicated by this Court. Ex. A at ¶ 44. Alternatively, the Trustee also indicated that he would be willing to interplead the funds into the registry of the Court. *Id.* Settle and Newtek likewise indicated that either of those options were acceptable. Ex. A at ¶ 45. But Panthers has refused to consider either of these options and instead has requested a burdensome amount of information and documentation from Petco, while continuing to prosecute the Motion and continuing (post-petition) to demand that Petco pay all further A/R directly to Panthers immediately. Ex. A at ¶ 46 and Exhibit A-18.

Given Panthers' pending challenge to the Stipulation and Order, the competing account-debtor demands upon Petco from Panthers and Settle, and the fact that Petco no longer has working wire instructions for an estate bank account in any event, Petco continues to hold the remaining $497,621.80 of net A/R it owes to Debtor pending this Court's resolution of the Motion or a consensually negotiated resolution among the relevant parties. Ex. A at ¶ 47.

## ARGUMENT

For the following reasons, Panthers' Motion should be denied and the Order should not be vacated. Alternatively, any modification of the Order should protect Petco, which has taken irreversible action in good faith reliance on the standing Order.

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

### A. The Stipulation Did Not Impermissibly "Modify" the 3-Party Agreement Without Panthers' Consent, the Bankruptcy Code Overrode It

Panthers argues that the Court should vacate the Order approving the Stipulation because the Stipulation impermissibly "modified" the 3-Party Agreement without Panthers' required consent. But this mischaracterizes the nature of the Stipulation and the legal basis underpinning it. The Stipulation did not "modify" the 3-Party Agreement, it simply _recognized_ that the effects of the Bankruptcy Code _overrode_ its terms.

The pre-petition 3-Party Agreement provided that, if Panthers agreed to indemnify Petco against competing demands, Petco would pay all A/R it owed to Debtor directly to Panthers in response to Panthers' account-debtor demand on Petco under Sections 9-406 and 9-607(a)(3) of the UCC, rather than to Debtor or other secured creditors. Ex. A-7 at § 1. In other words, Petco agreed to treat Panthers' rights in the A/R as highest in priority even though Petco had received competing account-debtor demands from other secured creditors with earlier filed UCC-1's.

But once Debtor filed bankruptcy, Debtor's counsel correctly pointed out that the A/R became property of Debtor's estate and the 3-Party Agreement's requirement that Petco cooperate in Panthers' execution of remedies by paying A/R directly to Panthers was overridden by 11 U.S.C. §§ 362, 541 and 542(b). The Stipulation was not a "modification" of the 3-Party Agreement, it was a separate document whereby Petco agreed (so long as the Court approved the Stipulation) to voluntarily comply with Petco's obligations under 11 U.S.C. § 542(b) by paying to Debtor A/R that was property of Debtor's estate under 11 U.S.C. § 541 and, thus, protected under 11 U.S.C. § 362 against execution by a secured creditor like Panthers without relief from the stay. Panthers' consent to the Stipulation was not needed because, under it, Petco did no more than agree to comply with provisions of the Bankruptcy Code that override pre-petition arrangements to the contrary.

### B. Panthers Misstates the Nature of Panthers' Interest Under the UCC and the Effect of Debtor's Bankruptcy on That Interest

Panthers tries to get around the effects of 11 U.S.C. §§ 362, 541 and 542(b) by arguing that Panthers "purchased" the A/R from Debtor and, thus, Panthers is the "absolute owner" of that A/R. Hence, Panthers argues, that A/R was not property of Debtor's estate under 11 U.S.C. § 541 nor

12

1    subject to turnover under 11 U.S.C. § 542(b).  But Panthers misstates the nature of Panthers' interest

2    in the A/R under the UCC and, thus, the effects of the Bankruptcy Code on that interest.

3        Panthers is a merchant cash advance lender and so, in an attempt to avoid the application of

4    usury laws that prohibit the exorbitant interest rate charged by Panthers, its agreement with Debtor

5    characterizes the transaction between Panthers and Debtor as a "purchase" of the A/R rather than a

6    "loan," with Panthers becoming the "owner" of that A/R.  But regardless of whether those

7    characterizations exempt the transaction from the usury laws (on which Petco takes no position),

8    the treatment of a "purchase" of A/R under the UCC is clear.

9        Section 1-201(b)(35) of the UCC defines a "security interest" as including "any interest

10    of…a buyer of accounts…in a transaction that is subject to Article 9."  In turn, Section 9-109(a)(3)

11    of the UCC provides that Article 9 of the UCC applies to "a sale of accounts" unless that sale falls

12    into one of the exceptions contained in Section 9-109(c) or (d).  None of those exceptions that might

13    apply to a sale of accounts apply here because Panthers' purchase of Debtor's A/R was not part of

14    a sale of Debtor's business, was not for the purposes of collection only, was not part of an

15    assignment of the underlying contract under which Panthers would be obligated to perform to Petco

16    in place of Debtor, and was not an assignment of a single account to satisfy pre-existing

17    indebtedness of Debtor to Panthers.  *See* UCC § 9-109(d)(4)-(7).  Therefore, even though Panthers'

18    agreement with Debtor denominated itself as a "purchase" of the A/R owed to Debtor, under the

19    UCC, that transaction clearly constitutes a security interest.  Panthers knows this, which is why it

20    recorded a UCC-1 to perfect its security interest.

21        Panthers' argument that 11 U.S.C. §§ 541 and 542 do not apply to Panthers' interest in the

22    A/R immediately collapses because Panthers' interest in A/R is a security interest under the UCC.

23    As the Supreme Court recognized long ago, property that is not in the possession of the estate at

24    the time of the bankruptcy petition, including property recoverable by the estate under 11 U.S.C. §

25    542, constitutes property of the estate under 11 U.S.C. § 541(a)(1).  *United States v. Whiting Pools,*

26    *Inc*, 462 U.S. 198, 204-206, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).  And the estate includes

27    property of a debtor that is encumbered by a lien, even when the collateral "has been seized by a

28    creditor prior to the filing of a petition for reorganization."  *Id.* at 209-211 (further holding that

1 even the IRS as secured creditor is subject to turnover under 11 U.S.C. § 542); *accord, e.g.*, *In re*

2 *Moffett*, 356 F.3d 518, 521-22 (4th Cir. 2004) (collateral repossessed by secured creditor was

3 nonetheless property of the estate and subject to turnover under 11 U.S.C. § 542); *Milledge v.*

4 *Carolina Acceptance (In re Milledge)*, 639 B.R. 334, 345 (Bankr. S.C. 2022) (same); *In re*

5 *Robinson*, 285 B.R. 732, 734-39 (Bankr. W.D. Okla. 2002) (same and noting that such collateral

6 remained property of the estate notwithstanding state statute under which creditor obtained

7 repossession title to vehicle in creditor's name because nature of creditor's interest under the UCC

8 was a security interest); *In re Mattheiss*, 214 B.R. 20, 32 (Bankr. N.D. Ala. 1997) (same); *In re*

9 *Leeling*, 129 B.R. 637, 639-41 (Bankr. Colo. 1991) (same).

10     Moreover, a debtor's property remains property of the estate under 11 U.S.C. § 541 and

11 protected from further execution by the automatic stay under 11 U.S.C. § 362 even if such property

12 is fully encumbered by liens.  *See, e.g.*, *Lee v. U.S. Bank N.A.*, 102 F.4th 1177, 1179-80 (11th Cir.

13 2024) (stay applies to prevent enforcement of secured creditor's remedies against collateral even if

14 fully encumbered by security interest and creditor must move for relief from stay under 11 U.S.C.

15 § 362(d)(2)).  Indeed, even relief from the stay does not, itself, remove the encumbered property

16 from the estate, it simply allows the creditor to exercise remedies against the property anyway.

17 *Catalano v. C.I.R.*, 279 F.3d 682, 686-87 (9th Cir. 2002).

18     The import of these cases here is clear.  Because Panthers' interest is a security interest in

19 the A/R under the UCC, the A/R remained property of Debtor's estate under 11 U.S.C. § 541 and

20 subject to turnover by Petco to Debtor under 11 U.S.C. § 542(b), which provides that "an entity

21 that owes a debt that is property of the estate and that is matured, payable on demand, or payable

22 on order, ***shall*** pay such debt to, or on the order of, the trustee."  (emphasis added).  Likewise, as

23 property of Debtor's estate, the automatic stay under 11 U.S.C. § 362 protects the A/R from

24 Panthers' efforts to exercise remedies against it outside the bankruptcy case, including by obtaining

25 payment of the A/R from Petco via the mechanism of an account-debtor demand under the UCC.

26     Therefore, Panthers' argument that the Stipulation impermissibly "modified" Panthers'

27 rights under the 3-Party Agreement without Panthers' consent does not hold water.  The *Stipulation*

28 did not modify Panthers' rights at all.  Again, the Stipulation only recognized that the A/R became

14
**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

1   property of the estate upon Debtor's bankruptcy filing under 11 U.S.C. § 541, that the bankruptcy

2   stay under 11 U.S.C. § 362 prevented Panthers from continuing to exercise its remedies based on

3   its security interest in the A/R (and, likewise, prevented Petco from facilitating such exercise of

4   remedies by paying the A/R to Panthers), and that 11 U.S.C. § 542(b) instead required Petco to pay

5   the A/R over to Debtor.

6   **C.  Ordering Petco to Pay the A/R to Panthers Would Modify the 3-Party Agreement
        Without Petco's Consent Unless the Court Adjudicates Panthers' Priority Vis-à-**

7       **Vis Settle**

8           While the Stipulation did not "modify" the 3-Party Agreement without Panthers' consent,

9   Panthers' request that this Court vacate the Order and then direct Petco to pay all A/R directly to

10  Panthers, if granted, _would_ modify the terms of the 3-Party Agreement without Petco's required

11  consent unless this Court expressly adjudicates priority between Panthers and Settle.

12          Even absent the effects of 11 U.S.C. §§ 362, 541 and 542, Panthers had no current right to

13  payment of the A/R by Petco as of the petition date.  Prior to the petition date, Petco had already

14  instituted a holdback under Section 2 of the 3-Party Agreement, which entitled Petco to halt further

15  payments of A/R to Panthers if Petco received an account-debtor demand from another creditor

16  with a UCC-1 properly filed prior to November 18, 2024 (the filing date of Panthers' UCC-1) and

17  Panthers did not then either provide Petco with written agreement to indemnify Petco against such

18  competing demand or obtain a final, non-appealable court order directing Petco to pay A/R to

19  Panthers rather than the other demanding creditor.  Ex. A-7 at § 2.  On August 19, 2025, Petco

20  received such a demand from Settle (whose UCC-1 had been filed April 17, 2024).  Ex. A at ¶ 20;

21  Ex. A-8.  After investigating the details of Settle's security interest, on September 2, 2025, Petco

22  gave Panthers notice of Petco's holdback under Section 2 of the 3-Party Agreement based on

23  Settle's competing demand.  Ex. A at ¶¶ 21 & 23; Ex. A-12.  Panthers refused to provide Petco

24  with a written agreement to indemnify Petco against Settle's demand and, thus, Petco maintained

25  the holdback of further A/R payments through and beyond the petition date.  Ex. A at ¶¶ 27 & 29;

26  Ex. A-13.

27          Therefore, Panthers' request that the Court vacate the Order and then order Petco to pay

28  over all A/R to Panthers would impermissibly modify the 3-Party Agreement without Petco's

15

required consent unless the Court specifically adjudicates that Panthers' rights in the A/R are superior to Settle.  The holdback right under Section 2 was a material term of the 3-Party Agreement, designed to protect Petco from having to pay Panthers only to get hit with double liability on the same debt because that A/R should have been paid to a different creditor in response to their demand.  The Court should not deprive Petco of the benefit of this bargain and should only direct Petco to pay over the A/R to Panthers if the Court also finds expressly that Panthers interest in the A/R is superior to Settle's interest (thereby protecting Petco from future attack by Settle and satisfying the alternative trigger to end a holdback under Section 2 through a Court order that specifically adjudicates the competing rights of Panthers and the other demanding party).

**D. Debtor's Failure to Provide Panthers Notice of the Stipulation Contemporaneous with Its Filing Was Unintentional and Resulted From a Clerical Error**

Panthers accuses Debtor and Petco of conspiring to obtain the Stipulation and the Order approving it without notice to Panthers in order to intentionally deprive Panthers of due process. But that was not the case.  At Petco's demand, Debtor was supposed to (and intended to) give Panthers notice of the Stipulation contemporaneous with its filing.  The only reason this did not occur was because of a misunderstanding between Debtor's counsel and their paralegal, with no involvement by Petco whatsoever.

Contrary to Panthers' imagined scheme to prevent it from getting timely notice of the Stipulation, Panthers was supposed to get notice of the Stipulation as soon as it was filed because Petco insisted on that and demanded that it be a requirement under the Stipulation that Debtor provide such notice to Panthers.  Ex. A at ¶ 34; Dkt. No. 15 at ¶ 4 (requiring that Debtor give Panthers notice contemporaneous with the filing of the Stipulation).  That the Stipulation was never intended to strip Panthers of its rights without notice is likewise clear from the fact that the Stipulation expressly provided that "[a]ll Parties' rights and defenses, including as to liens, priority and the Three-Party Agreement, are reserved."  *Id.* at ¶ 2.

Once the Stipulation was filed, Debtor's counsel instructed their paralegal to serve a copy on Panthers, which had not received ECF service upon filing since it had yet to appear in the bankruptcy case.  Ex. B at ¶ 14; Ex. B-1.  Debtor's counsel then assured Petco that Debtor was

16

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

attending to service of the Stipulation on Panthers.  Ex. A at ¶¶ 36 & 39; Ex. A-16; Ex. B at ¶ 16.

Thus, both Debtor's counsel and Petco were operating under the assumption that Panthers had

received contemporaneous notice of the Stipulation as required by its terms.  Ex. A at ¶ 39; Ex. B

at ¶ 19.

It was not until a month later, when Panthers filed the Motion, that Petco and Debtor learned

of the error.  Ex. A at ¶¶ 41 & 42; Ex. B at ¶¶ 20 & 21.  At that time, in response to the allegations

in the Motion, Debtor's counsel investigated and discovered that, due to an apparent

miscommunication or misunderstanding between Debtor's counsel and their paralegal, the

Stipulation had not actually been served on Panthers the day it was filed (as Debtor's counsel had

directed their paralegal), but only after the Order had been entered.  Ex. B. at ¶¶ 21 & 22.

**E.    The Order Should Not Be Vacated Now Because Panthers Suffered No Prejudice
as a Result of the Service Mishap, Whereas Vacating the Order Would Severely
Prejudice Petco After Petco Took Irreversible Action in Reliance on the Order**

Debtor's unintentional failure to provide Panthers with notice of the Stipulation on the day

it was filed is not sufficient reason to vacate the Order approving the Stipulation.  Panthers has

suffered *no prejudice* as a result of the service mishap.  Virtually all of the A/R Petco paid into the

estate pursuant to the Stipulation remains in the estate today.  *Compare* Ex. A at ¶¶ 39 & 40 (stating

that since the petition date, Petco has paid $709,400 into the estate under the Stipulation) *with* Dkt.

No. 116 at 2 (reflecting "Cash balance on hand at date of conversion" as "$708,382.98 estimated

(gross) as of October 22, 2025").

In contrast, if the Order is vacated now, Petco will be *severely prejudiced*.  In reliance on

and in compliance with the terms of the Stipulation and the Order approving it, Petco took

*irreversible* action, paying $709,400 of A/R directly to Debtor.  Ex. A at ¶ 39.  The only reason

Petco was willing to pay those funds into the estate without requiring Debtor to file a turnover

motion under 11 U.S.C. § 542(b) was because Debtor had obtained the Order from this Court

approving the Stipulation.  The Order provided Petco with certainty that it would not be subject to

later attack by Panthers for paying the A/R to Debtor as required by 11 U.S.C. §§ 362, 541 and

542(b).  In the absence of the Order, Panthers may seek to file suit against Petco under the 3-Party

Agreement, potentially outside of this Court.  It does not matter that Petco's actions were consistent

1   with the requirements of the Bankruptcy Code that override the 3-Party Agreement; a lawsuit by

2   Panthers in a forum unfamiliar with the Bankruptcy Code might still cost Petco significant amounts

3   to defend in excess of the already significant amounts it has spent as a result of being caught in the

4   middle of this dispute.

5       Once the Court entered the Order, Petco was required to comply with it and pay over the

6   funds as agreed upon in the Stipulation. *See, e.g.*, *Maness v. Meyers*, 419 U.S. 449, 458–60, 95 S.

7   Ct. 584, 591–92, 42 L. Ed. 2d 574 (1975) ("...all orders and judgments of courts must be complied

8   with promptly….The orderly and expeditious administration of justice by the courts requires that

9   'an order issued by a court with jurisdiction over the subject matter and person must be obeyed.");

10  *Miller v. Slotkin Defective Trust of December 14, 2012 (In re Slotkin)*, Adv. No. 2:20-ap-01672,

11  2023 Bankr. LEXIS 1261, at *15–16 (Bankr. C.D. Cal. Jan. 3, 2023) ("Unless and until a

12  bankruptcy court order (or any court order for that matter) has been vacated or reversed, or had its

13  effectiveness stayed by court order, the parties are required to comply with the terms of that

14  order.").

15      Petco's good faith reliance on the standing Order when Petco paid funds into the estate

16  should be protected as a matter of public policy. *See, e.g.*, *Motor Vehicle Cas. Co. v. Thorpe

17  Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012) ("public policy

18  values the finality of bankruptcy judgments because debtors, creditors, and third parties are *entitled

19  to rely on* a final bankruptcy court order.") (emphasis added); *see also, e.g.*, *King v. Rell*, No. 3:06-

20  cv-1703 (VLB), 2008 U.S. Dist. LEXIS 22678, at *16-18 (D. Conn. Mar. 24, 2008) (explaining

21  that "a person directed by the court to act is entitled to quasi-judicial immunity" because "execution

22  of a valid court order without fear of reprisal is necessary for the court's authority and ability to

23  function" and collecting cases holding same); *Mays v. Sudderth*, 97 F.3d 107, 112 (5th Cir. 1996)

24  (same); *Coverdell v. Dep't of Soc. & Health Servs., State of Wash.*, 834 F.2d 758, 764–65 (9th Cir.

25  1987) (same, explaining "fearless and unhesitating execution of court orders is essential if the

26  court's authority and ability to function are to remain uncompromised.") (quoting *Briscoe v. LaHue*,

27  460 U.S. 325, 335, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983)) (internal marks omitted); *Kermit

28  Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976) (receiver who

1  executes a court order entitled to absolute immunity).

2  Therefore, the Order should not be vacated now, after Petco has already acted in reliance

3  upon and compliance therewith.

4  **F.  Any Modification of the Order Should Protect Petco**

5  If the Court is, nonetheless, inclined to modify the Order now, then Petco should be

6  protected under any such modification.  Foremost, any modification of the Order should protect

7  Petco with regard to actions already taken in reliance on the Order.  Such modification should

8  provide that funds already paid into the estate by Petco under the Stipulation should be held in

9  segregation by the Trustee[4] or be interpled into the registry of the Court by the Trustee (who has

10  indicated he is willing to do so) so that competing claimants can assert their rights therein.  Any

11  modification of the Order should also authorize and direct Petco to pay the remaining A/R due from

12  Petco to the Trustee (to held in segregation along with the funds already paid) or to interplead

13  payment of such remaining A/R into the registry of the Court.   And any modification of the Order

14  should expressly provide that Petco's prior payment of $709,400 into the estate pursuant to the

15  Stipulation and any further funds paid by Petco to the Trustee or interpled into the registry of the

16  Court discharges Petco's liability to Debtor (and to any party claiming through it, including

17  Panthers) with regard to such funds.

18  **G.  Panthers' Request for an Accounting from Petco Should Be Denied**

19  Finally, in the Motion, Panthers goes beyond requesting reconsideration of the Order and

20  also appears to request that Petco be forced to provide Panthers with a burdensome accounting,

21  including voluminous amounts of documents related to the commercial transactions between Petco

22  and Debtor.  Whether Panthers is, in fact, requesting an accounting from Petco is unclear.  Panthers

23  includes Petco within the scope of its accounting request in the conclusion section of the Motion

24  (Dkt. No. 100 at 17), but a page earlier only requests an accounting from "Debtor and the Trustee"

25  (*id.* at 16).

26  If Panthers is actually requesting an accounting from Petco, that request should be denied.

27  For one thing, Panthers' request for an accounting is expressly predicated on rights provided to

28
_____

[4] Panthers requests the same relief in the conclusion section of its Motion.

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

1    Panthers under its 2-party Factoring Agreement with Debtor. *See Id.* at 16 ("This relief is warranted

2    pursuant to Paragraph 16 of the Factoring Agreement…."). Panthers provides no explanation how

3    Petco could be made to provide information under the terms of a contract to which Petco is not

4    even a party or even a third-party beneficiary. Nor does Panthers explain why such burden should

5    be placed on Petco now, when Panthers has yet to even establish its priority vis-à-vis the other

6    competing claimants to the A/R who facially appear to be senior to Panthers. Instead, any

7    information Panthers wants from Petco should be sought, if at all, through normal discovery with

8    all the attendant procedural safeguards against undue burden and overreach provided for under the

9    Bankruptcy Rules and the Federal Rules of Civil Procedure.

10   ## CONCLUSION

11        For the foregoing reasons, the Motion should be denied, and the Court should not vacate

12   the Order nor require Petco to provide Panthers with an accounting. Alternatively, if the Court

13   does choose to modify the Order, the Court should protect Petco and its reliance on the Order by

14   providing in any modification of the Order that A/R already paid by (and that still payable by)

15   Petco be held in segregation by the Trustee or be interpled into the registry of the Court, in either

16   case so that Petco may discharge its liability with regard to A/R through such payment of the

17   funds and, thereafter, the competing claimants can assert their rights in the funds and have those

18   rights adjudicated by the Court.

19

20   Dated: December 2, 2025          **BAKER & HOSTETLER LLP**

21

22   By:   /s/ *Lauren T. Attard*
                    Lauren T. Attard
                    Adam L. Fletcher

23   *Attorneys for Petco Animal Supplies Stores, Inc.*

24

25

26

27

28

**OPPOSITION TO MOTION TO RECONSIDER ORDER APPROVING STIPULATION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

 BakerHostetler LLP, 1900 Avenue of the Stars, Suite 2700, Los Angeles CA 90067

A true and correct copy of the foregoing document entitled (*specify*): Opposition of Petco Animal Supplies Stores, Inc.
 to Panthers Capital LLC's Motion to Reconsider Order Approving Stipulation Between Debtor and Petco for Turnover

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 12/02/2025_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

 See Exhibit A

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/02/2025 | :Lauren Attard | /s/ Lauren Attard |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## EXHIBIT A

- Ismail Amin    iamin@talglaw.com,
  pgilmore@talglaw.com;kvescera@talglaw.com;shalberstadt@talglaw.com;cstark@talglaw.com;ckim@talglaw.com;eavakian@talglaw.com

- Tanya Behnam    tbehnam@polsinelli.com,
  tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com

- Christopher Beyer    cab@replevin.com, ecf@writofseizure.com

- Michael D Breslauer    mbreslauer@swsslaw.com, sdurazo@swsslaw.com

- Dennis A Dressler    ddressler@dresslerpeters.com

- David M Goodrich (TR)    dgoodrich@go2.law,
  c143@ecfcbis.com;dgoodrich11@ecf.axosfs.com;lrobles@go2.law

- Michael Jones    michael.jones4@usdoj.gov

- Ron Maroko    ron.maroko@usdoj.gov

- Byron Z Moldo    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com

- Scott Olson    solson@seyfarth.com, chidocket@seyfarth.com

- Amitkumar Sharma    amit.sharma@aisinfo.com

- Randye B Soref    rsoref@polsinelli.com,
  ccripe@polsinelli.com;ladocketing@polsinelli.com

- Chase Aleksander Stone    cstone@ecjlaw.com,
  aantonio@ecjlaw.com,dperez@ecjlaw.com,cmacan@ecjlaw.com

- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

- Cranston J Williams    cwilliams3@socalgas.com