| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Raffi Khatchadourian, Esq. - SBN 193165<br>Hemar, Rousso & Heald, LLP<br>15910 Ventura Boulevard, 12th Floor<br>Encino, CA 91436<br>Telephone: (818) 501-3800<br>Facsimile: (818) 501-2985<br>E-mail: raffi@hrhlaw.com<br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* TOKYO CENTURY (USA) INC. | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>CIS International Holdings (N.A.) Corporation<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:25-bk-18374-BR<br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(PERSONAL PROPERTY)**<br><br>DATE: 01/20/2026<br>TIME: 10:00 am<br>COURTROOM: 1668 |
|---|---|

**Movant:** TOKYO CENTURY (USA) INC.

1. **Hearing Location:**

   ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 1                      **F 4001-1.RFS.PP.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice and remains pending. After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  12/30/2025

Hemar, Rousso & Heald, LLC
_____
Printed name of law firm (if applicable)

Raffi Khatchadourian, Esq.
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 2                                    **F 4001-1.RFS.PP.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

   a. ☒ Vehicle (*year, manufacturer, type, and model*): Please see attached Exhibit 1

   *Vehicle Identification Number:* Please see attached Exhibit 1
   *Location of vehicle (if known):* In Debtor's possession- 1405 W. 178th St., Gardena, CA 90248

   b. ☐ Equipment (*manufacturer, type, and characteristics*):

   *Serial number(s):*

   *Location (if known):*

   c. ☐ Other Personal Property (*type, identifying information, and location*):

3. **Bankruptcy Case History:**

   a. ☒ A voluntary bankruptcy petition   ☐ An involuntary bankruptcy petition
      under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13   was filed on (*date*) 09/22/2525 .

   b. ☒ An order to convert this case to chapter  ☒ 7  ☐ 11  ☐ 12  ☐ 13   was entered on (*date*) 10/22/2025 .

   c. ☐ Plan was confirmed on (*date*) _____ .

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

   (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

   (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

   (C) ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

   (D) ☐ Other (*see attached continuation page*).

   (2) ☐ The bankruptcy case was filed in bad faith.

   (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                              Page 3                              F 4001-1.RFS.PP.MOTION

    (B) ☐  The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

    (C) ☐  A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

    (D) ☐  Other bankruptcy cases were filed in which an interest in the Property was asserted.

    (E) ☐  The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

  (3) ☐  *(Chapter 12 or 13 cases only)*  All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation  ☐ postpetition postconfirmation.

  (4) ☐  The lease has matured, been rejected or deemed rejected by operation of law.

  (5) ☐  The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

  (6) ☐  Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

  (7) ☒  For other cause for relief from stay, see attached continuation page.

  b. ☒  Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

  a. ☐  These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

  b. ☐  Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

  c. ☐  Other *(specify)*:

6. ☒  **Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

  a.  The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

  b. ☐  Supplemental declaration(s).

  c. ☐  The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) _____.

  d. ☒  Other: Attachment to Declaration of Tito Cabrera (Ex. 1), Secured Promisory Note XXXX4337 (Ex. A) Certificate of Title (Ex. B), Secured Promisory Note XXXX1110 (Ex. C), Certificate of Title (Ex. D). JD Power Valuations (Exs. E and F).

7. **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 4                          **F 4001-1.RFS.PP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ If relief from stay is not granted, the court orders adequate protection.

12. ☐ See continuation page for other relief requested

Date:  12/30/2025

Hemar, Rousso & Heald, LLP
Print name of law firm

Raffi Khatchadourian, Esq.
Print name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 5                    **F 4001-1.RFS.PP.MOTION**

## PERSONAL PROPERTY DECLARATION

I, (name of declarant) Tito Cabrera _____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the Property (specify):

a.  ☐ I am the Movant.

b.  ☒ I am employed by Movant as (title and capacity): Vice President - Operations

c.  ☐ Other (specify):

2.  a.  ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

b.  ☐ Other (see attached):

3.  The Property is:

a.  ☒ Vehicle (year, manufacturer, type, model and year): Please see attached Exhibit 1

Vehicle Identification Number: Please see attached Exhibit 1
Location of vehicle (if known): In Debtor's possession- 1405 W. 178th St., Gardena, CA 90248

b.  ☐ Equipment (manufacturer, type, and characteristics):

Serial number(s):
Location (if known):

c.  ☐ Other personal property (type, identifying information, and location):

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                  Page 6                        F 4001-1.RFS.PP.MOTION

4.  The nature of Debtor's interest in the Property is:

    a.  ☒  Sole owner

    b.  ☐  Co-owner (*specify*):

    c.  ☐  Lessee

    d.  ☐  Other (*specify*):

    e.  ☒  Debtor ☐ did  ☒ did not   list the Property in the schedules filed in this case.

5.  ☐  The lease matured or was rejected on (*date*) _____:

    a.  ☐  rejected

        (1)  ☐  by operation of law.

        (2)  ☐  by order of the court.

    b.  ☐  matured.

6.  Movant has a perfected security interest in the Property.

    a.  ☒  A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit _A, C_ .

    b.  ☒  The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law.  True and correct copies of the following items are attached to this motion:

        (1)  ☒  Certificate of title ("pink slip") (Exhibit _B, D_ ).

        (2)  ☐  Vehicle or other lease agreement (Exhibit _____).

        (3)  ☒  Security agreement (Exhibit _A, C_ ).

        (4)  ☐  Other evidence of a security interest (Exhibit _____).

    c.  ☐  The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law.  True and correct copies of the following items are attached to this motion:

        (1)  ☐  Security agreement (Exhibit _____).

        (2)  ☐  UCC-1 financing statement (Exhibit _____).

        (3)  ☐  UCC financing statement search results (Exhibit _____).

        (4)  ☐  Recorded or filed leases (Exhibit _____).

        (5)  ☐  Other evidence of perfection of a security interest (Exhibit _____).

    d.  ☐  The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

        (1)  ☐  Credit application (Exhibit _____).

        (2)  ☐  Purchase agreement (Exhibit _____).

        (3)  ☐  Account statement showing payments made and balance due (Exhibit _____).

        (4)  ☐  Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

    e.  ☐  Other liens against the Property are attached as Exhibit _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                      Page 7                                      **F 4001-1.RFS.PP.MOTION**

7.  Status of Movant's debt:

    a.  The amount of the monthly payment: $ _____ .

    b.  Number of payments that became due and were not tendered:  ☒ prepetition  ☒ postpetition.

    c.  Total amount in arrears: $ _____ .

    d.  Last payment received on (date): _____ .

    e.  Future payments due by the anticipated hearing date (if applicable): _____
        An additional payment of $ _____ will come due on (date) _____ , and on
        the _____ day of each month thereafter.  If the payment is not received by the _____
        day of the month, a late charge of $ _____ will be charged under the terms of the loan.

8.  ☐ Attached as Exhibit _____ is a true and correct copy of a POSTPETITION payment history that accurately
      reflects the dates and amounts of all payments made by the Debtor since the petition date.

9.  Amount of Movant's debt:

    a.  Principal:.................................................................................................... $ _____
    b.  Accrued interest: ....................................................................................... $ _____
    c.  Costs (attorney's fees, late charges, other costs):.................................... $ _____
    d.  Advances (property taxes, insurance): ...................................................... $ _____
    e.  TOTAL CLAIM as of _____: ........................................................... $ _____

10. ☒ (Chapter 7 and 11 cases only) Valuation: The fair market value of the Property is: $ _25,500.00_____ .
      This valuation is based upon the following supporting evidence:

    a.  ☒ This is the value stated for property of this year, make, model, and general features in the reference guide
        most commonly used source for valuation data used by Movant in the ordinary course of its business for
        determining the value of this type of property.  True and correct copies of the relevant excerpts of the most
        recent edition of the reference guide are attached as Exhibit E, F____ .

    b.  ☐ This is the value determined by an appraisal or other expert evaluation.  True and correct copies of the
        expert's report and/or declaration are attached as Exhibit _____ .

    c.  ☐ The Debtor's admissions in the Debtor's schedules filed in the case.  True and correct copies of the relevant
        portions of the Debtor's schedules are attached as Exhibit _____ .

    d.  ☐ Other basis for valuation (specify):

> **NOTE:** If valuation is contested, supplemental declarations providing additional foundation for the
> opinions of value should be submitted.

11. Calculation of equity in Property:

    a.  ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**

        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
        senior to Movant's debt is $ _0.00_____ and is _0____ % of the fair market value of the
        Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ 0.00 _____.

12. ☒ The fair market value of the Property is declining because:
Continuing use, ordinary depreciation and general market conditions


13. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

14. ☐ Movant regained possession of the Property on (date) _____, which is: ☐ prepetition  ☐ postpetition.

15. ☐ (Chapter 12 or 13 cases only) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (date) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (date) _____
The plan was confirmed on (if applicable) (date) _____

b. Postpetition <u>preconfirmation</u> payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. <u>Postconfirmation</u> payments due BUT REMAINING UNPAID after the plan confirmation date (if applicable):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:  $
(For details of type and amount, see Exhibit _____)

e. Attorneys' fees and costs:  $
(For details of type and amount, see Exhibit _____)

f. Less suspense account or partial paid balance:  $ [              ]

TOTAL POSTPETITION DELINQUENCY:  $

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____.  See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property:

(1) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not  granted.

(2) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not  granted.

(3) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not  granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 10                                    **F 4001-1.RFS.PP.MOTION**

b.  ☐  Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c.  ☐  For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

__12-29-25__   Tito Cabrera_____
Date                    *Printed Name*

_____
*Signature*

*Wong Wi Wi*

**WEI WONG**
NOTARY PUBLIC-STATE OF NEW YORK
No. 01WO0012976
Qualified in Westchester County
My Commission Expires 08-30-2027

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                Page 11                     **F 4001-1.RFS.PP.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

15910 Ventura Boulevard, 12th Floor
Encino, CA 91436

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 12/30/2025 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Trustee David M. Goodrich dgoodrich@go2.law
U.S. Trustee's counsel Michael Jones michael.jones4@usdoj.gov and Ron Maroko ron.maroko@usdoj.gov
Debtor's counsel Byron Z. Moldo bmoldo@ecjlaw.com and Chase Aleksander Stone cstone@ecjlaw.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date) 12/30/2025 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor CIT International Holdings (N.A.) Corp, 1405 W. 178th St., Gardena, CA 90248

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 12/30/2025 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Served via Messenger: Hon. Barry Russell, U.S. Bankruptcy Court, 255 E. Temple Street, Bin outside suite 1660, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 12/30/2025 | DENISE O. PAUFF | /s/ Denise O. Pauff |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Attachment to Declaration of Tito Cabrera in Support of
Notice of Motion and Motion for Relief from Automatic Stay**

### 4337

As to the 2021 Isuzu NPR-HD, VIN: 54DC4W1D7MS209733 subject to Secured Promissory Note XXXX4337 attached hereto as **Exhibit A**:

Amount of monthly payments: $1,207.74

Total amount in arrears: five payments of $1,207.74 due pre-petition and three payments of $1,207.74 due post-petition totaling arrears of $9,661.92

Last payment received on: May 12, 2025, applied to payment due April 1, 2025

Future payments due by anticipated hearing date: 1

An additional payment of $1,207.74 will come due on January 1, 2026 and on the 1st day of each month thereafter.

Amount of Movant's Debt:
   a. Principal: $35,268.11
   b. Accrued Interest: $1,006.51
   c. Costs: $843.08
   d. Advances: $0.00
   Total claim as of October 1, 2025: $37,117.70

Equipment Value: $25,500.00 per Exhibit E

### 1110

As to the 2021 Isuzu NPR-HD, VIN: 54DC4W1D8MS209725 subject to Secured Promissory Note XXXX1110 attached hereto as **Exhibit C**:

Amount of monthly payments: $1,123.09

Total amount in arrears: five payments of $1,123.09 due pre-petition and three payments of $1,123.09 due post-petition totaling arrears of $8,454.18

Last payment received on: May 23, 2025, applied to payment due March 24, 2025

Future payments due by anticipated hearing date: 1

An additional payment of $1,207.74 will come due on January 24 2026 and on the 1st day of each month thereafter.

Amount of Movant's Debt:
   a. Principal: $26,404.26
   b. Accrued Interest: $637.57
   c. Costs: $936.55
   d. Advances: $0.00
   Total claim as of September 24, 2025: $27,978.38

Equipment Value: $25,500.00 per Exhibit F

4337

# Isuzu Finance of America, Inc.

**Secured Promissory Note**

| Borrower: | CIS International Holdings (N.A.) Corp. | Lender/Creditor: | **ISUZU FINANCE OF AMERICA, INC.** | Date: | 12/27/2022 |
| Address: | 1405 W. 178th Street | Address: | 2500 Westchester Ave., Suite 312 | | |
| | Gardena, CA 90248 | | Purchase, New York 10577 | | |
| | | | Attention: Operations | | |

| Year | Make | Model | Vehicle Identification Number | License Number (if applicable) | | Use For Which Purchased |
|------|------|-------|-------------------------------|--------------------------------|---|-------------------------|
| 2021 | Isuzu | NPR-HD | 54DC4W1D7MS209733 | ☒ NEW<br>☐ Demonstrator<br>☐ Other | | ☒ BUSINESS OR COMMERCIAL |

Description of Vehicle's Body/Attachments: __16' Morgan Dry Van Body with Maxon Liftgate__
Vehicle Body/Attachments Serial Numbers: ___
Gross Vehicle Weight: __14500__
Address where Vehicle will be located:
Street Address: __2389 Air Park Road__
City/State/Zip: __Rhinelander, WI 54501__

Interest Rate: 6.77% per annum.

| | | | |
|---|---|---|---|
| 1. Vehicle Cash Sales Price | | $62,490.00 | Borrower agrees to pay the "Total Obligation" (Item 13) in accordance with the following schedule (and any additional page(s) of schedule attached): |
| 2. Net Trade-in Less Liens | | $0.00 | |
| 3. Cash Down Payment | | $6,500.00 | |
| 4. Net Vehicle Cash Sales Price (1-2-3) | $55,990.00 | | |

| No. of Installments | First Payment Date | Payment Amount | Total |
|---------------------|--------------------|----------------|-------|
| 60 | | $1,207.74 | $72,464.40 |

| | | |
|---|---|---|
| 5. Other Taxable Charges (Explain) | $0.00 | |
| 6. Sales Tax | $3,456.20 | |
| 7. Registration/Title Fees | $834.08 | |
| 8. Other Charges | | |
| Acquisition Fee | $250.00 | |
| Documentation Fee | $795.00 | |

If shown below, Borrower has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Borrower agrees that Lender collects such fees and charges for the service provider only as an accommodation to Borrower and such agreements are not part of this Contract. The Lender is not responsible for any services, disposables or insurance obligations.

| | | |
|---|---|---|
| 9. Total Itemized Charges (5 through 8) | $5,335.28 | |
| 10. Amount Financed (4 + 9) | $61,325.28 | |
| 11. Finance Charge | $11,139.12 | |
| 12. Other (Explain) | | |
| 13. Total Obligation (10+11+12) | $72,464.40 | |

| Service | Term (mos.) | Total Charge |
|---------|-------------|--------------|
| | | |
| | | |

**Total Charge Is Included in "Vehicle Cash Sales Price"**

1.       **Promise to Pay and Interest.**  The below-signed borrower, and if more than one, each below-signed borrower, jointly and severally (the "Borrower"), promises to pay in full the Total Obligation set forth in Item 13 above to Isuzu Finance of America, Inc. ("Lender") in lawful money of the United States of America, with interest thereon as herein provided, to be paid in the manner set forth herein.  All interest due under the Loan Documents (as defined below) shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of days elapsed.  Borrower agrees to pay an effective rate of interest that is the Interest Rate set forth on page 1 (the "Interest Rate").  Borrower shall also be liable for and shall pay when due any other charges or fees paid or to be paid in connection with the Loan Documents.  In addition to the Total Obligation, Borrower agrees to pay all other amounts owed to Lender under this Note and the other Loan Documents (collectively with the Total Obligation, the "Indebtedness") when due.  Payment of the Indebtedness shall be made to Lender at such place as Lender or its successor may designate from time to time in writing.  Lender reserves the right to require payment on this Secured Promissory Note to be made by wired federal funds or other immediately available funds.  "Loan Documents" shall mean this Secured Promissory Note (this "Note"), all other notes (or other instruments) made by, or other obligations of, Borrower to Lender; any guaranty(ies) of any payment or performance of the Indebtedness; and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note or the credit evidenced hereby, as any or all of such documents may be executed or amended from time to time.

2.       **Security Interest.**  In order to secure payment of the Indebtedness and complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into (the "Secured Obligations"), Borrower hereby grants to Lender a security interest in and to the Vehicle and such other equipment and goods as are described above (collectively, the "Equipment"), together with all present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory notes, warranties, service contracts, documents, and records now or hereafter arising from the Equipment (collectively, the "Collateral").  Borrower authorizes Lender to file a financing statement, or a photocopy or other reproduction of this Note, or any financing statement, to perfect its security interest.  Principal shall bear interest at the Interest Rate from the date of disbursement until the applicable due date, whether due by acceleration or otherwise.  Any payment due on a date which is a date when banking institutions are not open to the public under the laws of the State of New York shall be due on the next succeeding date on which such institutions are open.  All Indebtedness not paid when due shall bear interest from the due date, until paid at a rate (the "Default Rate") which is the lesser of sixteen percent (16%) per annum or the maximum rate permitted under applicable law.  Borrower is responsible for assuring that a lien on the Collateral in favor of the Lender is properly recorded on any title to the Collateral and that such lien remains in full force and effect until all amounts due Lender hereunder shall have been paid in full.

IFAI – Secured Prom Note

1 of 4

**EXHIBIT** _A_, **Page** _15_ **of** _30_

**4337**

3.    **Receipt and Application of Payments.** Payments shall not be deemed received by Lender until good funds are actually received by Lender. Payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Lender in cash or its equivalent, will be applied in reduction of the Secured Obligations in such order and manner as Lender may direct in its sole discretion, and Borrower irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Lender shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Lender's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

4.    **Prepayment.** So long as no Default or Event of Default shall have occurred and be continuing and Borrower shall have given Lender at least fourteen (14) days prior written notice, Borrower shall have the option to prepay this Note on any Installment Due Date set forth on page 1 of this Note or any accompanying any schedule referred to on page 1 of this note) (each, an "**Installment Due Date**") for an amount (the "**Prepayment Amount**") equal to (1) any unpaid Payment Amounts and all other amounts due on or before such Installment Due Date, plus (2) the principal outstanding on the books and records of the Lender on such Installment Due Date, plus (3) any applicable sales taxes. Payment of the Prepayment Amount, together with all other amounts due and owing by Borrower under the Note (including, without limitation, the scheduled Payment Amount) on or before the Installment Due Date, shall be made on the Installment Due Date in immediately available funds. If Borrower shall fail to pay all amounts required to be paid under the Note on the Installment Due Date, the Note shall continue in full force and effect and Borrower agrees to reimburse Lender for all reasonable attorney's fees, costs, expenses and liabilities incurred in connection therewith.

5.    **Late Charges.** If any payment of principal and interest or any other Indebtedness is not received in full by Lender within ten (10) days after its due date, then in addition to all other rights and remedies of Lender, a late charge equal to ten percent (10%) of the amount due and unpaid will be charged to Borrower or such lesser amount as shall be the maximum permissible late charge thereon. Such late charge shall be immediately due and payable upon receipt of written notice from Lender and constitute "**Indebtedness**" and a "**Secured Obligation**" under this Note.

6.    **No Counterclaims, Deductions, or Offsets.** All payments and obligations of Borrower under the Loan Documents shall be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction.

7.    **Insurance and Risk of Loss.** All risk of loss, damage or destruction of the Equipment will at all times be on Borrower. Borrower will keep the Equipment insured at Borrower's expense against liability in an amount as required by Lender or, if in excess thereof, the amount required under applicable law, and loss or damage by fire, theft and other customary risks for the greater of the Equipment's full insurable value or the Indebtedness, with a deductible not to exceed $2,500 per item of Equipment, or such lesser amount as shall be required by applicable law. Coverage and insurer will be subject to Lender's reasonable approval. Each policy shall name Lender as loss payee and will further provide that Lender's interest can not be invalidated by any act, omissions or neglect of any party other than Lender and that the insurer will give Lender thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Borrower or insurer. Borrower will promptly deliver a copy of each policy or an insurance certificate acceptable to Lender prior to any advancement of funds hereunder, and will later provide proof of renewal at least 30 days prior to expiration or cancellation. If Borrower fails to so insure the Equipment, Lender may purchase such insurance at Borrower's expense, the purchase of which need not include liability or protection of Borrower's interest. Borrower hereby authorizes and irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution, to execute and endorse all documents, checks, or drafts in Borrower's name and to submit any proof of loss to collect such insurance.

8.    **Borrower's Representations, Warranties, and Agreements.** Borrower represents, warrants, and agrees that: (a) this Note evidences a loan obtained by it, and the Equipment is to be used by it, solely for business or commercial purposes; (b) prior to signing this Note, Borrower read and understood the provisions hereof, and agrees to all the terms and conditions contained herein; (c) except for the security interest granted to Lender, the Collateral will remain free from all liens and security interests; (d) all information supplied by Borrower in any financial, credit, or accounting statement to Lender is and will be true, correct and genuine, and Borrower consents to the Lender's prior review of Borrower's credit reports prior to the date of this Note and to the ongoing review of Borrower's credit reports during the term of the credit evidenced by this Note; (e) Borrower has full authority to borrow the credit evidenced by this Note for the purposes provided for herein and to enter into each Loan Document to which it is a party, and in so doing it is not violating any law, regulation or agreement; and (f) Borrower has duly executed and delivered this Note and has taken all necessary and appropriate actions to make each Loan Document to which it is a party binding and enforceable against Borrower in accordance with its terms. Borrower covenants and agrees that: (i) it shall not allow a Blocked Person to have an ownership interest in or control of Borrower, (ii) it shall defend at its own cost any action, proceeding or claim affecting the Collateral; (iii) it shall maintain each item of the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and any warranties; (iv) it shall promptly pay all taxes, assessment, license fees and other public or private charges when levied against the Collateral or any Loan Document; (v) it shall obtain a certificate of title on each item of Equipment showing Lender's first priority security interest and preserve and perfect Lender's security interest, such that such security interest shall at all times be a first priority perfected security interest subject to no other liens or encumbrances by authorizing Lender to file financing statements covering the Collateral and also execute any required financing statements; (vi) it shall not misuse, secrete, sell, rent, encumber or transfer any item of Equipment; (vii) that Lender may enter any premises at any reasonable time to inspect the Equipment; (viii) it shall provide Lender with quarterly and annual financial statements upon request of Lender; and (ix) it shall reimburse Lender immediately after written notice for any expenses incurred by Lender in enforcing Borrower's obligations under any Loan Document. [As used herein, the term "Blocked Person" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) a person or entity whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law.]

9.    **Events of Default.** Each of the following shall be an event of default under this Note and the other Loan Documents (an "**Event of Default**"): (a) failure by the Borrower, or any other person (each, a "**Loan Party**", and collectively with the Borrower, the "**Loan Parties**") that from time to time is obligated to Lender under any of the Loan Documents, to pay when due (i) any amount due by such Loan Party under any of the Loan Documents, or (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or Indebtedness of any kind; (b) failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to such Loan Party, in any of the Loan Documents and such obligation or term or condition remains unsatisfied after ten (10) days' written notice to such Loan Party; (c) the breach of any covenant, or any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party to Lender in obtaining or hereafter in connection with the credit evidenced by this Note is materially incomplete, incorrect, or misleading as of the date made or delivered; (d) any Loan Party (i) is unable or admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors or (iii) applies for or acquiesces in the appointment of a trustee, receiver, or other custodian for such Loan Party or any of the property of such Loan Party or a trustee, receiver or other custodian is appointed for such Loan Party or any of the property of such Loan Party; (e) commencement of any insolvency or bankruptcy proceeding, or any similar proceeding under any federal, state, local, or foreign law by or against any Loan Party; (f) the death, incompetence, dissolution, or liquidation of any Loan Party; the consolidation or merger of any Loan Party with any other person or entity; or the taking of any action by any Loan Party toward a dissolution, liquidation, consolidation, or merger; (g) any Loan Party or any other person on behalf of any Loan Party claims that any Loan Document or any lien or security interest in any of the Collateral is not legal, valid, binding, or enforceable against any Loan Party, or that that the priority of any lien or security interest securing any of the Secured Obligations is different than the priority represented and warranted in the Loan Documents; (h) any of the Collateral is lost or destroyed; (i) Lender in good faith believes that the prospect of payment or performance hereunder is impaired; (j) there shall be a material change in the management, ownership or control of any Loan Party; (k) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder collectively be referred to as "**Governmental Authority**"); (l) if anyone in the control, custody or possession of any Collateral or any Loan Party is accused, alleged or charged

IFAI – Secured Prom Note                      2 of 4

EXHIBIT _F_, Page 16 of 30

4337

(whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (m) the occurrence of any condition or event that is a default or is designated as a default or event of default or an "Event of Default" under any other Loan Document or in any other agreement, contract, or indebtedness of any Loan Party to Lender.

10.     **Rights and Remedies of Lender.** Upon the occurrence of an Event of Default, Lender may, at its option, and without demand or notice: (a) declare the Indebtedness to be immediately due and payable, whereupon all of the Indebtedness shall be immediately due and payable; (b) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower; (c) require Borrower to make the Collateral available to Lender at a place to be designated by Lender; (d) at the expense of Borrower, make repairs to any item of Equipment deemed necessary by Lender; and (e) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses) shall be applied to the Indebtedness or any other indebtedness of Borrower to Lender and any surplus remaining thereafter shall be paid to Borrower or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Lender may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Lender and its successors and assigns. No liability shall be asserted or enforced against Lender under this section except for Lender's intentional wrongful acts. Lender may in its sole discretion waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default. Delay, discontinuance, or failure to exercise any remedy shall not be a waiver of such remedy or of any other right or remedy of Lender, or of the TIME IS OF THE ESSENCE provision. To the extent permitted under applicable law, Borrower expressly consents to and authorizes a court with jurisdiction to issue, by hearing without notice, such orders as may be necessary to enforce the terms of this Note, granting to Lender such powers as Lender shall need to enforce this Note. Any such court is directed to not require a bond of Lender, the parties agreeing that time is of the essence to protect Lender. To the extent permitted under applicable law, Borrower expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Lender existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Note (or to such other address as provided in writing by Borrower) be registered or certified mail at least five (5) days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Borrower.

11.     **Transfer or Assignment.** Lender may at any time transfer its rights and/or delegate its obligations under the Loan Documents or otherwise negotiate this Note in whole or in part, without any notice to or the consent of any Loan Party. The rights and obligations of Borrower may not be assigned or delegated.

12.     **Binding Effect.** This Note shall be binding upon Borrower and inure to the benefit of Lender and its successors and assigns. In addition and as permitted under applicable law, NO LOAN PARTY SHALL ASSERT AGAINST ANY ASSIGNEE OR TRANSFEREE OF LENDER ANY CLAIMS OR DEFENSES SUCH LOAN PARTY MAY HAVE AGAINST LENDER.

13.     **Collection Costs and Other Costs, Expenses and Fees.** In addition to the principal, interest, and late payment charges (if any), Borrower shall pay Lender on demand, and Lender shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Lender's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed. If this Note is terminated for any reason prior to the expiration of the original Term, then Borrower shall pay to Lender $300.00 on demand for processing the early termination. All such costs, expenses, and fees shall constitute "Indebtedness" and "Secured Obligations" and shall be payable on demand.

14.     **Usury; Partial Invalidity.** At no time shall the interest rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for the type of loan evidenced hereby. Should Lender ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the outstanding principal balance of the loan evidenced hereby.

15.     **Severability.** If any provision of any of the Loan Documents is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected.

16.     **Choice of Law.** The Loan Documents (including all matters of construction, validity, performance and the creation, validity, enforcement or priority of the lien of, and security interests created by, this Note in or upon the Collateral) and all related controversies shall be governed in all respects by, and construed in accordance with, the laws of the State of New York, without reference to conflicts of law (other than Section 5-1401 of the New York General Obligations Law), except as required by mandatory provisions of law and except to the extent that the validity or perfection of the lien and security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17.     **Notices and Demands.** All demands or notices under the Loan Documents shall be in writing (including, without limitation, telecopy or facsimile - receipt confirmed) and mailed, telecopied, or delivered to the address specified on page 1 of this Note or in writing by the party to which such notice is given. Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested. Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee, or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

18.     **Rescission or Return of Payments.** If at any time or from time to time, whether before or after payment and performance of the Indebtedness in full, all or any part of any amount received by the Lender as payment of any Indebtedness, must or is claimed to be subject to avoidance, rescission, or return to Borrower or any other party for any reason whatsoever, such Indebtedness and any liens, security interests, and other encumbrances that secured such Indebtedness at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

19.     **Waivers.** Borrower hereby (a) waives, to the fullest extent permitted under applicable law, the right to assert any statutes of limitations as a defense to any of the Indebtedness, (b) waives, to the fullest extent permitted under applicable law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents), and (c) agrees that Lender may enforce this Note and any other Loan Document against Borrower without first having sought enforcement against any other Loan Party or any Collateral securing the Indebtedness.

BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH LENDER, BORROWER OR ANY LOAN PARTY MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY, AND BORROWER ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

IFAI – Secured Prom Note                                    3 of 4

4337

20.    **Power of Attorney.** Borrower grants Lender a power of attorney to correct obvious errors and fill in such blanks as serial numbers, date of first payment and similar provisions, for registering, transferring, titling, or perfecting Lender's interest in the Equipment and for obtaining repossession certificates of title with respect to the Equipment. Such power of attorney is coupled with an interest, is delegable to an agent, and is irrevocable during the term of the credit evidenced by this Note. Borrower agrees that a photocopy of this Note shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to act pursuant to this and any other power of attorney granted hereby.

21.    **Miscellaneous.** The Loan Documents constitute the entire agreement and understanding of Lender and Borrower and supersede all prior agreements. No provision of any Loan Document can be amended, waived, discharged, or terminated except in writing executed by the parties thereto. Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lender to require that subsequent payments be made when due, or the right of Lender to declare an Event of Default if subsequent payments are not made when due. Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing. This Note may be authenticated in one or more counterparts each of which when authenticated shall be deemed an original but all of which together shall constitute one and the same instrument. This Note may: (i) take electronic form (constituting an "Electronic Document") pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act and/or other applicable law, if generated and stored within a secure electronic medium approved by Lender designed for creating and facilitating transactions entered into using so-called "electronic signatures", (ii) take paper form bearing an ink signature, (iii) take the form of a photocopy of such a paper form, (iv) be delivered in PDF or other fixed-file format, (v) be an electronic facsimile, or (vi) be in any other format deemed acceptable by Lender. Each version of this Note originally authenticated in paper form shall constitute a "Counterpart", and must constitute a true, complete, faithful and legible representation hereof. Borrower agrees that all signatures transmitted by facsimile, email or other electronic means, including, but not limited to, Electronic Documents and Counterpart(s) (as applicable) shall be deemed binding and effective for all legal and equitable purpose including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Borrower in accordance with its terms in any and all appropriate forums. Lender may choose to authenticate a Counterpart(s) in writing, through the use of a stamp, or through some other means selected by Lender. (In no event shall any acceptance or acknowledgment be deemed to constitute an indorsement hereof without express use of words to that effect.) Notwithstanding anything contained herein to the contrary, the version of this Note bearing Lender's original signature, or, if the Note is fully executed electronically, the authoritative copy as defined by the Uniform Commercial Code, shall constitute the sole record of "chattel-paper" for Code purposes. Perfection by possession (control) of same may only be accomplished by: (i) maintaining possession and control of the Counterpart of this Note authenticated by a duly authorized representative of Lender and not otherwise marked "customer copy" (or words to that effect) or (ii) maintaining, as provided in Article 9 of the Uniform Commercial Code, control of the single authoritative copy of this Note, if in the form of an Electronic Document. *TIME IS OF THE ESSENCE IN THIS NOTE AND THE OTHER LOAN DOCUMENTS.*

BORROWER HEREBY CERTIFIES, UNDER PENALTY OF PERJURY, THAT ONE HUNDRED PERCENT (100%) OF THE USE OF THE EQUIPMENT IS TO BE IN A TRADE OR BUSINESS OF BORROWER AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

*SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY*

Borrower:
CIS International Holdings (N.A.) Corp.

X _____
Signature
Charitha Samarasinghe  /CEO
Printed Name and Title(s)

12/28/22
Date

Co-Borrower [IF APPLICABLE]:

_____
Signature

_____
Printed Name and Title(s)

_____
Date

Lender:
ISUZU FINANCE OF AMERICA, INC.
(Not an indorsement)

By: _____
(Duly Authorized)

Lender's Name & Mailing Address:
ISUZU FINANCE OF AMERICA, INC.
Address:  2500 Westchester Ave., Suite 312
Purchase, New York  10577
Attention: OPERATIONS

Borrower(s) Name & Address:
Legal Name(s):   CIS International Holdings (N.A.) Corp.
Street Address (Place of Business):   2389 Air Park Road, Rhinelander, WI 54501          County: _____
Mailing Address:   1405 W. 178th Street, Gardena, CA 90248
Telephone: _____   Fax: _____   Organization Type:   Corporation   State of [Formation/Residence]:  California

## Delivery and Acceptance Certificate

On 12/28/22 _____ (the "Date of Acceptance"), each item of Equipment listed in this Note was delivered to Borrower, in conjunction with Borrower's purchase of the Equipment, and Borrower acknowledges its receipt and irrevocable acceptance of each item of Equipment. Borrower represents and warrants to Lender that Borrower has: accepted delivery and inspected each item of Equipment; determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception. Borrower understands and acknowledges that Lender is entering into the Loan Documents based on Borrower's representation and warranty that Borrower will pay in full to Lender all payments when due as required by the Loan Documents. Borrower also represents and warrants to Lender that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Loan Documents has occurred and is continuing as the Date of Acceptance and that all of the representations and warranties made by Borrower in the Loan Documents are correct and complete as though made on and as of the date of this Note.

Borrower's Initials: X CI   [Co-Borrower's Initials: _____ ]

IFAI – Secured Prom Note                    4 of 4

EXHIBIT A, Page 18 of 30

## PURCHASE OF LOAN CONTRACT

This Purchase of Loan Contract (this "Purchase Contract") is executed pursuant to the Master Loan and Sale and Assignment Agreement dated as of May 16, 2007 (the "Agreement"), by and between ISUZU FINANCE OF AMERICA, INC., as Assignor, and TOKYO CENTURY (USA) INC., as Assignee.

This Purchase Contract is dated, and the assignment described below is effective, as of the date set forth below and hereby expressly incorporates the terms and conditions of the Agreement.

| | | |
|---|---|---|
| 1. | Dealer | Isuzu Truck Of La Crosse |
| 2. | Obligor (Borrower) | CIS International Holdings (N.A.) Corp. |
| 3. | Guarantor | |
| 4. | Date of (Loan) Contract | 12/27/2022 |
| 5. | Contract Documents (See Schedule A) | |
| 6. | Total Invoice Cost (Amount Financed) | $61,325.28 |
| 7. | Payments to be due under Purchase Contract | |
| | (a) Term | 60 |
| | (b) Amount of each payment | $1,207.74 |
| | (c) Balloon Payment | $1,207.74 |
| 8. | Consideration (6) | $61,325.28 |
| 9. | Acquisition Fee to Assignee (TCUSA) | $250.00 |
| 10. | Referral Fee | $700.00 |
| 11. | Dealer Markup | $2,387.28 |
| 12. | Purchase Amount (8-9+10+11) | $64,162.56 |

Date of Execution:  December 30, 2022

ASSIGNOR:  ISUZU FINANCE OF AMERICA, INC.

By: _____
Name: _____
Title: _____

ASSIGNEE:  TOKYO CENTURY (USA) INC.

By: _____
Name: _____
Title: _____



WISCONSIN

0000979

**MAILING LABEL ONLY**

0000511
ISUZU FINANCE OF AMERICA, INC
3268 PROGRESS WAY / BLDG  12
WILMINGTON, OH 45177

Amount Received $        00

MAILING LABEL ONLY

# WISCONSIN CERTIFICATE OF TITLE

| Vehicle Identification Number | | Year | Make | | | | |
|---|---|---|---|---|---|---|---|
| 54DC4W1D7MS209733 | | 2021 | ISUZU | | | | |

| Title Number | Issue Date | Chassis Type | Odometer Reading | Odometer Status | | Odometer Date |
|---|---|---|---|---|---|---|
| T5260L305001-9 | 09/17/2025 | TRUK | 189 | ACTUAL | | 12/27/2022 |

| Product Number | Body Style | Color | | Fleet No |
|---|---|---|---|---|
| 77381223600 | STRAIGHT TRUCK | WHITE | | |

**Titled Owner(s)**
CIS INTERNATIONAL HOLDINGS NA CORP
2389 AIR PARK RD
RHINELANDER, WI 54501-8426

LENDER Certifies Release of Lien

Lien holder _____
Title _____
Printed name _____
Signature _____
Date _____

The person  firm or corporation named on this Title is the lawful owner of the vehicle described  subject to any Security Interest (liens) shown  The order in which the Lien Holders appear on this Title does not necessarily represent their priority  The Wisconsin Department of Transportation will not be responsible for false or fraudulent odometer statements made in the assignment of the Certificate of Title or for errors in reporting mileage  brand disclosures or the history of the vehicle  The department has no actual knowledge about the history of the vehicle and makes no warranty that the title brands or mileage disclosures on prior titles have been carried forward onto this document

54DC4W1D7MS209733

**Lien Holder(s)**
00113149    ISUZU FINANCE OF AMERICA INC, PURCHASE

**Additional Vehicle Detail**

**SELLER**  When the vehicle is sold, complete the ASSIGNMENT OF CERTIFICATE OF TITLE on the top back of this title and deliver the title to the purchaser with the vehicle  You may wish to retain a copy of this title with the purchaser s information and signature as proof of sale for your records

**PURCHASER**  Apply for a new title with the Wisconsin Division of Motor Vehicles immediately  To legally operate this vehicle, you are required to register it with the Division of Motor Vehicles

**MAIL ADDRESS**
Wisconsin Department of Transportation
PO Box 7949  Madison  WI 53707 7949
981

**QUESTIONS**
Contact the Division of Motor Vehicles at
414 266-1000  608 264 7447
wisconsindmv gov
113148



24 - 2  8302051 EXHIBIT B , Page 20 of 30

KEEP IN SAFE PLACE                    DO NOT KEEP IN VEHICLE



# ASSIGNMENT OF CERTIFICATE OF TITLE

1/2023

**The seller is required** to state the mileage and provide written vehicle disclosure in connection with the transfer of ownership  Failure to complete a mileage statement or providing a false mileage statement  disclose required information  or providing a false statement may result in fines and/or imprisonment and may make you liable for damages to the purchaser  See Federal 49 USC and Ch  342 Wisconsin laws

I  the seller  certify that to the best of my knowledge the information contained on this document is true and correct and that I have entered the vehicle odometer reading  brand disclosure  and selling price in compliance with federal and state law as referenced above  For value received  I sell  assign or transfer the vehicle described on this document and warrant title to purchaser

**1**

**ODOMETER NOW READS** (No Tenths) and to the best of my knowledge is actual mileage of this vehicle unless one of the following statements is checked

☐ The odometer reading reflects the amount of mileage in excess of its mechanical limit

☐ The odometer reading is NOT actual mileage  WARNING ODOMETER DISCREPANCY

**BRAND DISCLOSURE** (will be printed on future titles) Check all that apply

☐ Salvage vehicle     ☐ Flood damaged     ☐ Hail damaged     ☐ Previous police vehicle     ☐ Previous taxicab

Selling Price

Print Purchaser Name

Print Seller Name

Print Purchaser Address  City  State  ZIP Code

Print Seller Address  City  State  ZIP Code

Signature of Purchaser                     Date
X
X

Signature of Seller(s)  See below                     Date
X
X

## Sections 2-3 For Dealer Use Only

Dealer  Photocopy front and back for your records  Federal  49 CFR 580 8

Seller(s)  If joint ownership with  or  only one seller s signature is required  with  and  all sellers signatures are required

**2**

Print Consigning Auction Dealer Name or Consigning Salvage Pool (If Applicable)

Auction or Salvage Pool Dealer No

Sale Date

**ODOMETER NOW READS** (No Tenths) and to the best of my knowledge is actual mileage of this vehicle unless one of the following statements is checked

☐ The odometer reading reflects the amount of mileage in excess of its mechanical limit

☐ The odometer reading is NOT actual mileage  WARNING ODOMETER DISCREPANCY

**BRAND DISCLOSURE** (will be printed on future titles) Check all that apply

☐ Salvage vehicle     ☐ Flood damaged     ☐ Hail damaged     ☐ Previous police vehicle     ☐ Previous taxicab     ☐ Manufacturer buyback

Print Purchaser Name

Print Selling Dealer Name

Print Purchaser Address  City  State  ZIP Code

Print Seller Address  City  State  ZIP Code

Print Name of Purchaser s Authorized Agent Signing Below

Print Name of Selling Dealer s Authorized Agent Signing Below

Signature of Purchaser s Authorized Agent                     Date
X

Signature of Selling Dealer s Authorized Agent                     Date
X

**3**

Print Consigning Auction Dealer Name or Consigning Salvage Pool (If Applicable)

Auction or Salvage Pool Dealer No

Sale Date

**ODOMETER NOW READS** (No Tenths) and to the best of my knowledge is actual mileage of this vehicle unless one of the following statements is checked

☐ The odometer reading reflects the amount of mileage in excess of its mechanical limit

☐ The odometer reading is NOT actual mileage  WARNING ODOMETER DISCREPANCY

**BRAND DISCLOSURE** (will be printed on future titles) Check all that apply

☐ Salvage vehicle     ☐ Flood damaged     ☐ Hail damaged     ☐ Previous police vehicle     ☐ Previous taxicab     ☐ Manufacturer buyback

Print Purchaser Name

Print Selling Dealer Name

Print Purchaser Address  City  State  ZIP Code

Print Seller Address  City  State  ZIP Code

Print Name of Purchaser s Authorized Agent Signing Below

Print Name of Selling Dealer s Authorized Agent Signing Below

Signature of Purchaser s Authorized Agent                     Date
X

Signature of Selling Dealer s Authorized Agent                     Date
X

EXHIBIT B, Page 21 of 20

**NO additional dealer reassignments permitted**

1110

# Isuzu Finance of America, Inc.

**Secured Promissory Note**

| Borrower: | CIS International Holdings (N.A.) Corp. | Lender/Creditor: | **ISUZU FINANCE OF AMERICA, INC.** | Date: | 05/17/2022 |
| Address: | 1405 W. 178th Street | Address: | 2500 Westchester Ave., Suite 312 | | |
| | Gardena, CA  90248 | | Purchase, New York  10577 | | |
| | | | Attention: Operations | | |

| Year | Make | Model | Vehicle Identification Number | License Number (if applicable) | | Use For Which Purchased |
|------|------|-------|-------------------------------|--------------------------------|--|-------------------------|
| 2021 | Isuzu | NPR-HD | 54DC4W1D8MS209725 | ☒ NEW<br>☐ Demonstrator<br>☐ Other | | ☒ BUSINESS OR COMMERCIAL |

Description of Vehicle's Body/Attachments:     16' Morgan Dry Van Body with Maxon TE-25L Tuckunder Liftgate
Vehicle Body/Attachments Serial Numbers:     2111625279
Gross Vehicle Weight:        14500
Address where Vehicle will be located:
Street Address:        1405 W. 178th Street
City/State/Zip:         Gardena, CA  90248

Interest Rate:  5.74 % per annum.

| | | |
|--|--|--|
| 1. Vehicle Cash Sales Price | | $63,485.00 |
| 2. Net Trade-in Less Liens | | $0.00 |
| 3. Cash Down Payment | | $6,500.00 |
| 4. Net Vehicle Cash Sales Price (1-2-3) | $56,985.00 | |
| 5. Service Fee | | $350.00 |
| 6. Sales Tax | | $0.00 |
| 7. Registration/Title Fees | | $177.50 |
| 8. Other Charges | | |
| Acquisition Fee | | $250.00 |
| Dealer Doc Fee | | $695.00 |
| 9. Total Itemized Charges (5 through 8) | | $1,472.50 |
| 10. Amount Financed (4 + 9) | | $58,457.50 |
| 11. Finance Charge | | $8,927.90 |
| 12. Other (Explain) | | |
| 13. Total Obligation (10+11+12) | | $67,385.40 |

Borrower agrees to pay the "Total Obligation" (Item 13) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | First Payment Date | Payment Amount | Total |
|---------------------|--------------------|----------------|-------|
| 60 | | $1,123.09 | $67,385.40 |

If shown below, Borrower has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Borrower agrees that Lender collects such fees and charges for the service provider only as an accommodation to Borrower and such agreements are not part of this Contract. The Lender is not responsible for any services, disposables or insurance obligations.

| Service | Term (mos.) | Total Charge |
|---------|-------------|--------------|
| Extended Warranty | 60/150,000 | $995.00 |
| **Total Charge Is Included In "Vehicle Cash Sales Price"** | | |

1.      **Promise to Pay and Interest.**  The below-signed borrower, and if more than one, each below-signed borrower, jointly and severally (the "**Borrower**"), promises to pay in full the Total Obligation set forth in Item 13 above to Isuzu Finance of America, Inc. ("**Lender**") in lawful money of the United States of America, with interest thereon as herein provided, to be paid in the manner set forth herein.  All interest due under the Loan Documents (as defined below) shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of days elapsed.  Borrower agrees to pay an effective rate of interest that is the Interest Rate set forth on page 1 (the "**Interest Rate**").  Borrower shall also be liable for and shall pay when due any other charges or fees paid or to be paid in connection with the Loan Documents.  In addition to the Total Obligation, Borrower agrees to pay all other amounts owed to Lender under this Note and the other Loan Documents (collectively with the Total Obligation, the "**Indebtedness**") when due.  Payment of the Indebtedness shall be made to Lender at such place as Lender or its successor may designate from time to time in writing.  Lender reserves the right to require payment on this Secured Promissory Note to be made by wired federal funds or other immediately available funds.  "**Loan Documents**" shall mean this Secured Promissory Note (this "**Note**"); all other notes (or other instruments) made by, or other obligations of, Borrower to Lender; any guaranty(ies) of any payment or performance of the Indebtedness; and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note or the credit evidenced hereby, as any or all of such documents may be executed or amended from time to time.

2.      **Security Interest.**  In order to secure payment of the Indebtedness and complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into (the "**Secured Obligations**"), Borrower hereby grants to Lender a security interest in and to the Vehicle and such other equipment and goods as are described above (collectively, the "**Equipment**"), together with all present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory loans, warranties, service contracts, documents, and records now or hereafter arising from the Equipment (collectively, the "**Collateral**").  Borrower authorizes Lender to file a financing statement, or a photocopy or other reproduction of this Note, or of any financing statement, to perfect its security interest.  Principal shall bear interest at the Interest Rate from the date of disbursement until the applicable due date, whether due by acceleration or otherwise.  Any payment due on a date which is a date when banking institutions are not open to the public under the laws of the State of New York shall be due on the next succeeding date on which such institutions are open.  All Indebtedness not paid when due shall bear interest from the due date, until paid at a rate (the "**Default Rate**") which is the lesser of sixteen percent (16%) per annum or the maximum rate permitted under applicable law.  Borrower is responsible for assuring that a lien on the Collateral in favor of the Lender is properly recorded on any title to the Collateral and that such lien remains in full force and effect until all amounts due Lender hereunder shall have been paid in full.

IFAI – Secured Prom Note                1 of 4

EXHIBIT _C_, Page _22_ of _30_

1110

3.       **Receipt and Application of Payments.** Payments shall not be deemed received by Lender until good funds are actually received by Lender. Payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Lender in cash or its equivalent, will be applied in reduction of the Secured Obligations in such order and manner as Lender may direct in its sole discretion, and Borrower irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Lender shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Lender's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

4.       **Prepayment.** So long as no Default or Event of Default shall have occurred and be continuing and Borrower shall have given Lender at least fourteen (14) days prior written notice, Borrower shall have the option to prepay this Note on any installment Due Date set forth on page 1 of this Note (or any accompanying schedule referred to on page 1 of this note) (each, an "**Installment Due Date**") for an amount (the "**Prepayment Amount**") equal to (1) any unpaid Payment Amounts and all other amounts due on or before such Installment Due Date, plus (2) the principal outstanding on the books and records of the Lender on such Installment Due Date, plus (3) any applicable sales taxes. Payment of the Prepayment Amount, together with all other amounts due and owing by Borrower under the Note (including, without limitation, the scheduled Payment Amount) on or before the Installment Due Date, shall be made on the Installment Due Date in immediately available funds. If Borrower shall fail to pay all amounts required to be paid under the Note on the Installment Due Date, the Note shall continue in full force and effect and Borrower agrees to reimburse Lender for all reasonable attorney's fees, costs, expenses and liabilities incurred in connection therewith.

5.       **Late Charges.** If any payment of principal and interest or any other Indebtedness is not received in full by Lender within ten (10) days after its due date, then in addition to all other rights and remedies of Lender, a late charge equal to ten percent (10%) of the amount due and unpaid will be charged to Borrower or such lesser amount as shall be the maximum permissible late charge thereon. Such late charge shall be immediately due and payable upon receipt of written notice from Lender and constitute "**Indebtedness**" and a "**Secured Obligation**" under this Note.

6.       **No Counterclaims, Deductions, or Offsets.** All payments and obligations of Borrower under the Loan Documents will be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction.

7.       **Insurance and Risk of Loss.** All risk of loss, damage or destruction of the Equipment will at all times be on Borrower. Borrower will keep the Equipment insured at Borrower's expense against liability in an amount as required by Lender or, if in excess thereof, the amount required under applicable law, and loss or damage by fire, theft and other customary risks for the greater of the Equipment's full insurable value or the Indebtedness, with a deductible not to exceed $2,500 per item of Equipment, or such lesser amount as shall be required by applicable law. Coverage and insurer will be subject to Lender's reasonable approval. Each policy shall name Lender as loss payee and will further provide that Lender's interest can not be invalidated by any act, omissions or neglect of any party other than Lender and that the insurer will give Lender thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Borrower or insurer. Borrower will promptly deliver a copy of each policy or an insurance certificate acceptable to Lender prior to any advancement of funds hereunder, and will later provide proof of renewal at least 30 days prior to expiration or cancellation. If Borrower fails to so insure the Equipment, Lender may purchase such insurance at Borrower's expense, the purchase of which need not include liability or protection of Borrower's interest. Borrower hereby authorizes and irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution, to execute and endorse all documents, checks, or drafts in Borrower's name and to submit any proof of loss to collect such insurance.

8.       **·Borrower's Representations, Warranties, and Agreements.** Borrower represents, warrants, and agrees that: (a) this Note evidences a loan obtained by it, and the Equipment is to be used by it, solely for business or commercial purposes; (b) prior to signing this Note, Borrower read and understood the provisions hereof, and agrees to all the terms and conditions contained herein; (c) except for the security interest granted to Lender, the Collateral will remain free from all liens and security interests; (d) all information supplied by Borrower in any financial, credit, or accounting statement to Lender is and will be true, correct and genuine, and Borrower consents to the Lender's prior review of Borrower's credit reports prior to the date of this Note and to the ongoing review of Borrower's credit reports during the term of the credit evidenced by this Note; (e) Borrower has full authority to borrow the credit evidenced by this Note for the purposes provided for herein and to enter into each Loan Document to which it is a party, and in so doing it is not violating any law, regulation or agreement; and (f) Borrower has duly executed and delivered this Note and has taken all necessary and appropriate actions to make each Loan Document to which it is a party binding and enforceable against Borrower in accordance with its terms. Borrower covenants and agrees that: (i) it shall not allow a Blocked Person to have an ownership interest in or control of Borrower, (ii) it shall defend at its own cost any action, proceeding or claim affecting the Collateral; (iii) it shall maintain each item of the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and any warranties; (iv) it shall promptly pay all taxes, assessment, license fees and other public or private charges when levied against the Collateral or any Loan Document; (v) it shall obtain a certificate of title on each item of Equipment showing Lender's first priority security interest and preserve and perfect Lender's security interest, such that such security interest shall at all times be a first priority perfected security interest subject to no other liens or encumbrances by authorizing Lender to file financing statements covering the Collateral and also execute any required financing statements; (vi) it shall not misuse, secrete, sell, rent, encumber or transfer any item of Equipment; (vii) that Lender may enter any premises at any reasonable time to inspect the Equipment; (viii) it shall provide Lender with quarterly and annual financial statements upon request of Lender; and (ix) it shall reimburse Lender immediately after written notice for any expenses incurred by Lender in enforcing Borrower's obligations under any Loan Document. [As used herein, the term "Blocked Person" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) a person or entity whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law.]

9.       **Events of Default.** Each of the following shall be an event of default under this Note and the other Loan Documents (an "**Event of Default**"): (a) failure by the Borrower, or any other person (each, a "**Loan Party**"; and collectively with the Borrower, the "**Loan Parties**") that from time to time is obligated to Lender under any of the Loan Documents, to pay when due (i) any amount due by such Loan Party under any of the Loan Documents, or (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or indebtedness of any kind; (b) failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to such Loan Party, in any of the Loan Documents and such obligation or term or condition remains unsatisfied after ten (10) days' written notice to such Loan Party; (c) the breach of any covenant, or any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party to Lender in obtaining or hereafter in connection with the credit evidenced by this Note is materially incomplete, incorrect, or misleading as of the date made or delivered; (d) any Loan Party (i) is unable or admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors or (iii) applies for or acquiesces in the appointment of a trustee, receiver, or other custodian for such Loan Party or any of the property of such Loan Party or a trustee, receiver or other custodian is appointed for such Loan Party or any of the property of such Loan Party; (e) commencement of any insolvency or bankruptcy proceeding, or any similar proceeding under any federal, state, local, or foreign law by or against any Loan Party; (f) the death, incompetence, dissolution, or liquidation of any Loan Party; the consolidation or merger of any Loan Party with any other person or entity; or the taking of any action by any Loan Party toward a dissolution, liquidation, consolidation, or merger; (g) any Loan Party or any other person on behalf of any Loan Party claims that any Loan Document or any lien or security interest in any of the Collateral is not legal, valid, binding, or enforceable against any Loan Party, or that that the priority of any lien or security interest securing any of the Secured Obligations is different than the priority represented and warranted in the Loan Documents; (h) any of the Collateral is lost or destroyed; (i) Lender in good faith believes that the prospect of payment or performance hereunder is impaired; (j) there shall be a material change in the management, ownership or control of any Loan Party; (k) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder collectively be referred to as "**Governmental Authority**"); (l) if anyone in the control, custody or possession of any Collateral or any Loan Party is accused, alleged or charged

IFAI – Secured Prom Note                    2 of 4

EXHIBIT _C_, Page _23_ of _30_

1110

(whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (m) the occurrence of any condition or event that is a default or is designated as a default or event of default or an "Event of Default" under any other Loan Document or in any other agreement, contract, or indebtedness of any Loan Party to Lender.

10.     **Rights and Remedies of Lender.**  Upon the occurrence of an Event of Default, Lender may, at its option, and without demand or notice: (a) declare the Indebtedness to be immediately due and payable, whereupon all of the Indebtedness shall be immediately due and payable; (b) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower; (c) require Borrower to make the Collateral available to Lender at a place to be designated by Lender; (d) at the expense of Borrower, make repairs to any item of Equipment deemed necessary by Lender; and  (e) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses) shall be applied to the Indebtedness or any other indebtedness of Borrower to Lender and any surplus remaining thereafter shall be paid to Borrower or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Lender may purchase any or all of the Collateral and/or accept a part of property for all or any portion of the purchase price. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Lender and its successors and assigns. No liability shall be asserted or enforced against Lender under this section except for Lender's intentional wrongful acts. Lender may in its sole discretion waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default. Delay, discontinuance, or failure to exercise any remedy shall not be a waiver of such remedy or of any other right or remedy of Lender, or of the TIME IS OF THE ESSENCE provision. To the extent permitted under applicable law, Borrower expressly consents to and authorizes a court with jurisdiction to issue, by hearing without notice, such orders as may be necessary to enforce the terms of this Note, granting to Lender such powers as Lender shall need to enforce this Note. Any such court is directed to not require a bond of Lender, the parties agreeing that time is of the essence to protect Lender. To the extent permitted under applicable law, Borrower expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Lender existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Note (or to such other address as provided in writing by Borrower) by registered or certified mail at least five (5) days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Borrower.

11.     **Transfer or Assignment.**  Lender may at any time transfer its rights and/or delegate its obligations under the Loan Documents or otherwise negotiate this Note in whole or in part, without any notice to or the consent of any Loan Party.  The rights and obligations of Borrower may not be assigned or delegated.

12.     **Binding Effect.**  This Note shall be binding upon Borrower and inure to the benefit of Lender and its successors and assigns. In addition and as permitted under applicable law, NO LOAN PARTY SHALL ASSERT AGAINST ANY ASSIGNEE OR TRANSFEREE OF LENDER ANY CLAIMS OR DEFENSES SUCH LOAN PARTY MAY HAVE AGAINST LENDER.

13.     **Collection Costs and Other Costs, Expenses and Fees.**  In addition to the principal, interest, and late payment charges (if any), Borrower shall pay Lender on demand, and Lender shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Lender's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed. If this Note is terminated for any reason prior to the expiration of the original Term, then Borrower shall pay to Lender $300.00 on demand for processing the early termination. All such costs, expenses, and fees shall constitute "**Indebtedness**" and "**Secured Obligations**" and shall be payable on demand.

14.     **Usury; Partial Invalidity.**  At no time shall the interest rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for the type of loan evidenced hereby.  Should Lender ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the outstanding principal balance of the loan evidenced hereby.

15.     **Severability.**  If any provision of any of the Loan Documents is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected.

16.     **Choice of Law.**  The Loan Documents (including all matters of construction, validity, performance and the creation, validity, enforcement or priority of the lien of, and security interests created by, this Note in or upon the Collateral) and all related controversies shall be governed in all respects by, and construed in accordance with, the laws of the State of New York, without reference to conflicts of law (other than Section 5-1401 of the New York General Obligations Law), except as required by mandatory provisions of law and except to the extent that the validity or perfection of the lien and security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17.     **Notices and Demands.**  All demands or notices under the Loan Documents shall be in writing (including, without limitation, telecopy or facsimile - receipt confirmed) and mailed, telecopied, or delivered to the address specified on page 1 of this Note or in writing by the party to which such notice is given.  Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested.  Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee, or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

18.     **Rescission or Return of Payments.**  If at any time or from time to time, whether before or after payment and performance of the Indebtedness in full, all or any part of any amount received by the Lender as payment of any Indebtedness, must or is claimed to be subject to avoidance, rescission, or return to Borrower or any other party for any reason whatsoever, such Indebtedness and any liens, security interests, and other encumbrances that secured such Indebtedness at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

19.     **Waivers.**  Borrower hereby (a) waives, to the fullest extent permitted under applicable law, the right to assert any statutes of limitations as a defense to any of the Indebtedness, (b) waives, to the fullest extent permitted under applicable law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents), and (c) agrees that Lender may enforce this Note and any other Loan Document against Borrower without first having sought enforcement against any other Loan Party or any Collateral securing the Indebtedness.

BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH LENDER, BORROWER OR ANY LOAN PARTY MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF.  THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY, AND BORROWER ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.  THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

IFAI – Secured Prom Note                                3 of 4

20.    **Power of Attorney.**  Borrower grants Lender a power of attorney to correct obvious errors and fill in such blanks as serial numbers, date of first payment and similar provisions, for registering, transferring, filing, or perfecting Lender's interest in the Equipment and for obtaining repossession certificates of title with respect to the Equipment. Such power of attorney is coupled with an interest, is irrevocable during the term of the credit evidenced by this Note. Borrower agrees that a photocopy of this Note shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to act pursuant to this and any other power of attorney granted hereby.

21.    **Miscellaneous.**  The Loan Documents constitute the entire agreement and understanding of Lender and Borrower and supersede all prior agreements. No provision of any Loan Document can be amended, waived, discharged, or terminated except in writing executed by the parties thereto. Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lender to require that subsequent payments be made when due, or the right of Lender to declare an Event of Default if subsequent payments are not made when due. Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing. This Note may be authenticated in one or more counterparts each of which when authenticated shall be deemed an original but all of which together shall constitute one and the same instrument. This Note may: (i) take electronic form (constituting an "Electronic Document") pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act and/or other applicable law, if generated and stored within a secure electronic medium approved by Lender designed for creating and facilitating transactions entered into using so-called "electronic signatures", (ii) take paper form bearing an ink signature, (iii) take the form of a photocopy of such a paper form, (iv) be delivered in PDF or other fixed-file format, (v) be an electronic facsimile, or (vi) be in any other format deemed acceptable by Lender. Each version of this Note originally authenticated in paper form shall constitute a "Counterpart", and must constitute a true, complete, faithful and legible representation hereof. Borrower agrees that all signatures transmitted by facsimile, email or other electronic means, including, but not limited to, Electronic Documents and Counterparts (as applicable) shall be deemed binding and effective for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Borrower in accordance with its terms in any and all appropriate forums. Lender may choose to authenticate a Counterpart(s) in writing, through the use of a stamp, or through some other means selected by Lender (In no event shall any acceptance or acknowledgment be deemed to constitute an endorsement hereof without express use of words to that effect.) Notwithstanding anything contained herein to the contrary, the version of this Note bearing Lender's original signature, or, if the Note is fully executed electronically, the authoritative copy as defined by the Uniform Commercial Code, shall constitute the sole record of the Counterpart "chattel-paper" for Code purposes. Perfection by possession (control) of same may only be accomplished by: (i) maintaining possession and control of the Counterpart of this Note authenticated by a duly authorized representative of Lender and not otherwise marked "customer copy" (or words to that effect) or (ii) maintaining, as provided in Article 9 of the Uniform Commercial Code, control of the single authoritative copy of this Note, if in the form of an Electronic Document.  *TIME IS OF THE ESSENCE IN THIS NOTE AND THE OTHER LOAN DOCUMENTS.*

BORROWER HEREBY CERTIFIES, UNDER PENALTY OF PERJURY, THAT ONE HUNDRED PERCENT (100%) OF THE USE OF THE EQUIPMENT IS TO BE IN A TRADE OR BUSINESS OF BORROWER AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

*SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY*

Borrower:
CIS International Holdings (N.A.) Corp.

X _Charitha Samarasinghe_
Signature
    Charitha Samarasinghe / CEO
Printed Name and Title(s)
    5/17/22
Date

Co-Borrower (IF APPLICABLE):

Signature

Printed Name and Title(s)

Date

Lender:
ISUZU FINANCE OF AMERICA, INC.
    (Not an indorsement)
By _____
        (Duly Authorized)

Lender's Name & Mailing Address:
ISUZU FINANCE OF AMERICA, INC.
Address:  2500 Westchester Ave., Suite 312
            Purchase, New York  10577
Attention: OPERATIONS

Borrower(s) Name & Address:
Legal Name(s)    CIS International Holdings (N.A.) Corp.
Street Address (Place of Business):    1405 W 178th Street, Gardena, CA 90248
Mailing Address:    1405 W 178th Street, Gardena, CA 90248
Telephone: ▮▮▮▮▮▮▮▮                                        Fax
                                        Organization Type    Corporation

County _____

State of [Formation/Residence]:    California

## Delivery and Acceptance Certificate

On    5/17/22    (the "Date of Acceptance"), each item of Equipment listed in this Note was delivered to Borrower, in conjunction with Borrower's purchase of the Equipment, and Borrower acknowledges its receipt and irrevocable acceptance of each item of the Equipment. Borrower represents and warrants to Lender that Borrower has inspected delivery of and inspected each item of Equipment, determined that each item of Equipment contains all of the major components and accessories as agreed, each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception. Borrower understands and acknowledges that Lender is entering into the Loan Documents based on Borrower's representation and warranty that Borrower will pay in full to Lender all payments when due as required by the Loan Documents. Borrower also represents and warrants to Lender that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Loan Documents has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Borrower in the Loan Documents are correct and complete as though made on and as of the date of this Note.

**Borrower's Initials:** _X ▮▮_   [ Co-Borrower's Initials: _____ ]

IFAI -- Secured Prom Note                    4 of 4

EXHIBIT _C_, Page _25_ of _30_

**PURCHASE OF LOAN CONTRACT**

This Purchase of Loan Contract (this "Purchase Contract") is executed pursuant to the Master Loan and Sale and Assignment Agreement dated as of May 16, 2007 (the "Agreement"), by and between ISUZU FINANCE OF AMERICA, INC., as Assignor, and TOKYO CENTURY (USA) INC., as Assignee.

This Purchase Contract is dated, and the assignment described below is effective, as of the date set forth below and hereby expressly incorporates the terms and conditions of the Agreement.

| | | |
|---|---|---|
| 1. | Dealer | Isuzu Truck Of La Crosse |
| 2. | Obligor (Borrower) | CIS International Holdings (N.A.) Corp. |
| 3. | Guarantor | |
| 4. | Date of (Loan) Contract | 5/16/2022 |
| 5. | Contract Documents (See Schedule A) | |
| 6. | Total Invoice Cost (Amount Financed) | $58,457.50 |
| 7. | Payments to be due under Purchase Contract | |
| | (a)  Term | 60 |
| | (b)  Amount of each payment | $1,123.09 |
| | (c)  Balloon Payment | $1,123.09 |
| 8. | Consideration (6) | $58,457.50 |
| 9. | Acquisition Fee to Assignee (TCUSA) | $250.00 |
| 10. | Referral Fee | $700.00 |
| 11. | Dealer Markup | $2,240.70 |
| 12. | Purchase Amount (8-9+10+11) | $61,148.20 |

Date of Execution:   May 24, 2022

ASSIGNOR:  ISUZU FINANCE OF AMERICA, INC.

By: _____

Name: _____

Title: _____

ASSIGNEE:  TOKYO CENTURY (USA) INC.

By: _____

Name: _____

Title: _____

*TO PROPERLY RELEASE YOUR LIABILITY, PLEASE READ AND FOLLOW INSTRUCTIONS ON REVERSE SIDE*

SECTIONS A-J MUST BE COMPLETED IN FULL          PRINT IN CAPITAL LETTERS – USE BLACK OR BLUE INK

## NOTICE OF TRANSFER AND
## RELEASE OF LIABILITY

*MAIL THIS PORTION TO DMV-OR-FILE ONLINE AT dmv ca gov*

A NEW OWNER S *LAST NAME* (OR) COMPANY NAME                 *FIRST*

B NEW OWNER S ADDRESS                                    APT NUMBER       C ODOMETER READING (NO TENTHS)

D CITY                          STATE      ZIP CODE        E DATE OF SALE OR LEASE RETURN
                                                           MO      DAY      YR

F SELLER S OR LESSEE S *LAST NAME* (OR) COMPANY NAME        *FIRST*        G SELLING PRICE (NO CENTS)
                                                                          WHOLE
                                                                          DOLLARS

H SELLER S OR LESSEE S ADDRESS                          APT NUMBER       I SELLER S OR LESSEE S SIGNATURE

                                                                        X

J CITY                          STATE      ZIP CODE

VEHICLE ID NUMBER                          YR MODEL   MAKE          PLATE NUMBER

54DC4W1D8MS209725                          2021 ISU                36884R3

REG 138A (REV 10/2012)

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

60823070615

COMMERCIAL

| VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| 54DC4W1D8MS209725 | 2021 | ISU | 36884R3 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| CY | 2 | 09300 | G | | $9554 | 07/31/2024 |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| 2022 | RV | | 00 | | 07/06/23 |

| MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING |
|---|---|---|
| | 07/14/2022 | 11932 MI |
| | ACTUAL MILEAGE | |

REGISTERED OWNER(S)

CIS INTERNATIONAL HOLDINGS
NA CORP
1405 W 178TH ST
GARDENA CA 90248

- - - - -
- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES
INTEREST IN THE VEHICLE**

1a_____ X_____
          DATE                    SIGNATURE OF REGISTERED OWNER

1b_____ X_____
          DATE                    SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership  Failure to complete or providing a
false statement may result in fines and/or imprisonment

The odometer now reads |   |   |   |   |   |   | (no.tenths)  miles and to the best of my knowledge reflects the actual
mileage unless one of the following statements is checked  Mileage is VOID if altered or erased

**WARNING**  ☐ Odometer reading is not the actual mileage  ☐ Mileage exceeds the odometer mechanical limits

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregong is true and correct*

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within
10 days

LIENHOLDER(S)

ISUZU FIN AMERICA INC
3268 PROGRESS WAY BLDG 12
WILMINGTON
OH 45177

2 X_____
Signature releases interest in vehicle (Company
names must be countersigned)

Release Date _____

01756

CA 220130984

REG  17 30RS (REV 02/2016)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK HOLD TO LIGHT TO VIEW

**IMPORTANT NOTICE — DO NOT DETACH UNTIL SOLD**

COMPLETE THIS FORM ONLINE AT dmv ca gov
AND PRINT A RECEIPT FOR YOUR RECORDS
IF YOU MAIL THIS FORM KEEP A COPY FOR YOUR RECORDS

You are required by law to notify the Department of Motor Vehicles within five (5) days from the date you sell or otherwise dispose of a vehicle This form is provided for use in reporting the sale or transfer to the Department and does not constitute application for transfer of ownership (title) **This form is to be used ONLY for the vehicle described on the attached title**

When this form is properly completed and the information is recorded by DMV (see WARNING below) liability for parking and/or traffic violations and civil litigation resulting from operation after the date of sale becomes the responsibility of the subsequent purchaser(s)

**WARNING  If you provide incomplete, inaccurate or unclear information, the information shall not be updated or retained**

TO REMOVE YOUR NAME FROM DMV'S RECORDS  THE NEW OWNER MUST APPLY FOR TRANSFER USING THE ENDORSED CERTIFICATE OF TITLE (OWNERSHIP) RECEIVED FROM YOU

### INSTRUCTIONS FOR COMPLETING NOTICE OF TRANSFER AND RELEASE OF LIABILITY

(A) Print name of new owner
(B) Print new owner's address
(C) Enter odometer reading at the time of sale (motor vehicles only)
(D) Print new owner's city, state  and ZIP code
(E) Enter date you sold or transferred the described vehicle
(F) Print your name
(G) Enter selling price (in whole dollars no cents)  If vehicle is a gift  enter  0''
(H) Print your address
(I) Sign your name where designated
(J) Print your city  state and ZIP code

**FILE ONLINE OR MAIL THIS COMPLETED NOTICE TO**

**DEPARTMENT OF MOTOR VEHICLES**
**P O  BOX 942859**
**SACRAMENTO, CA 94259 0001**

---

### APPLICATION FOR TRANSFER BY NEW OWNER        (Please print or type )

Any change of registered owner or lienholder must be recorded with the Department of Motor Vehicles (DMV) within ten (10) days  The title, transfer fee and in most instances, use tax and a smog certificate must be presented to DMV to record the ownership change

**NEW REGISTERED OWNER**

3a  TRUE FULL NAME(S) OF NEW REGISTERED OWNER(S) (LAST  FIRST  MIDDLE) AS IT APPEARS ON DRIVER'S LICENSE OR ID CARD

3b ☐ AND / OR    (LAST  FIRST  MIDDLE)

4  RESIDENCE OR BUSINESS STREET ADDRESS    APT /SP/STE NUMBER

5  CITY    STATE    ZIP CODE

6  COUNTY OF RESIDENCE OR COUNTY WHERE VEHICLE IS PRIMARILY GARAGED OR FOR TRAILER COACHES ADDRESS OR LOCATION WHERE KEPT

7  MAILING ADDRESS STREET OR P O  BOX NUMBER (DO NOT COMPLETE IF SAME AS RESIDENCE ABOVE)

8  CITY    STATE    ZIP CODE

**OWNER**

If there is a mailing address entered on this form it is a valid  existing and accurate address  I consent to receive service of process at this mailing address pursuant to Code of Civil Procedure Sections 415 20(b)  415 30(a)  and 416 90
I declare under penalty of perjury under the laws of the State of California that the information entered on this application is true and correct

| 9a  DATE | SIGNATURE OF NEW REGISTERED OWNER X | DRIVER LICENSE OR ID CARD NO | PURCHASE DATE |
| 9b  DATE | SIGNATURE OF NEW REGISTERED OWNER X | DRIVER LICENSE OR ID CARD NO | PURCHASE PRICE OR IF GIFT SO STATE |

**LEASED VEH ONLY**  10  ADDRESS OF NEW LESSEE IF DIFFERENT FROM LINE 4 ABOVE (WILL NOT BE PRINTED ON TITLE)

**NEW LIENHOLDER**

11  NAME OF LIENHOLDER – FIRM OR INDIVIDUAL HOLDING SECURITY INTEREST (IF NO LIEN  WRITE  NONE ) DO NOT ENTER NAME OF REGISTERED OWNER(S) ABOVE   ELECTRONIC LIENHOLDER ID   ELT #

12  STREET ADDRESS OR PO BOX NUMBER

13  CITY    STATE    ZIP CODE

---

### TITLE REASSIGNMENTS BY LICENSED CALIFORNIA DEALERS

FEDERAL LAW REQUIRES that you state the mileage upon transfer of ownership  Failure to complete or making a false statement may result in fines and / or imprisonment
The signature below releases my interest in this vehicle  acknowledges the odometer mileage recorded by the seller and certifies to the odometer reading entered above my signature in compliance with Federal law

**DEALER TRANSACTIONS ONLY**

14  Odometer now reads [        ] , [     ]  (no tenths) miles  and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked  **WARNING** - Mileage ☐ is not the actual mileage  ☐ exceeds the odometer mechanical limits    R/S NUMBER
I declare under penalty of perjury under the laws of the State of California that the information entered on this application is true and correct

| DATE | SIGNATURE OF AUTHORIZED AGENT X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER |
| DATE | BUYER S SIGNATURE ACKNOWLEDGES ODOMETER READING X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON S NUMBER |

SOLD THROUGH AUCTION IF APPLICABLE    DATE OF AUCTION    AUCTION NAME    DEALER NUMBER

15  Odometer now reads [        ] , [     ]  (no tenths) miles  and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked  **WARNING** - Mileage ☐ is not the actual mileage  ☐ exceeds the odometer mechanical limits    R/S NUMBER
I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct

| DATE | SIGNATURE OF AUTHORIZED AGENT X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER |
| DATE | BUYER S SIGNATURE ACKNOWLEDGES ODOMETER READING X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON S NUMBER |

16  Odometer now reads [        ] , [     ]  (no tenths) miles  and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked  **WARNING** - Mileage ☐ is not the actual mileage  ☐ exceeds the odometer mechanical limits    R/S NUMBER
I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct

| DATE | SIGNATURE OF AUTHORIZED AGENT X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER |
| DATE | BUYER S SIGNATURE ACKNOWLEDGES ODOMETER READING X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON S NUMBER |

EXHIBIT D, Page 28 of 30

# J.D. POWER

11/13/2025

**J.D. POWER Commercial Trucks**

**Tokyo Century (USA) Inc.**

2500 Westchester Ave
Suite 310
Purchase, NY 10577
914-696-2245
jmetcalf@tokyocentury.com

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2021 Isuzu Med Duty NPR NPR HD Regular Cab 6.6L Gas** |
| Period: | November 13, 2025 |
| VIN: | 54DC4W1D7MS209733 |
| Mileage: | 150,000 |
| Base MSRP: | N/A |
| GVW: | 0 |
| GCW: | 0 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $18,500 | N/A | $7,050 | **$25,550** |
| Loan | $16,650 | N/A | $7,050 | **$23,700** |
| Retail | $24,750 | N/A | $7,050 | **$31,800** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| 12'-18' Van Body | $5,150 | $5,150 |
| Liftgate | $1,900 | $1,900 |

EXHIBIT *E* , Page 29 of 30



# J.D. POWER

11/13/2025

**J.D. POWER Commercial Trucks**

**Tokyo Century (USA) Inc.**

2500 Westchester Ave
Suite 310
Purchase, NY 10577
914-696-2245
jmetcalf@tokyocentury.com

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2021 Isuzu Med Duty NPR NPR HD Regular Cab 6.6L Gas** |
| Period: | November 13, 2025 |
| VIN: | 54DC4W1D8MS209725 |
| Mileage: | 150,000 |
| Base MSRP: | N/A |
| GVW: | 0 |
| GCW: | 0 |

**J.D. POWER**

**No Image Available**

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $18,500 | N/A | $7,050 | **$25,550** |
| Loan | $16,650 | N/A | $7,050 | **$23,700** |
| Retail | $24,750 | N/A | $7,050 | **$31,800** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| 12'-18' Van Body | $5,150 | $5,150 |
| Liftgate | $1,900 | $1,900 |

EXHIBIT _F_, Page _30_ of _30_

