CAROLINE DJANG (SBN: 216313)
BUCHALTER LLP
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: cdjang@buchalter.com

Attorney for CIS International Distributors Inc., Live Aquaria Holdings Corp., Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics, Siam Tropical Fish Ltd., Tropical Aquarium Fish (FIJI) Ltd, and Charitha I. Samarasinghe

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

In re:

CIS INTERNATIONAL HOLDINGS
CORPORATION, dba E TROPICAL FISH,

Debtor

CASE NO. 2:25-bk-18374-BR

Chapter 7

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1452(a)**

[No Hearing Required]

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. § 1452(a), Federal Rule of Bankruptcy Procedure 9027, Local Bankruptcy Rule 9027-1 and General Order 13-05 of the United States District Court for the Central District of California, Charitha I Samarasinghe ("Mr. Samarasinghe"), CIS International Distributors Inc., Live Aquaria Holdings Corp, Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics, Siam Tropical Fish LTD, and Tropical Aquarium Fish (Fiji) LTD  (collectively, the "Guarantor Defendants"), hereby remove to the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court") that certain action entitled *Panthers Capital LLC v. CIS International Holdings (N.A.) Corp., et al*, Case No. FST-CV25-605223-S, pending in the Superior Court of Connecticut, Stamford Division (the "Connecticut Action"), to the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

The Connecticut Action was filed by Panthers Capital, LLC ("Panthers") against CIS International Holdings (N.A.) Corporation, d/b/a E Tropical Fish (the "Debtor") and the Guarantor

BUCHALTER LLP
LOS ANGELES

1
**SERVICE LIST**

BUCHALTER 108862268v1

Defendants.  The Complaint in the Connecticut Action asserts causes of action for (1) breach of contract, (2) fraudulent misrepresentation, (3) negligent misrepresentation, (4) breach of covenant of good faith and fair dealing, and (5) violation of the Connecticut Unfair Trade Practices Act against the Debtor, based on alleged default by the Debtor under certain agreements between Panthers and the Debtor. The Complaint also alleges claims for breach of contract against the Guarantor Defendants for failure to repay the alleged debts of the Debtor. The Debtor initiated the instant bankruptcy action approximately six weeks after service of the Connecticut Action. A notice of the Debtor's bankruptcy filing and the automatic stay was filed in the Connecticut Action, where Panthers continues to pursue the Guarantor Defendants for breach of contract related to the debtor's alleged default. The Guarantor Defendants have answered and counterclaimed against Panthers for (1) breach of contract, (2) breach of covenant of good faith and fair dealing, and (3) violation of the Connecticut Unfair Trade Practices Act. Panthers has moved to dismiss these counterclaims as unsupported under Connecticut law.

The Connecticut Action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O) because the Connecticut Action directly relates to, seeks possession of, and affects property of Debtor's estate. The Connecticut Action seeks to establish that all agreements between Panthers and the Debtor are valid, that the Debtor has failed to pay all amounts due and owed to Panthers under those agreements, that the Debtor is in breach of its agreements with Panthers, and that the Guarantor Defendants are therefore separately liable for remaining amounts allegedly owed under the agreements between the Debtor and Panthers.

In the instant bankruptcy case, the Chapter 7 trustee for the bankruptcy estate for the Debtor (the "Estate"), has filed an application to employ special counsel for the purposes of bringing any and all claims the Estate may have, including claims under the provisions of Chapter 5 of the Bankruptcy Code, arising out of, or relating to, the obligations and transfers made by the Debtor to Panthers (the "Potential Avoidance Actions").  *See Chapter 7 Trustee's Application to Employ Richard P. Cook, PLLC as Special Litigation Counsel* [Doc. 185].  As a central issue in both the Connecticut Action and the instant bankruptcy case is whether payments by the Debtor to Panthers pursuant to their prior agreements were proper, transferring the Connecticut Action to this Court

provides the most efficient way of resolving claims the claims by the Estate against Panthers and by Panthers against the Debtor and the Guarantor Defendants.

Second, it promotes judicial economy by consolidating related actions in one court, rather than permitting the related actions to proceed in parallel in separate courts.

Third, consolidating the related actions before this Court prevents the potential for conflicting rulings by this Court and the court in the Connecticut Action as to the underlying agreements and payments by the Debtor to Panthers.

Pursuant to Rule 9027(a)(1)(B), the Guarantor Defendants consent to this Court's entry of a final judgment or order.

**PLEASE TAKE FURTHER NOTICE** that the Connecticut Action is a civil action and is not a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power. The Connecticut Action is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B) and (O) because the Connecticut Action directly relates to, seeks possession of, and affects property of Debtor's estate.  Further, in light of the Debtor's pending bankruptcy case and the Potential Avoidance Actions to be brought by the Chapter 7 Trustee, having the litigation before this Court provides the most efficient means of resolving the parties' disputes.  Removal of the Action to this Court would also promote judicial economy. In accordance with Rule 9027(a)(1) of the Federal Rules of Bankruptcy Procedure, attached respectively as Exhibits A and B hereto are copies of the Complaint and the Connecticut Action docket.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Court's *Order Granting Chapter 7 Trustee's Motion for Order Extending Time to Remove Actions Pursuant to FRBP 9027(a)(2) and 28 U.S.C 1452* [Doc. 179], the Guarantor Defendants' removal of the Connecticut Action to this Court is timely.  In accordance with Rule 9027(b) and (c) of the Federal Rules of Bankruptcy Procedure, a copy of this Notice is being concurrently served on all parties to the Connecticut Action. In addition, a copy of this Notice of Removal is being concurrently filed with the Clerk of the State Court from which the Connecticut Action was removed.

BUCHALTER LLP
LOS ANGELES

**NOTICE OF REMOVAL**

BUCHALTER 108862268v1

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has jurisdiction over the Connecticut Action pursuant to 28 U.S.C. §§ 157(a) and 1334(b) because the Connecticut Action is "related to" the Debtor's bankruptcy case. The Connecticut Action is subject to removal pursuant to 28 U.S.C. § 157(a) and 1334(b) because the Bankruptcy Court has jurisdiction over the removed causes of action under 28 U.S.C. § 157(a) and 1334(b).

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9027(e)(3), any response to the Guarantor Defendants' statement that the proceeding is a core proceeding shall be filed and served on counsel for the Guarantor Defendants, whose name and address appear at the top left-hand corner of this Notice, not later than ten (10) days after the filing of this Notice of Removal.

**Please take notice that, pursuant to Federal Rule of Bankruptcy Procedure 9027(c), the parties to the Action shall proceed no further in the State Court unless and until the Action is remanded.**

Dated:  March 20, 2026

/s/ Caroline R. Djang

BUCHALTER LLP
LOS ANGELES

4

**NOTICE OF REMOVAL**

# EXHIBIT A

RETURN DATE: AUGUST 12, 2025 : SUPERIOR COURT

:

PANTHERS CAPITAL LLC : J.D. OF STAMFORD/NORWALK

: AT STAMFORD

V. :

:

CIS INTERNATIONAL HOLDINGS (N.A.) :

CORP. d/b/a E TROPICAL FISH, :

CHARITHA I SAMARASINGHE, :

CIS INTERNATIONAL DISTRIBUTORS INC., :

LIVE AQUARIA HOLDINGS CORP, :

LIONSROCK INVESTMENTS LLC, :

LIONSROCK WISCONSIN LLC, :

T3 AQUATICS, :

SIAM TROPICAL FISH LTD, :

TROPICAL AQUARIUM FISH (FIJI) LTD : JULY 11, 2025

## COMPLAINT

### COUNT ONE
### (BREACH OF CONTRACT AGAINST SELLER)

1.     The plaintiff, Panthers Capital LLC ("Buyer"), is a limited liability company with

a place of business in Connecticut.

2.     The Buyer and the defendant, CIS INTERNATIONAL HOLDINGS (N.A.) CORP.

d/b/a E Tropical Fish ("Seller"), entered into that certain Future Receivables Sale and Purchase

Agreement dated June 4, 2025 (the "Agreement"), pursuant to which the Seller sold, and the Buyer

purchased, future receipts of the Seller in the aggregate amount of $1,500,236.00. A redacted copy

of the Agreement is attached hereto as Exhibit A.

3.     The defendants, Charitha I. Samarasinghe, CIS International Distributors Inc., Live

Aquaria Holdings Corp., Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics,

Siam Tropical Fish Ltd., and Tropical Aquarium Fish (Fiji) Ltd. (collectively, the "Guarantors")

jointly and severally guaranteed the Seller's obligations under the Agreement, as evidenced by the

Guaranty of Performance executed by each of the Guarantors and incorporated within the Agreement (the "Guaranty").

4.     Upon execution of the Agreement and Guaranty by the Seller and the Guarantors, the Buyer advanced funds to the Seller in accordance with the terms and conditions set forth in the Agreement.

5.     The Seller defaulted under the Agreement in July 2025, including, without limitation, by taking actions that denied and interfered with the Buyer's contractual rights, including the Buyer's right to receive its designated share of the Seller's revenue. Specifically, and without limitation, the Seller caused a stop payment to be placed on the bank account into which it was required to deposit all receipts and from which the Buyer was authorized to initiate ACH debits to receive payment.

6.     Pursuant to the Agreement, the Seller consented to the jurisdiction of the courts of the State of Connecticut, with Connecticut law governing all matters arising thereunder.

7.     Further, pursuant to the Agreement, the Seller expressly waived any right to notice and a hearing prior to the Buyer obtaining prejudgment attachment of the Seller's property. See Agreement (Exhibit A), Paragraph 44.

8.     The Buyer is, and at all relevant times has been, the lawful owner and holder of the Agreement.

<u>COUNT TWO</u>
<u>(BREACH OF CONTRACT AGAINST GUARANTORS)</u>

1-5.     Paragraphs 1 through 5 of Count One are hereby incorporated by reference as Paragraphs 1 through 5 of this Count Two as if fully set forth herein.

2

6.      The Guarantors defaulted under the Guaranty by failing to pay the Buyer all amounts due and owing under the Agreement

7.      Pursuant to the Guaranty, the Guarantors consented to the jurisdiction of the courts of the State of Connecticut, with Connecticut law governing all matters arising thereunder.

8.       Further, pursuant to the Guaranty, the Guarantors expressly waived any right to notice and a hearing prior to the Buyer obtaining prejudgment attachment of the Guarantors' property. See Guaranty (Exhibit A), Paragraph 10.

9.      The Buyer is, and at all relevant times has been, the lawful owner and holder of the Agreement and the Guaranty.

WHEREFORE, the Buyer respectfully requests that the Court enter judgment in its favor and award the following relief:
   a. Money damages in an amount to be determined at trial;
   b. The Buyer's reasonable attorneys' fees and costs incurred herein;
   c. Prejudgment and post-judgment interest as permitted by law and the Agreement; and
   d. Such other and further relief as the Court deems just and equitable.

THE PLAINTIFF,
PANTHERS CAPITAL LLC

By _____
Lucas Rocklin, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Telephone No. (203) 781-2835
Firm Juris Number 407996

3

| | | |
|---|---|---|
| RETURN DATE: AUGUST 12, 2025 | : | SUPERIOR COURT |
| | : | |
| PANTHERS CAPITAL LLC | : | J.D. OF STAMFORD/NORWALK |
| | : | AT STAMFORD |
| V. | : | |
| | : | |
| CIS INTERNATIONAL HOLDINGS (N.A.) | : | |
| CORP. d/b/a E TROPICAL FISH, | : | |
| CHARITHA I SAMARASINGHE, | : | |
| CIS INTERNATIONAL DISTRIBUTORS INC., | : | |
| LIVE AQUARIA HOLDINGS CORP, | : | |
| LIONSROCK INVESTMENTS LLC, | : | |
| LIONSROCK WISCONSIN LLC, | : | |
| T3 AQUATICS, | : | |
| SIAM TROPICAL FISH LTD, | : | |
| TROPICAL AQUARIUM FISH (FIJI) LTD | : | JULY 11, 2025 |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of interest and costs, exceeds $15,000.00.

THE PLAINTIFF,
PANTHERS CAPITAL LLC

By _____
Lucas Rocklin, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Telephone No. (203) 781-2835
Juris Number 407996

4

# EXHIBIT
# A

**PANTHERS CAPITAL**

## FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT

This agreement (this "Agreement"), dated _____6/4/2025_____, between Panthers Capital LLC D/B/A Panthers Capital ("Panthers Capital"), the seller(s) listed herein (collectively, the "Seller"), and each guarantor identified below (each a "Guarantor") (all capitalized terms shall have the meanings ascribed to them below):

**Seller Legal Name:** CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A"

**D/B/A:** E TROPICAL FISH

**Form of Business Entity:** Corporation          **EIN #:** ███████

**Physical Address:** 1405 W 178TH ST, GARDENA , CA 90248

**Mailing Address:** 1405 W 178TH ST, GARDENA , CA 90248

**PURCHASE PRICE:** $ 1,020,569.00     **PURCHASED AMOUNT:** $ 1,500,236.00     **SPECIFIED PERCENTAGE:** 50.00%

**ORIGINATION FEE:** $ 250.00     **PRIOR BALANCE:** $ 1,020,319.00     **INITIAL** Daily **DEBIT:** $ 10,002.00

**AMOUNT PAID TO SELLER (AFTER DEDUCTING THE ORIGINATION FEE AND ANY PRIOR BALANCE):** $ 0.00

**FOR SELLER #1**

By: _[signature]_
   086ED1260399401...

**Name:** CHARITHA I  SAMARASINGHE

**Title:** Owner

**Email:** ██████████

**Business Phone:** ██████████

**FOR SELLER #2**

By: _____

**Name:** _____

**Title:** Owner

**Email:** _____

**Business Phone:** _____

*Accurate contact information is required to provide the Seller with important information regarding the Agreement.*

Concurrently with the execution of this Agreement by Seller, and as condition to the effectiveness hereof, Seller has caused the **Personal Guaranty of Performance** in the form attached hereto as "Exhibit A" (the "Guaranty") to be signed and delivered to Panthers Capital by the following Owner(s)/Guarantor(s) of Seller

**OWNER/GUARANTOR #1**

By: _[signature]_
   086ED1260399401...

**Name:** CHARITHA I  SAMARASINGHE

**SSN** ██████████

**PHONE:** ██████████

**Address:** 4 SUNDOWN DR , RLLNG HLS EST , CA 90274

**OWNER/GUARANTOR #2**

By: _____

**Name:** _____

**SSN:** _____

**PHONE:** _____

**Address:** _____

**WHEREAS**, Seller is desirous to sell to Panthers Capital, and Panthers Capital is desirous to purchase from Seller a Specified Percentage of the Seller's Future Receipts, but only on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the mutual receipts and sufficiency of which is hereby acknowledged by both parties, Panthers Capital and Seller hereby agree to the foregoing and as follows:

1. **Basic Terms and Definitions.**

a.  "Effective Date" shall mean the later of: (i) the date set forth in the preamble to this Agreement, and (ii) the date when Panthers Capital paid the Purchase Price to Seller. The obligation of Panthers Capital under this Agreement will not be effective unless and until Panthers Capital has completed its review of the Seller and has accepted this Agreement by delivering the Purchase Price, minus any Origination Fee and Prior Balance.

b.  "Specified Percentage" shall mean the percentage set forth in the preamble to this Agreement of Seller's Future Receipts.

c.  "Future Receipts" shall mean, collectively, all of Seller's receipts of monies for the sale of its goods and services that monies shall be paid and delivered to Seller by Seller's customers and/or other vendees after the Effective Dateof this Agreement; which payments or deliveries of monies can be made in the form of cash, check, credit, charge,or debit card, ACH or other electronic transfer or any other form of monetary payment and/or pecuniary benefit received by Seller.

d.  " Daily  Receipts" shall mean the amount of Future Receipts received by Seller on a  Daily  basis.

e.  "Purchased Amount" shall mean the total amount of the Specified Percentage of the Future Receipts that Seller shall be under obligation to deliver and permit Panthers Capital to debit pursuant to this Agreement. The Purchased Amount shall be the amount set forth under "Purchased Amount" in the preamble to this Agreement.

f.  "Purchase Price" shall mean the total amount that Panthers Capital agrees to pay for the Purchased Amount. Note that the amount that Seller will actually receive from Panthers Capital pursuant to this Agreement will be less than the Purchase Price by the total sum of the Origination Fee and Prior Balance, if any, set forth in the Preamble to this Agreement.

g.  " Daily  Installment" shall mean the amount that Seller and Panthers Capital agree to be a good faith approximation of the Specified Percentage of Seller's  Daily  Future Receipts. Seller and Panthers Capital further agree that the Initial  Daily  Installment set forth in the Preamble to this Agreement is based upon the information provided by Seller to Panthers Capital concerning Seller's most recent accounts receivables, including representations by the Seller to Panthers Capital regarding the Seller's estimated Future Receipts, and subject to Seller's right of adjustment/reconciliation set forth in this Agreement.

h.  "Workday" shall mean Monday through Friday except on days when banking institutions are closed for the holidays and do not process ACH payments.

i.  "Prior Balance" shall mean the sum of all amounts that Seller may owe to Panthers Capital and/or third party(s) as of the Effective Date of this Agreement. The Prior Balance, if any, is described in Section 19 of this Agreement and will be deducted from the Purchase Price prior to delivering it to Seller pursuant to Seller's authorization set forth in Rider 2 to this Agreement, provided nevertheless that such deduction shall not be deemed to reduce the agreed upon Purchase Price.

j.  "Origination Fee" shall mean the fee that Panthers Capital charges Seller for the costs of underwriting and processing Seller's application for funding. The Origination Fee, if any, is described in Section 20 of this Agreement and will be deducted from the Purchase Price prior to delivering it to Seller pursuant to Seller's authorization set forth in Rider 3 to this Agreement, provided nevertheless that such deduction shall not be deemed to reduce the agreed upon Purchased Price or Purchased Amount.

k.  In the event "Seller" is comprised of more than one entity, then:

   i.   The term "Seller" shall mean, individually and collectively, all such entities; and

   ii.   Each Seller is an "Affiliate" of all other Seller(s). The term "Affiliate" shall mean an entity or an individual that (1) controls, (2) is under the "Control", or (3) is under common Control with the entity or individual in question. The term "Control" shall mean direct or indirect ownership of more than 50% of the outstanding voting stock of a corporation or other majority equity interest if not a corporation and the possession of power to direct or cause the direction of the management and policy of such corporation or other entity, whether through ownership of voting securities, by statute, or by contract; and

   iii.   The representations, warranties, covenants, obligations and liabilities of each Seller shall be joint and several under this Agreement; and

Docusign Envelope ID: 5258E2DB-AAC8-46BC-AEC4-6B2A20EFA633

**iv.**    The liability of each Seller under this Agreement shall be direct and immediate and shall not be conditional or contingent upon the pursuance of any remedies against any other person or entity; and

**v.**    The terms "Specified Percentage", "Future Receipts", " Daily  Receipts", " Daily  Installment" shall mean the Specified Percentage, the Future Receipts and the   Daily   Receipts of all Sellers jointly; and each Seller individually; and

**vi.**    Panthers Capital may pursue its rights and remedies under this Agreement against any one or any number of entities that constitute Seller without obligation to assert, prosecute or exhaust any remedy or claim against any other Seller or any Guarantor.

**l.**    In the event "Guarantor" is comprised of more than one individual, then:

**i.**    The term "Guarantor" shall mean, individually and collectively, all such individuals; and

**ii.**    Each Guarantor is an Affiliate of all other Guarantor(s); and

**iii.**    The representations, warranties, covenants, obligations and liabilities of each Guarantor shall be joint and several under this Agreement and the Guaranty; and

**iv.**    The liability of each Guarantor under this Agreement and the Guaranty shall be direct and immediate and shall not be conditional or contingent upon the pursuance of any remedies against any other person or entity; and

**v.**    Panthers Capital may pursue its rights and remedies under this Agreement and/or Guaranty against any one or any number of individuals that constitute Guarantor without obligation to assert, prosecute or exhaust any remedy or claim against any other Guarantor or any Seller.

2.    **No  Fixed  Term.** This Agreement for the purchase and sale of Future Receipts does not have a fixed duration or term, which is potentially infinite. Subject to the provisions of Sections 10-13 hereof, the term of this Agreement shall commence on the Effective Date and expire on the date (the "Expiration Date") when the Purchased Amount and all other sums due to Panthers Capital pursuant to this Agreement are received by Panthers Capital in full. Seller hereby acknowledges that it fully understands that: (i) Panthers Capital's ability to collect the Purchased Amount (or any portion thereof) is contingent upon Seller's continued operation of its business and successful generation of the Future Receipts until the Purchased Amount is delivered to Panthers Capital in full; and (ii) that in the event of decreased efficiency or total failure of Seller's business Panthers Capital's receipt of the full or any portion of the Purchased Amount may be delayed indefinitely.

3.    **Sale of Purchased Future  Receipts**. Seller hereby sells, assigns, transfers and conveys (hereinafter, the "Sale") unto Panthers Capital all of Seller's right, title and interest in to the Specified Percentage of the Future Receipts until the Purchased Amount shall have been delivered by Seller to Panthers Capital (hereinafter, the portion of the Future Receipts sold by Seller to Panthers Capital pursuant to this Agreement, the "Purchased Future Receipts" ); to have and hold the same unto Panthers Capital, its successors and assigns, forever. This Sale of the Purchased Future Receipts is made without express or implied warranty to Panthers Capital of collectability of the Purchased Future Receipts by Panthers Capital and without recourse against Seller and/or Guarantor(s), except as specifically set forth in this Agreement. By virtue of this Agreement, Seller transfers to Panthers Capital full and complete ownership of the Purchased Future Receipts and Seller retains no legal or equitable interest therein.

4.    **Payment of Purchase Price**. The obligation of Panthers Capital under this Agreement will not be effective unless and until Panthers Capital has completed its review of the Seller and has accepted this Agreement by paying to Seller the Purchase Price (reduced by the Origination Fee and Prior Balance, if any).

5.    **Use of Purchase Price**. Seller agrees to use the Purchase Price exclusively for the benefit and advancement of Seller's business operations and for no other purpose.

6.     Daily  **Installments of Purchased Amount.** Subject to Seller's right of adjustment/reconciliation set forth in this Agreement, the Purchased  Amount  shall  be  delivered  by  Seller  to Panthers Capital   Daily   in the amount of the  Daily   Installment on each and every Workday commencing on the Effective Date and ending on the Expiration Date.

7.    **Approved Bank Account and Credit Card Processor**. During the course of this Agreement, Seller shall: (i) deposit all Future Receipts into one (and only one) business-purpose bank account which bank account shall be acceptable and preapproved by Panthers Capital (the "Approved Bank Account"), (ii) use one (and only one) credit card processor which processor shall be acceptable and preapproved by Panthers Capital (the "Approved Processor") and (iii) deposit all credit card receipts into the Approved Bank Account. In the event the Approved Bank Account or Approved Processor shall become unavailable or shall cease providing services to Seller during the course of this Agreement, prior to the first date of such unavailability or cessation of services, Seller shall arrange for another Approved Bank Account or Approved Processor, as the case may be.

8.    **Authorization to Debit Approved Bank Account.** Seller hereby authorizes Panthers Capital to initiate electronic checks or ACH debits from the Approved Bank Account (which as of the Effective Date of this Agreement shall be the account listed below) in the amount of the   Daily   Installment on each Workday commencing on the Effective Date until Panthers Capital receives the full Purchased Amount;

Docusign Envelope ID: 5258E2DB-AAC8-46BC-AEC4-6B2A20EFA633

The Daily Installment is to be drawn via ACH payment, from the following bank account:



NOTE that this authorization is to remain in full force and effect until Panthers Capital receives written notification from Seller of its termination in such time and in such manner to afford Panthers Capital a reasonable opportunity to act on it; provided, however, that revocation of this authorization prior to remittance of the balance under the Agreement shall constitute a breach thereunder, subject to Sections 10-13 herein.

9. **Fees Associated with Debiting Approved Bank Account.** It shall be Seller's exclusive responsibility to pay to its banking institution and/or Panthers Capital's banking institution directly (or to compensate Panthers Capital, in case it is charged) all fees, charges and expenses incurred by either Seller or Panthers Capital due to rejected electronic checks or ACH debit attempts, overdrafts or rejections by Seller's banking institution of the transactions contemplated by this Agreement, including without limitation a $35.00 charge per bounced or rejected ACH debit.

10. **Seller's Right of Reconciliation.** Seller and Panthers Capital each acknowledge and agree that:

a. If at any time during the course of this Agreement Seller experiences a decrease or increase in its Daily Receipts, Seller shall have the right to request retroactive reconciliation of the Daily Installments for one (1) full calendar month immediately preceding the day when such request for reconciliation is received by Panthers Capital (each such calendar month, a "Reconciliation Month").

b. Such reconciliation (the "Reconciliation") of the Seller's Daily Installment for a Reconciliation Month shall be performed by Panthers Capital within five (5) Workdays following its receipt of the Seller's request for Reconciliation by either crediting or debiting the difference back to, or from, the Approved Bank Account so that the total amount debited by Panthers Capital from the Approved Bank Account during the Reconciliation Month at issue is equal to the Specified Percentage of the Future Receipts that Seller collected during the Reconciliation Month at issue.

c. One or more Reconciliation procedures performed by Panthers Capital may reduce or increase the effective Daily Installment amount during the Reconciliation Month in comparison to the one set forth in Section 1 of this Agreement, and, as the result of such reduction, the term of this Agreement during which Panthers Capital will be debiting the Approved Bank Account may get shortened or extended indefinitely.

11. **Request for Reconciliation Procedure.**

a. Seller may initiate Reconciliation of Seller's actual Daily Installments at any time by sending a request for Reconciliation to Panthers Capital.

b. Any such request for Reconciliation of the Seller's Daily Installments for a specific Reconciliation Month shall be in writing, shall include a copy of Seller's bank statement, credit card processing statements,and pertinent aging report(s) for the Reconciliation Month at issue, and shall be received by Panthers Capital via email to accounting@pantherscapital.com with the subject line "REQUEST FOR RECONCILIATION."

c. Seller shall have the right to request Reconciliation as many times during the term of this Agreement as it deems proper, and Panthers Capital shall comply with each such request, provided that:

i. Each such request is made in accordance with the terms of this Section 11; and

ii. If a request for Reconciliation is made after the expiration of the term of this Agreement and, as the result of such Reconciliation, the total amount actually debited by Panthers Capital from the Approved Bank Account will become less than the Purchased Amount, then and in such event the term of this Agreement shall automatically be extended until the time when the total amount actually debited from Approved Bank Account pursuant to this Agreement shall become equal to the Purchased Amount.

d. Nothing set forth in Sections 10 or 11 of this Agreement shall be deemed to: (i) provide Seller with the right to interfere with Panthers Capital's right and ability to debit the Approved Bank Account while the request for Reconciliation of Seller's receipts is pending or until the Purchased Amount is collected by Panthers Capital in full, or (ii) modify the amount of the Daily Installment for any calendar month during the term of this Agreement other than during the Reconciliation Month (s) as the result of the Reconciliation.

12. **Adjustment of the Daily Installment.** Seller and Panthers Capital each acknowledge and agree that:

a. Seller and Panthers Capital shall have the right to request modification ("Adjustment") of the amount of

the  Daily  Installment on a going-forward basis to more closely reflect Seller's actual  Daily  Receipts times the Specified Percentage. Panthers Capital will notify Seller prior to any such adjustment.  After each adjustment made pursuant to this paragraph, the new dollar amount will be deemed the updated  Daily  Installment until any subsequent Adjustment. If Seller requests an Adjustment, Panthers Capital shall perform the Adjustment within five (5) Workdays following its receipt of the Seller's request for Adjustment by modifying the amount of the  Daily  Installment that shall be debited from the Approved Bank Account.

b.    One or more Adjustments performed by Panthers Capital may substantially extend the term of this Agreement.

**13.    Request for Adjustment Procedure.**

a.    Seller and/or Panthers Capital may initiate an Adjustment by sending a request for Adjustment to the other party in writing. Seller may request an adjustment via e-mail to accounting@pantherscapital.com with the subject line "REQUEST FOR ADJUSTMENT."

b.    Within five (5) Workdays following a request for Adjustment (an "Adjustment Request") Seller shall provide to Panthers Capital's copies of: (i) Seller's most recent month's bank statement of the Approved Bank Account and month-to-date transaction activity, credit card processing statements and any aging reports immediately preceding the date of Panthers Capital's receipt of the Adjustment Request.

c.    Seller and Panthers Capital shall have the right to request Adjustment of the  Daily  Installment as many times during the term of this Agreement as it deems proper, and Panthers Capital shall comply in good faith with such request, provided that:

i.    Each such request for Adjustment is made in accordance with the terms of this Section 13; and

ii.    A request for Adjustment shall not be made after the Expiration Date.

**14.    Rights and Obligations of** Panthers Capital **upon Receipt of the full Purchased Amount.**

Upon receipt of the full amount of the Purchased Amount and any fees owed to Panthers Capital under this Agreement:

a. Panthers Capital shall notify Seller's bank and request from it to stop transferring  Daily  Installments to Panthers Capital's bank account.

b. If Panthers Capital shall have received funds in excess of the Purchased Amount and any fees owed to Panthers Capital under this Agreement, Panthers Capital shall promptly return such excess to Seller.

**15.    Risk Sharing Acknowledgments and Arrangements.**

a. Seller and Panthers Capital each hereby acknowledges and agrees that:

i.    The Purchased Future Receipts represent a portion of Seller's Future Receipts.

ii.    This Agreement consummates the sale of the Purchased Future Receipts at a discount, not the borrowing of funds by Seller from Panthers Capital. Panthers Capital does not charge Seller and will not collect from Seller any interest on the monies used by Panthers Capital for the purchase of the Purchased Future Receipts. The period of time that it will take Panthers Capital to collect the Purchased Amount is not fixed, is unknown to both parties as of the Effective Date of this Agreement and will depend on how well or not well Seller's business will be performing following the Effective Date. As an extreme example, in the event Seller's business ceases to exist after Panthers Capital's purchase of the Purchased Future Receipts as a result of a drying up of revenues for reasons outside Seller's reasonable control, Panthers Capital may never collect all or a substantial portion of the Purchased Future Receipts and will never recover the moneys it spent on such purchase.

iii.    The amount of the Initial  Daily  Installment set forth in Section 1 of this Agreement is calculated based upon the information concerning an average amount of  Daily  Receipts collected by Seller's business immediately prior to the Effective Date of this Agreement, as well as representations regarding the Seller's estimated Future Receipts, which  information  was provided by the Seller to Panthers Capital.

iv.    The amounts of Seller's future  Daily  Receipts may increase or decrease over time.

**16.    Panthers Capital's Risk Acknowledgments.** Panthers Capital agrees to purchase the Purchased Future Receipts knowing the risks that Seller's business may slow down or fail, and Panthers Capital assumes these risks based

exclusively upon the information provided to it by Seller related to the business operations of Seller's business prior to the date hereof, and upon Seller's representations, warranties and covenants contained in this Agreement that are designed to give Panthers Capital a reasonable and fair opportunity to receive the benefit of its bargain. Panthers Capital assumes the risk that Future Receipts may be remitted more slowly than Panthers Capital may have anticipated or projected because Seller's business has slowed down, and the risk that the full Purchased Amount may never be remitted because Seller's business went bankrupt or Seller otherwise ceased operations in the ordinary course of business.

17. **Application of Amounts Received by** Panthers Capital. Panthers Capital reserves the right to apply amounts received by it under this Agreement to any fees or other charges due to Panthers Capital from Seller prior to applying such amounts to reduce the outstanding amount of the Purchased Amount. Any ACH payments and/or payments which clear after the Effective Date of this Agreement shall be applied to the balance hereunder.

18. **Not a Loan.** Seller and Panthers Capital agree that the Purchase Price is paid to Seller in consideration for the acquisition of the Purchased Future Receipts and that payment of the Purchase Price by Panthers Capital is not intended to be, nor shall it be construed as, a loan from Panthers Capital to Seller that requires absolute and unconditional repayment on a maturity date. To thecontrary, Panthers Capital's ability to receive the Purchased Amount pursuant to  this Agreement, and the date when the Purchased Amount is delivered to Panthers Capital in full (if ever) are subject to and conditioned upon performance of Seller's business.

19. **Prior Balance.** Seller represents and warrants that Rider 2, which is attached hereto and made a part hereof, contains true and correct information as to the name(s) of Seller's creditors and the amounts that Seller owes eachof those creditors as of the Effective Date (and these amounts being a portion of the Prior Balance), and that as of the date hereof there are no creditors of Seller which may otherwise encumber the Purchased Future Receipts other than those listed in Rider 2. Seller indemnifies and holds harmless Panthers Capital for any and all damages and losses (including without limitation legal fees and expenses) incurred by Panthers Capital as the result of such representation being untrue, incorrect or incomplete.

20. **Origination Fee.** Seller hereby agrees for Panthers Capital to withhold from the Purchase Price the Origination Fee contained in Rider 1, which is attached hereto and made a part hereof.

## REPRESENTATIONS, WARRANTIES AND COVENANTS

21. Seller represents, warrants and covenants that as of this date and, unless otherwise stated, during the course of this Agreement:

   a. **Financial Condition and  Financial  Information.**  Seller's bank and financial statements, copies of which have been furnished to Panthers Capital, and future statements which may be furnished hereafter pursuant to this Agreement or upon Panthers Capital's request, fairly represent the financial condition of Seller as of the dates such statements were issued, and prior to execution of the Agreement there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Seller. Panthers Capital may request Seller's bank statements at any time during the term of this Agreement and view-only access to Seller's bank account and Seller shall provide them to Panthers Capital within five (5) Workdays. Seller's failure to do so is a material breach of this Agreement.

   b. **Governmental Approvals.** Seller is in compliance and, during the term of this Agreement, shall be in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

   c. **Good Standing.** Seller is a corporation/limited liability company/limited partnership/other type of entity that is in good standing and duly incorporated or otherwise organized and validly existing under the laws of its jurisdiction of incorporation or organization and has full power and authority necessary to carry its business as it is now being conducted.

   d. **Authorization.** Seller has all requisite power to execute, deliver and perform this Agreement and consummate the transactions contemplated hereunder; entering into this Agreement will not result in breach or violation of, or default under, any agreement or instrument by which Seller is bound or any statute, rule, regulation, order or other law to which Seller is subject, nor require the obtaining of any consent, approval, permit or license from any governmental authority having jurisdiction over Seller. All organizational and other proceedings required to be taken by Seller to authorize the execution, delivery and performance of this Agreement have been taken. The person signing this Agreement on behalf of Seller has full power and authority to bind Seller to perform its obligations under this Agreement.

   e. **Accounting Records and Tax Returns.**  Seller will treat receipt of the Purchase Price and payment of the Purchased Amount in a manner evidencing sale of its future receipts in its accounting records and tax returns and further agrees that Panthers Capital is entitled to audit Seller's accounting records upon reasonable notice in order to verify compliance. Seller hereby waives any rights of privacy, confidentiality or taxpayer privilege in any litigation or arbitration arising out of this Agreement in which Seller asserts that this transaction is anything other than a sale of future receipts.

**f.**   **Taxes; Workers Compensation Insurance.** Seller has paid and will promptly pay, when due, all taxes, including without limitation, income, employment, sales and use taxes, imposed upon Seller's business by law, and will maintain workers compensation insurance required by applicable governmental authorities.

**g.**   **Electronic Check Processing Agreement.** Seller shall not change its Approved Processor, add terminals, change its Approved Bank Account(s) or take any other action that could have any adverse effect upon Seller's obligations or impede Panthers Capital's rights under this Agreement, without Panthers Capital's prior written consent.

**h.**   **No Diversion of Future Receipts.** Seller shall not allow any event to occur that would cause a diversion of any portion of Seller's Future Receipts from the Approved Bank Account or Approved Processor without Panthers Capital's written permission.

**i.**   **Change of Name or Location.** Seller, any successor-in-interest of Seller, and Guarantor shall not conduct Seller's businesses under any name other than as disclosed to the Approved Processor and Panthers Capital, shall not change and/or transfer ownership in/of the Seller and will not change any of its places of business without first obtaining Panthers Capital's written consent.

**j.**   **Prohibited Business Transactions.** Seller shall not: (i) voluntarily transfer or sell all or substantially all of its assets (including without limitation the Collateral as such term is defined in Section 23 or any portion thereof) without first obtaining Panthers Capital's consent; or (ii) make or send notice of its intended bulk sale or transfer.

**k.**   **Closing of Business.** Seller will not voluntarily sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without first: (i) obtaining the express written consent of Panthers Capital, and (ii) providing Panthers Capital with a written agreement of a purchaser or transferee of Seller's business or assets to assume all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Panthers Capital. Seller represents that it has no current plans to close its business either temporarily (for renovations, repairs or any other purpose), or permanently. Seller agrees that until Panthers Capital shall have received the Purchased Amount in full, Seller will not voluntarily close its business on a permanent or temporarily basis for renovations, repairs, or any other purposes. Notwithstanding the foregoing, Seller shall have the right to close its business temporarily if such closing is necessitated by a requirement to conduct renovations or repairs imposed upon Seller's business by legal authorities having jurisdiction over Seller's business (such as from a health department or fire department), or if such closing is necessitated by circumstances outside Seller's reasonable control. Prior to any such temporary closure of its business, Seller shall provide Panthers Capital ten (10) Workdays advance notice, to the extent practicable.

**l.**   **No Pending Bankruptcy.** As of the date of Seller's execution of this Agreement, Seller is not insolvent, has not filed, and does not contemplate filing, any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary bankruptcy petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney on the issue of filing bankruptcy or some other insolvency proceeding within six (6) months immediately preceding the date of this Agreement.

**m.**   **Estoppel Certificate.** Seller will at any time, and from time to time, upon at least one (1) Workday's prior notice from Panthers Capital to Seller, execute, acknowledge and deliver to Panthers Capital and/or to any other person or entity specified by Panthers Capital, a statement certifying that this Agreement is unmodified and in full force and effect or, if there have been modifications, that the same is in full force and effect as modified and stating the modification(s) and stating the date(s) on which the Purchased Amount or any portion thereof has been delivered.

**n.**   **Unencumbered Future Receipts.** Seller has and will continue to have good, complete and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests other than by virtue or entering into this Agreement. Seller specifically warrants and represents that it is not currently bound by the terms of any future receivables and/or factoring agreement which may encumber in any way the Future Receipts.

**o.**   **No Stacking.** Seller shall not further encumber the Future Receipts, without first obtaining written consent of Panthers Capital.

**p.**   **Business Purpose.** Seller is entering into this Agreement solely for business purposes and not as a consumer for personal, family or household purposes.

**q.**   **No Default Under Contracts with Third Parties.** Seller's execution of and/or performance of its obligations under this Agreement will not cause or create an event of default by Seller under any contract, which Seller is or may become a party to.

r.    **Right of Access.** In order to ensure Seller's compliance with the terms of this Agreement, Seller hereby grants Panthers Capital the right to enter, without notice, the premises of Seller's business for the purpose of inspecting and checking Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and/or batch Seller's   Daily   receipts to the Approved Processor and to ensure that Seller has not violated any other provision of this Agreement. Furthermore, Seller hereby grants Panthers Capital and its employees and consultants access during regular business hours to Seller's employees and records and all other items of property located at the Seller's place of business during the course of this Agreement. Seller hereby agrees to provide Panthers Capital, upon request, all and any information concerning Seller's business operations, banking relationships, names and contact information of Seller's suppliers, vendors and landlord(s), to allow Panthers Capital to interview any of those parties.

s.    **Phone Recordings and Contact.** Seller agrees that any call between Seller and Panthers Capital and its owners, managers, employees and agents may be recorded and/or monitored. Furthermore, Seller acknowledges and agrees that: (i) it has an established business relationship with Panthers Capital, its managers, employees and agents (collectively, the "Panthers Capital Parties") and that Seller may be contacted by any of Panthers Capital Parties from time-to-time regarding Seller's performance of its obligations under this Agreement or regarding other business transactions; (ii) it will not claim that such communications and contacts are unsolicited or inconvenient; and (iii) any such contact may be made by any of Panthers Capital Parties in person or at any phone number (including mobile phone number), email addresses, or facsimile number belonging to Seller's office, or its owners, managers, officers, or employees.

t.    **Knowledge and Experience of Decision Makers.** The persons authorized to make management and financial decisions on behalf Seller with respect to this Agreement have  such  knowledge, experience and skill in financial and business matters in general and with respect to transactions of a nature similar to the one contemplated by this Agreement so as to be capable of evaluating the merits and risks of, and making an informed business decision with regard to, Seller entering into this Agreement.

u.    **Seller's Due Diligence.** The person authorized to sign this Agreement on behalf of Seller: (i) has received all information that such person deemed necessary to make an informed decision with respect to a transaction contemplated by this Agreement; and (ii) has had unrestricted opportunity to make such investigation as such person desired pertaining to the transaction contemplated by this Agreement and verify any such information furnished to him or her by Panthers Capital.

v.    **Consultation with Counsel.** The person(s) signing this Agreement of behalf of Seller: (a) has read and fully understands the content of this Agreement; (b) has consulted to the extent he/she wished with Seller's own counsel in connection with entering into this Agreement; (c) has made sufficient investigation and inquiry to determine whether this Agreement is fair and reasonable to Seller, and whether this Agreement adequately reflects his or her understanding of its terms.

Y.    **No Reliance on Oral Representations.** This Agreement contains the entire agreement between Seller and Panthers Capital with respect to the subject matter of this Agreement and supersedes each course of conduct previously pursued or acquiesced in, and each oral agreement  and representation  previously made, by Panthers Capital or any of the Panthers Capital Parties with respect thereto (if any), whether or not relied or acted upon. No course of performance or other conduct subsequently pursued or acquiesced in, and no oral agreement or representation subsequently made, by the Panthers Capital Parties, whether or not relied or acted upon, and no usage of trade, whether or not relied or acted upon, shall amend this Agreement or impair or otherwise affect Seller's obligations pursuant to this Agreement or any rights and remedies of the parties to this Agreement

Z.    **No Additional Fees Charged.** Seller hereby acknowledges and agrees that: (i) other than the Origination Fee, if any, set forth in Section 20 herein, Panthers Capital is NOT CHARGING ANY ADDITIONAL FEES OR CLOSING COSTS to Seller; and (ii) if Seller is charged with any fee and/or cost not listed in Section 2 hereof, such fee is not charged by Panthers Capital. Moreover, as all working capital received under this Agreement is intended to ensure Seller's continued success, Seller warrants and covenants not to pay any fee and/or commission with regard to this transaction other than as provided for herein.

aa.    **Credit Report and Other Authorizations** Seller and each of the Owners signing above authorize Panthers Capital, its agents and representatives and any credit reporting agency engaged by Panthers Capital, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement; (ii) obtain consumer and business credit reports on the Seller and any of its Owners; and (iii) to contact personal and business references provided by the Seller in any application, at any time now or for so long as Seller and/or Owners continue to have any obligations to Panthers Capital as a consequence of this Agreement or for Panthers Capital's ability to determine Seller's eligibility to enter into any future agreement with Panthers Capital.

### PLEDGE OF SECURITY

22. **Pledge.** As security for the prompt and complete performance of any and all liabilities, obligations, covenants or agreements of Seller under this Agreement (and any future amendments of this Agreement, if any) (hereinafter referred to collectively as the "Obligations"), Seller hereby pledges, assigns and hypothecates to Panthers Capital (collectively, "Pledge") and grants to Panthers Capital a continuing, perfected and first priority lien upon and security interest in, to and under all of Seller's right, title and interest in and to the following (collectively, the "Collateral"), whether now existing or hereafter from time to time acquired:

   a. all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Seller; and

   b. all Seller's proceeds, as such term is defined by Article 9 of the UCC.

23. **Termination of Pledge.** Upon the performance by Seller in full of the Obligations, the security interest in the Collateral pursuant to this Pledge shall automatically terminate without any further act of either party being required, and all rights to the Collateral shall revert to Seller. Upon any such termination, Panthers Capital will execute, acknowledge (where applicable) and deliver such satisfactions, releases and termination statements, as Seller shall reasonably request.

24. **Representations with Respect to Collateral.** Seller hereby represents and warrants to Panthers Capital that the execution, delivery and performance by Seller of this Pledge, and the remedies in respect of the Collateral under this Pledge (i) have been duly authorized; (ii) do not require the approval of any governmental authority or other third party or require any action of, or filing with, any governmental authority or other third party to authorize same; and (iii) do not and shall not (A) violate or result in the breach of any provision of law or regulation, any order or decree of any court or other governmental authority, and/or (B) violate, result in the breach of or constitute a default under or conflict with any indenture, mortgage, deed of trust, agreement or any other instrument to which Seller is a party.

25. **Further Assurances.** Upon the request of Panthers Capital, Seller, at Seller's sole cost and expense, shall execute and deliver all such further UCC-1s, continuation statements, assurances and assignments of the Collateral and consents with respect to the pledge of the Collateral and the execution of this Pledge, and shall execute and deliver such further instruments, agreements and other documents and do such further acts and things, as Panthers Capital may request in order to more fully effectuate the purposes of this Pledge and the assignment of the Collateral and obtain the full benefits of this Pledge and the rights and powers herein created.

### EVENTS OF DEFAULT AND REMEDIES

26. **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" by Seller:
   a. Seller shall violate any term, condition or covenant in this Agreement.
   b. Any representation or warranty by Seller made in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made.
   c. Seller shall default under any of the terms, covenants and conditions of any other agreement with Panthers Capital (if any) which is related to the instant Agreement.
   d. Seller uses multiple depository accounts without obtaining prior written consent of Panthers Capital in each instance.
   e. Seller fails to deposit any portion of its Future Receipts into the Approved Bank Account;
   f. Seller changes the Approved Bank Account or Approved Processor without obtaining prior written consent of Panthers Capital in each instance.
   g. Seller intentionally interferes with Panthers Capital's collection of Daily Installments.

27. **Default under the Agreement.** In case any Event of Default occurs and is not waived by Panthers Capital, in writing, Panthers Capital may declare Seller in default under this Agreement without notice.

28. **Seller's Obligations Upon Default.** Upon occurrence of an Event of Default due to Seller's breach of its obligations under this Agreement, Seller shall immediately deliver to Panthers Capital the entire undelivered portion of the Purchased Amount and the Specified Percentage shall equal 100% of all Future Receipts. In addition, Seller shall also pay to Panthers Capital, as additional damages, any reasonable expenses incurred by Panthers Capital in connection with recovering the monies due to Panthers Capital from Seller pursuant to this Agreement, including without limitation the costs of retaining collection firms and reasonable attorneys' fees and disbursements (collectively, "Reasonable Damages").

29. **Remedies Upon Default.** Upon Seller's default, Panthers Capital may immediately proceed to protect and enforce

its rights under this Agreement and/or Guaranty by:

**a.** Enforcing its rights as a secured creditor under the Uniform Commercial Code including, without limitation, notifying any account debtor(s) of Seller as the term is defined below, of Panthers Capital's security interest;

**b.** Enforcing the provisions of the Personal Guaranty of Performance against the Guarantor(s) without first seeking recourse from Seller;

**c.** Notifying Seller's credit card processor of the sale of Future Purchase Receipts hereunder and to direct such credit card processor to make payment to Panthers Capital of all or any portion of the amounts received by such credit card processor on behalf of Seller;

**d.** Subject to arbitration as provided in Section 50 of this Agreement, commencing a suit in law and/or equity, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Seller's obligations hereunder (including the Personal Guaranty) or any other legal or equitable right or remedy including without limitation Panthers Capital's rights of a secured party under the UCC.

30. **Remedies are not Exclusive.** Subject to arbitration as provided in Section 50 of this Agreement, all rights,powers and remedies of Panthers Capital in connection with this Agreement set forth herein may be exercised at any time after the occurrence of any Event of Default, are cumulative and not exclusive and shall bein addition to any other rights, powers or remedies provided to Panthers Capital by law or equity.

### ADDITIONAL TERMS

31. **Seller Deposit Agreement.** Seller shall execute an agreement with Panthers Capital that shall authorize Panthers Capital to arrange for electronic fund transfer services and/or "ACH" payments of Daily Installments from the Approved Bank Account. Seller shall upon request provide Panthers Capital and/or its authorized agent with all information, authorizations and passwords necessary to verify Seller's receivables, receipts and deposits into the Approved Bank Account. The authorization shall be irrevocable until such time when Seller shall have performed its obligations under this Agreement in full.

32. **Financial Condition.** Seller and its Guarantor(s) authorize Panthers Capital and its agents to investigate their financial status and history and will provide to Panthers Capital any bank or financial statements, tax returns, etc., as Panthers Capital deems reasonably necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable for release of financial information. Seller hereby authorizes Panthers Capital to receive from time to time updates on such informationand financial status.

33. **Transactional History.** Seller shall execute written authorization(s) to its bank(s) to provide Panthers Capital with Seller's banking and/or credit-card processing history.

34. **Indemnification.** Seller and its Guarantor(s) jointly and severally, indemnify and hold harmless to the fullest extent permitted by law Approved Processor, any ACH processor, customer and/or Account Debtors of the Seller, its/their officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by any ACH processor, customer and/or Account Debtors of the Sellerresulting from (a) claims asserted by Panthers Capital for monies owed to Panthers Capital from Seller and (b) actions taken by any ACH processor, customer and/or Account Debtor of the Seller in reliance upon information or instructions provided by Panthers Capital.

35. **No Liability.** In no event shall Panthers Capital be liable for any claims asserted by Seller or its Guarantor under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is hereby knowingly and voluntarily waived by Seller and Guarantor(s).

### MISCELLANEOUS

36. **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

37. **Assignment.** Panthers Capital may assign, transfer or sell its rights or delegate its duties hereunder, either in whole or in part without prior notice to the Seller. Seller shall not assign its rights or obligations under this Agreement without first obtaining Panthers Capital's written consent.

38. **Notices.**

**a.** Panthers Capital may send any notices, disclosures, terms and conditions, other documents, and any future changes to Seller by regular mail or by e-mail, at Panthers Capital's option and Seller consents to such electronic delivery. Notices sent by e-mail are effective when sent. Notices sent by regular mail become effective three days after mailing to Seller's address set forth in this Agreement.

Docusign Envelope ID: 5268E2DB-AAC8-46BC-AEC4-6B2A20EFA633

**b.** Subject to Section 11 of this Agreement, Seller and Guarantor may send any notices to Panthers Capital by e-mail only upon the prior written consent of Panthers Capital, which consent may be withheld or revoked at any time in Panthers Capital's sole discretion.   Otherwise, any notices or other communications from Seller and Guarantor to Panthers Capital must be delivered by certified mail, return receipt requested, to Panthers Capital's address as set forth in this Agreement.  Notices sent to Panthers Capital shall become effective only upon receipt by Panthers Capital.

39. **Waiver Remedies.** No failure on the part of Panthers Capital to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. Subject to arbitration as provided in Section 50 of this Agreement, the remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

40. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

41. **Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of Connecticut, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted exclusively in any court sitting in the State of Connecticut, Fairfield County, (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the partiesto this Agreement irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forums.  Seller and Guarantor(s) hereby agree that the mailing of any summons and complaint, or demand, in any proceeding commenced by Panthers Capital by certified or registered mail, return receipt requested to the mailing address(es) listed on this Agreement, or via email address(es) listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

42. **Service of Process.**

    **IMPORTANT NOTICE -** THIS SERVICE OF PROCESS PROVISION CONTAINS IMPORTANT CONSENTS AND WAIVERS. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

    a. In addition to service of process under the laws of the Acceptable Forums, each Seller and Guarantor agree and consent to receive any court required service of process (including, without limitation, service of process (a) to commence litigation, (b) after litigation has been commenced for any court filings, and (c) for Panthers Capital obtaining a Prejudgment Remedy), through the following methods and manners (collectively "Acceptable Methods"):

        1. Mail when sent by certified or registered mail, return receipt requested, Federal Express, or other overnight courier, addressed to the respective mailing addresses of each Seller and Guarantor, as contained in this Agreement, or in Panthers Capital's records, or any other mailing address provided to Panthers Capital in writing; and

        2. Electronic mail (e-mail) when sent to the respective e-mail addresses of each Seller and Guarantor, as contained in this Agreement, or in Panthers Capital's records, or any other e-mail address provided to Panthers Capital in writing.

    b. Each Seller and Guarantor make, agree and consent to the following representations and waivers:

        1. Each Seller and Guarantor agrees that service of process made through either or both of the Acceptable Methods will constitute valid and lawful service of process on them without the necessity for service of process by other means (e.g., as provided for by statute or rules of court), but without invalidating service of process performed in accordance with such other provisions;

        2. Each Seller and Guarantor agrees and consents that service of process is deemed effective according to the following:

            i. If sent by certified or registered, mail return receipt requested, Federal Express, or other overnight courier, at the earlier of: (a) four calendar days after mailing, (b) when delivered, or (c) when actually received; and

            ii. If sent by e-mail, on the same day and time that the e-mail is sent;

        3. Each Seller and Guarantor represents that their respective mailing and e-mail addresses as contained in this Agreement, and/or as provided to Panthers Capital in writing, are correct and valid, they regularly receive and send correspondence from these addresses, and service sent to these addresses is expected

to be received by them;

4. Each Seller and Guarantor agrees and consents that Panthers Capital may serve process on them directly, including for the Acceptable Methods, without the necessity of having service completed by a marshal or indifferent person, but without invalidating service of process completed by a marshal or indifferent person, and each Seller and Guarantor waives any objection if Panthers Capital serves process directly on them; and

5. EACH SELLER AND GUARANTOR WAIVES ANY OBJECTION TO INSUFFICIENCY OF PROCESS, INSUFFICIENCY OF SERVICE OF PROCESS, OR PERSONAL JURISDICTION, WHETHER RAISED IN A MOTION TO DISMISS, OR OTHER SIMILAR MOTION, IF SERVICE IS CONDUCTED BY ANY METHOD OR MANNER CONTAINED IN THIS SERVICE OF PROCESS PROVISION OR ANY OTHER METHOD ALLOWED UNDER THE LAWS OF THE ACCEPTABLE FORUMS.

43. <u>PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT IS $250,000 OR LESS.</u>

<u>IMPORTANT NOTICE</u> - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

a. EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1. THIS AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

2. WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PANTHERS CAPITAL OBTAINING ANY PREJUDGMENT REMEDY <u>AFTER, BUT NOT UPON,</u> COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

3. WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PANTHERS CAPITAL TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PANTHERS CAPITAL'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) IS $250,000 OR LESS, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 APPLY TO THIS AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PANTHERS CAPITAL MAY ONLY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER, <u>AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION</u> AGAINST ANY ONE OF THE UNDERSIGNED.

c. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PANTHERS CAPITAL MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

d. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH 42, INCLUDING FOR PANTHERS CAPITAL OBTAINING ANY PREJUDGMENT REMEDY.

44. <u>PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT EXCEEDS $250,000.</u>

<u>IMPORTANT NOTICE -</u> THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

a. EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1. THIS AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

2. WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PANTHERS CAPITAL OBTAINING ANY PREJUDGMENT REMEDY <u>UPON OR AFTER</u> COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

3. WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PANTHERS CAPITAL TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PANTHERS CAPITAL MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

c. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PANTHERS CAPITAL'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) EXCEEDS $250,000, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 DO NOT APPLY TO THIS AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PANTHERS CAPITAL MAY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER <u>UPON OR AFTER COMMENCING ANY LITIGATION</u> AGAINST ANY ONE OF THE UNDERSIGNED.

d. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH 42, INCLUDING FOR PANTHERS CAPITAL OBTAINING ANY PREJUDGMENT REMEDY.

45. <u>Survival of Representation, etc.</u> All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have expired.

46. <u>Severability.</u>  In case any of the provisions in this Agreement are found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired. Any provision of this Agreement that may be found by a court having jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

47. <u>Entire Agreement.</u>  This Agreement embodies the entire agreement between Seller and Panthers Capital and supersedes all prior agreements and understandings relating to the subject matter hereof. The Exhibit(s) and Riders to this Agreement are part of this Agreement.

48. <u>JURY TRIAL WAIVER</u>. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. EACH PARTY HERETO ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION AND DISCUSSIONS OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.

49. <u>CLASS ACTION WAIVER.</u>  EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR IS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATEDWITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT TO THE CONTRARY); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECUREDTHROUGH THE CLASS OR REPRESENTATIVE ACTION.

50. <u>ARBITRATION.</u>  Notwithstanding any other provision of this Agreement, ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR INVALIDITY THEREOF, MAY BE SETTLED BY ARBITRATION ADMINISTERED BY MEDIATION AND CIVIL ARBITRATION, INC. D/B/A RAPIDRULING (WWW.RAPIDRULING.COM) in accordance with its Commercial Arbitration Rules effective at the time a claim is made, and JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. Arbitrators may be appointed by RapidRuling. The place of

arbitration may be in Connecticut, and any hearing may be held via video or telephone conference. The parties agree that no objection may be taken to the decision, order or award of the tribunal following any such hearing on the basis that the hearing was held by video or telephone conference. SELLER AND ANY GUARANTOR CONSENT TO ELECTRONIC SERVICE OF PROCESS, WITH SERVICE TO BE MADE TO THE EMAIL ADDRESS(ES) PROVIDED IN THIS AGREEMENT. All such service of process may come from the opposing party's email listed here, efile@rapidruling.com, or efile@mcarbitration.org. The parties shall list all said email addresses as "SAFE SENDERS" (or other whitelist) and are responsible to check their "SPAM" and "JUNK" type incoming messages on a daily basis.   Panthers Capital, SELLER AND ANY GUARANTOR agree that arbitration and arbitrator fees may be equally paid by the parties, and the commencing party may be entitled to any unreimbursed fees or expenses paid on behalf of the non-commencing party within any award. Panthers Capital, SELLER AND ANY GUARANTOR further agree that, in the event of confirmation, domestication and/or enforcement, the delinquent party may be responsible for any attorney's fees, court or other fees associated with such actions. Panthers Capital, SELLER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, Panthers Capital, SELLER AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION DEALING WITH THE PROHIBITION ON CONSOLIDATED, CLASS OR AGGREGATED CLAIMS IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE MAY BE NULL AND VOID. THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGULATING THE ARBITRATION OF DISPUTES. THIS AGREEMENT IS FINAL AND BINDING EXCEPT TO THE EXTENT THAT AN APPEAL MAY BE MADE UNDER THE FAA. THE TERMS "DISPUTES" AND "CLAIMS" SHALL HAVE THE BROADEST POSSIBLE MEANING.

51.   <u>**RIGHT TO OPT OUT OF ARBITRATION. SELLER AND GUARANTOR(S) MAY OPT OUT OF THE ARBITRATION PROVISION ABOVE. TO OPT OUT OF THE ARBITRATION PROVISION, SELLER AND EACH GUARANTOR MUST SEND Panthers Capital A NOTICE THAT THE SELLER AND EACH GUARANTOR DOES NOT WANT THE CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, SELLER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT: Panthers Capital – ARBITRATION OPT OUT, 9 W Broad St #320, Stamford, CT 06902, ATTENTION: Arbitration Opt-Out.**</u>

52.   <u>**Counterparts and Facsimile Signatures.**</u> This Agreement can be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together, shall constitute one and the same agreement. Signatures delivered via facsimile and/or via Portable Digital Format (PDF) shall be deemed acceptable for all purposes, including without limitation the evidentially purposes.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first above written.

**FOR SELLER #1**

By: _____

**Name:** CHARITHA I  SAMARASINGHE

**Title:** Owner

**EIN** ████████

**FOR SELLER #2**

By: _____

**Name:**

**Title:** Owner

**EIN:** _____

**AGREE TO BE BOUND BY THE PROVISIONS OF THIS AGREEMENT APPLICABLE TO AND CONCERNING GUARANTOR.**

**OWNER/GUARANTOR # 1**

By: _____

**Name:** CHARITHA I  SAMARASINGHE

**SSN** ████████

**OWNER/GUARANTOR # 2**

By: _____

**Name:**

**SSN:**

**Panthers Capital LLC**

By: _____

# PERSONAL GUARANTY OF PERFORMANCE

This Personal Guaranty of Performance (this "Guaranty") is being executed and delivered by each undersigned ("Guarantor") in favor of Panthers Capital LLC, and its subsidiaries, affiliates, agents, and assigns (collectively, "Buyer"), in connection with that certain Future Receivables Sale and Purchase Agreement (the "Agreement"), dated effective as of [ __6/4/2025__ ] by and between Buyer and [CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OTHE] ("Seller"), a business entity that desires to sell certain of its Future Receipts to Buyer pursuant to the Agreement. Capitalized terms used herein have the meanings provided in the Agreement. Each Guarantor is a shareholder, member, partner or other principal owner of Seller or is an affiliate of seller that is owned and controlled by a shareholder, member, partner or other principal owner of Seller. Each Guarantor executes and delivers this Guaranty to induce Buyer to enter into the Agreement and purchase Seller's Future Receipts. Accordingly, each Guarantor acknowledges and agrees that Guarantor will receive substantial benefits from providing this Guaranty.

**SELLER # 1:**                                                    **SELLER # 2:**

**Legal Business Name** CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OTI **Legal Business Name** _____

**D/B/A:** E TROPICAL FISH _____        **D/B/A:** _____

NOW, THEREFORE, as an inducement for Buyer to enter into the Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, each Guarantor does hereby agree as follows:

**1. Defined Terms.** All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

**2. Guaranty of Obligations.** Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Buyer prompt, full, faithful and complete performance and observance of all of Seller's obligations under the Agreement (the "Obligations"); and Guarantor unconditionally covenants to Buyer that if default or breach shall at any time be made by Seller in the Obligations, Guarantor shall well and truly perform (or cause to be performed) the Obligations and pay all damages and other amounts stipulated in the Agreement with respect to the non-performance of the Obligations, or any of them.

**3. Guarantor's Additional Covenants.** The liability of Guarantor hereunder shall not be impaired, abated, deferred, diminished, modified, released, terminated or discharged, in whole or in part, or otherwise affected, by any event, condition, occurrence, circumstance, proceeding, action or failure to act, with or without notice to, or the knowledge or consent of, Guarantor, including, without limitation:

a.  any amendment, modification or extension of the Agreement or any Obligation;

b.  any extension of time for performance, whether in whole or in part, of any Obligation given prior to or after default thereunder;

c.  any exchange, surrender or release, in whole or in part, of any security that may be held by Buyer at any time under the Agreement;

d.  any other guaranty now or hereafter executed by Guarantor or anyone else;

e.  any waiver of or assertion or enforcement or failure or refusal to assert or enforce, in whole or in part, any Obligation, claim, cause of action, right or remedy which Buyer may, at any time, have under the Agreement or with respect to any guaranty or any security which may be held by Buyer at any time for or under the Agreement or with respect to the Seller;

f.  any act or omission or delay to do any act by Buyer which may in any manner or to any extent vary the risk of Guarantor or which would otherwise operate as a discharge of Guarantor as a matter of law;

g.  the release of any other guarantor from liability for the performance or observance of any Obligation, whether by operation of law or otherwise;

h.  the failure to give Guarantor any notice whatsoever;

i.  any right, power or privilege that Buyer may now or hereafter have against any person, entity or collateral.

**4. Guarantor's Other Agreements.** Guarantor will not voluntarily dispose, convey, sell or otherwise transfer, or cause Seller to dispose, convey, sell or otherwise transfer, any material business assets of Seller outside of the ordinary course of Seller's business without the prior written consent of Buyer, which consent may be withheld for any reason, until receipt of the entire Purchased Amount. Guarantor shall pay to Buyer upon demand all expenses (including, without limitation, reasonable attorneys' fees and disbursements) of, or incidental to, or relating to the enforcement or protection of Buyer's rights hereunder or Buyer's rights under the Agreement. This Guaranty is binding upon Guarantor and Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of and may be enforced by the successors and assigns of Buyer. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Seller and Buyer, or the existence of any defense, setoff or counterclaim, which Seller may assert. Buyer is hereby authorized, without notice or demand and without affecting the liability of Guarantor hereunder, to at any time renew or extend Seller's obligations under the Agreement or otherwise modify, amend or change the terms of the Agreement.

**5. Waiver; Remedies.** No failure on the part of Buyer to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise of any other right. Subject to arbitration as provided in Section 13 of this Guaranty, the remedies provided in this Guaranty are cumulative and not exclusive of anyremedies provided by law or equity. In the event that Seller fails to perform any obligation under the Agreement, Buyer mayenforce its rights under this Guaranty without first seeking to obtain performance for such default from Seller or any other guarantor.

**6. Acknowledgment of Purchase.** Guarantor acknowledges and agrees that the Purchase Price paid by Buyer to Seller in exchange for the Purchased Amount of Future Receipts is a payment for an adequate consideration and is not intended to be treated as a loan or financial accommodation from Buyer to Seller. Guarantor specifically acknowledges that Buyer is not a lender, bank or credit card processor, and that Buyer has not offered any loans to Seller, and Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. Guarantor acknowledges that the Purchase Price paid to Seller is good and valuable consideration for the sale of the Purchased Amount.

**7. Governing Law and Jurisdiction.** This Guaranty shall be governed by and construed exclusively in accordance with the laws of the State of Connecticut, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Guaranty shall be instituted exclusively in any court sitting in the State of Connecticut, Fairfield County, (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Guaranty irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forums. Seller and Guarantor(s) hereby agree that the mailing of any summons and complaint, or demand, in any proceeding commenced by Panthers Capital by certified or registered mail, return receipt requested to the mailing address(es) listed on the Agreement, or via email address(es) listed on the Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

**8. Service of Process.**

**IMPORTANT NOTICE** - THIS SERVICE OF PROCESS PROVISION CONTAINS IMPORTANT CONSENTS AND WAIVERS. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

a. In addition to service of process under the laws of the Acceptable Forums, each Seller and Guarantor agree and consent to receive any court required service of process (including, without limitation, service of process (a) to commence litigation, (b) after litigation has been commenced for any court filings, and (c) for Panthers Capital obtaining a Prejudgment Remedy), through the following methods and manners (collectively "Acceptable Methods"):

1. Mail when sent by certified or registered mail, return receipt requested, Federal Express, or other overnight courier, addressed to the respective mailing addresses of each Seller and Guarantor, as contained in the Agreement, or in Panthers Capital's records, or any other mailing address provided to Panthers Capital in writing; and

2. Electronic mail (e-mail) when sent to the respective e-mail addresses of each Seller and Guarantor, as contained in the Agreement, or in Panthers Capital's records, or any other e-mail address provided to Panthers Capital in writing.

b. Each Seller and Guarantor make, agree and consent to the following representations and waivers:

1. Each Seller and Guarantor agrees that service of process made through either or both of the Acceptable Methods will constitute valid and lawful service of process on them without the necessity for service of process by other means (e.g., as provided for by statute or rules of court), but without invalidating service of process performed in accordance with such other provisions;

2. Each Seller and Guarantor agrees and consents that service of process is deemed effective according to the following:

   i.        If sent by certified or registered, mail return receipt requested, Federal Express, or other overnight courier, at

the earlier of: (a) four calendar days after mailing, (b) when delivered, or (c) when actually received; and

    ii.     If sent by e-mail, on the same day and time that the e-mail is sent;

    3.  Each Seller and Guarantor represents that their respective mailing and e-mail addresses as contained in the Agreement, and/or as provided to Panthers Capital in writing, are correct and valid, they regularly receive and send correspondence from these addresses, and service sent to these addresses is expected to be received by them;

    4.  Each Seller and Guarantor agrees and consents that Panthers Capital may serve process on them directly, including for the Acceptable Methods, without the necessity of having service completed by a marshal or indifferent person, but without invalidating service of process completed by a marshal or indifferent person, and each Seller and Guarantor waives any objection if Panthers Capital serves process directly on them; and

    5.  EACH SELLER AND GUARANTOR WAIVES ANY OBJECTION TO INSUFFICIENCY OF PROCESS, INSUFFICIENCY OF SERVICE OF PROCESS, OR PERSONAL JURISDICTION, WHETHER RAISED IN A MOTION TO DISMISS, OR OTHER SIMILAR MOTION, IF SERVICE IS CONDUCTED BY ANY METHOD OR MANNER CONTAINED IN THIS SERVICE OF PROCESS PROVISION OR ANY OTHER METHOD ALLOWED UNDER THE LAWS OF THE ACCEPTABLE FORUMS.

 9. **PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT IS $250,000 OR LESS.**

<u>IMPORTANT NOTICE</u> - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

    a.  EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

    1.     THE AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

    2.     WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PANTHERS CAPITAL OBTAINING ANY PREJUDGMENT REMEDY <u>AFTER, BUT NOT UPON</u>, COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

    3.     WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE BUYER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

    b.  EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PANTHERS CAPITAL'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) IS $250,000 OR LESS, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 APPLY TO THE AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PANTHERS CAPITAL MAY ONLY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER, <u>AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION</u> AGAINST ANY ONE OF THE UNDERSIGNED.

    c.  EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PANTHERS CAPITAL MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

    d.  EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH 8, INCLUDING FOR PANTHERS CAPITAL OBTAINING ANY PREJUDGMENT REMEDY.

**10. <u>PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT EXCEEDS $250,000.</u>**

<u>IMPORTANT NOTICE</u> - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

    a.  EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

    1.     THE AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

    2.     WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PANTHERS CAPITAL OBTAINING ANY PREJUDGMENT REMEDY <u>UPON OR AFTER</u> COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

**3.** WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE BUYER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

**b.** EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PANTHERS CAPITAL MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

**c.** EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PANTHERS CAPITAL'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) EXCEEDS $250,000, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 DO NOT APPLY TO THE AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PANTHERS CAPITAL MAY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER <u>UPON OR AFTER COMMENCING ANY LITIGATION</u> AGAINST ANY ONE OF THE UNDERSIGNED.

**d.** EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH 8, INCLUDING FOR BUYER OBTAINING ANY PREJUDGMENT REMEDY.

**11. JURY WAIVER.** THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION ORPROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS GUARANTY IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**12. CLASS ACTION WAIVER.** THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS GUARANTY); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OROTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**13. ARBITRATION.** Notwithstanding any other provision of this Guaranty, ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THE AGREEMENT, THE SECURITY AGREEMENT AND/OR THE GUARANTY(S), OR THE BREACH, TERMINATION OR INVALIDITY THEREOF, SHALL BE SETTLED BY ARBITRATION ADMINISTERED BY MEDIATION AND CIVIL ARBITRATION, INC. D/B/A RAPIDRULING (WWW.RAPIDRULING.COM) in accordance with its Commercial Arbitration Rules effective at the time a claim is made, and JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED, CONFIRMED AND ENFORCED IN ANY COURT HAVING JURISDICTION THEREOF. Arbitrators shall be appointed by RapidRuling. The place of arbitration shall be in Connecticut and any hearing shall be held via video or telephone conference. The parties agree that no objection shall be taken to the decision, order or award of the tribunal following any such hearing on the basis that the hearing was held by video or telephone conference. SELLER AND ANY GUARANTOR CONSENT TO ELECTRONIC SERVICE OF PROCESS, WITH SERVICE TO BE MADE TO THE EMAIL ADDRESS(ES) PROVIDED IN THE AGREEMENT. All such service of process may come from the opposing party's email listed here, efile@rapidruling.com, or efile@mcarbitration.org. The parties shall list all said email addresses as "safe senders" (or other whitelist) and are responsible to check their "SPAM" and "JUNK" type incoming messages on a daily basis. BUYER, SELLER AND ANY GUARANTOR agree that arbitration and arbitrator fees shall be equally paid by the parties, and the commencing party shall be entitled to any unreimbursed fees or expenses paid on behalf of the non-commencing party within any award. BUYER, SELLER AND ANY GUARANTOR further agree that, in the event of confirmation, domestication and/or enforcement, the delinquent party shall be responsible for any attorney's fees, court or other fees associated with such actions. BUYER, SELLER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ORREPRESENTATIVE PROCEEDING. FURTHER, BUYER, SELLER AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION DEALING WITH THE PROHIBITION ON CONSOLIDATED, CLASS OR AGGREGATED CLAIMS IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID. THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGULATING THE ARBITRATION OF DISPUTES. THIS AGREEMENT IS FINAL AND BINDING EXCEPT TO THE EXTENT THAT AN APPEAL MAY BE MADE UNDER THE FAA. THE TERMS "DISPUTES" AND "CLAIMS" SHALL HAVE THE BROADEST POSSIBLE MEANING.

**14. RIGHT TO OPT OUT OF ARBITRATION. SELLER AND GUARANTOR(S) MAY OPT OUT OF THE ARBITRATION PROVISION ABOVE. TO OPT OUT OF THE ARBITRATION PROVISION, SELLER AND EACH GUARANTOR MUST SEND BUYER A NOTICE THAT THE SELLER AND EACH GUARANTOR DOES NOT WANT THE CLAUSE TO APPLY TO THIS GUARANTY. FOR ANY OPT OUT TO BE EFFECTIVE, SELLER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS GUARANTY: PANTHERS CAPITAL. – ARBITRATION OPT OUT, 9 W Broad St #320, Stamford, CT 06902 ATTENTION: <u>Arbitration Opt-Out</u>.**

**15. Severability.** If for any reason any court of competent jurisdiction finds any provisions of this Guaranty to be void or voidable, the parties agree that the court may reform such provision(s) to render the provision(s) enforceable ensuring that the restrictions and prohibitions contained in this Guaranty shall be effective to the fullest extent allowed under applicable law.

**16. Opportunity for Attorney Review.** The Guarantor represents that he/she has carefully read this Guaranty and has had a reasonable opportunity to, - and to the extent he or she wishes did, - consult with his or her attorney. Guarantor understands the contents of this Guaranty, and signs this Guaranty as his or her free act and deed.

**17. Counterparts and Facsimile Signatures.** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement. Facsimile or scanned documents shall have the same legal force and effect as an original and shall be treated as an original documentfor evidentiary purposes.

**AGREED AND ACCEPTED:**

| OWNER/GUARANTOR #1 | OWNER/GUARANTOR #2 |
|---|---|
| Signed by: | |
| By: _____ | By: _____ |
| 086ED1260399401... | |
| **Name:** CHARITHA I  SAMARASINGHE | **Name:** |
| **SSN** ▓▓▓▓▓▓ | **SSN:** |

**Panthers Capital LLC**

**By:** _____

**RIDER 3**

**TO THE** ___6/4/2025___

**FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT ("Agreement")**

**Between Panthers Capital LLC ("BUYER")**

**and** <u>CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OTHER ENTITIES L</u> **("Seller")**

### APPLICABLE FEES

1. **Possible Conflicts**. If there is any conflict or inconsistency between any of the provisions of this Rider and any of the provisions of the Future Receivables Sale and Purchase Agreement (the "Agreement") to which this Rider is attached, all such conflicts and inconsistencies shall be resolved in favor of the provisions of this Rider.

2. **Definitions.** All capitalized terms used in this Rider shall have the meaning set forth in the Agreement unless otherwise indicated here in.

3. __C. I. S.__    **Applicable Fees.** The parties agree that the Applicable Fees which Seller shall pay to Buyer, pursuant to Section 17 of the Agreement shall be as follows:

    A. **Monthly Fee:** ___$299___ (charged monthly to cover expense of ACH processing program).

    B. **UCC Fee:** ___$200___ (part of filing UCC financing statements and their terminations).

    C. **Wire Fee** ___$50___ (deducted from the Purchase Price to cover cost of remitting the Purchase Price).

    D. **NSF Fee:** ___$10___ (to cover expense of an NSF – if this occurs twice in a row, the third occurrence constitutes a default under the Agreement).

    E. **ACH Rejection Fee:** ___$25___ for each rejected ACH debit.

    F. **Bank Change Fee:** ___$25___

    G. **Blocked Account Fee:** ___$100___

    H. **UCC Release Fee:** ___$200___

    I. **Additional Broker Fee:** _____

    J. **Stacking Fee:** ___$5,000___ **(in the event Seller takes additional capital without written consent of Buyer).**

    K. **Default Fee:** ___$10,000___

    L. **Cancellation of contract:** ___$0___

4. **Authorization.** Seller hereby authorizes Buyer to apply a portion of the Purchase Price due to Seller pursuant to the Agreement toward satisfaction of Seller's obligation to pay the Applicable Fees pursuant to the Agreement by deducting the amount of the Applicable Fees from the Purchase Price prior to delivery to Seller.

5. **No Reduction of Purchase Price.** Seller hereby agrees that deduction of the Applicable Fees from the Purchase Price shall not be deemed a reduction of the Purchase Price.

**Seller and Buyer agree that this Rider shall be attached to the Agreement and shall be made a part thereof.**

**FOR THE SELLER**                                           **FOR THE BUYER**

By: _____                    By: _____

**Name:** CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OTHER ENTITIES   **Name:** Panthers Capital

## RIDER 2

**TO THE** ___6/4/2025___

### FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT

("Agreement")

**Between Panthers Capital LLC ("Buyer")**

**and** CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND **("Seller")**

### PRIOR BALANCE

1. **Possible Conflicts**. If there is any conflict or inconsistency between any of the provisions of this Rider and any of the provisions of the Future Receivables Sale and Purchase Agreement (the "Agreement") to which this Rider is attached, all such conflicts and inconsistencies shall be resolved in favor of the provisions of this Rider.

2. **Definitions.** All capitalized terms used in this Rider shall have the meaning set forth in the Agreement unless otherwise indicated here in.

3. **Prior Balance.** Seller represents and warrants that the following list of its creditors and the amounts that Seller owes its creditors as of the Effective Date of the Agreement is true, correct and complete:

**TOTAL PRIOR BALANCE:** $ 1,020,319.00    **owed to:** Panthers Capital

4. **Authorization.** Seller hereby authorizes Buyer to apply a portion of the Purchase Price due to Seller pursuant to the Agreement toward satisfaction of Seller's obligation to pay the Prior Balance pursuant to Section 19 of the Agreement by deducting the amount of the Prior Balance from the Purchase Price prior to delivering it to Seller, and to forward the specific amounts owed by Seller to Buyer and/or the creditors listed in this Rider.

5. **No Reduction of Purchase Price.** Seller hereby agrees that deduction of the Prior Balance from the Purchase Price shall not be deemed to reduce the Purchase Price.

6. **Indemnification.** Seller hereby indemnifies and holds harmless Buyer for any and all damages and losses (including without limitation legal fees and expenses) incurred by Buyer as the result of the information set forth in this Rider being untrue or incorrect or incomplete.

**Seller and Buyer agree that this Rider shall be attached to the Agreement and shall be madea part thereof.**

**AGREED AND ACCEPTED:**

| **OWNER/GUARANTOR #1** | **OWNER/GUARANTOR #2** |
|---|---|
| By: _Signed by:_ (signature) 086ED1260399401... | By: _____ |
| **Name:** CHARITHA I SAMARASINGHE | **Name:** |

**Panthers Capital LLC**

**By:** _____

## RIDER 1

### TO THE ___6/4/2025___

### FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT

("Agreement")

### Between Panthers Capital LLC ("Buyer")

### and CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OTHER ENTITIES ("Seller")

## ORIGINATION FEE

1. **Possible Conflicts.** If there is any conflict or inconsistency between any of the provisions of this Rider and any of the provisions of the Future Receivables Sale and Purchase Agreement (the "Agreement") to which this Rider is attached, all such conflicts and inconsistencies shall be resolved in favor of the provisions of this Rider.

2. **Definitions.** All capitalized terms used in this Rider shall have the meaning set forth in the Agreement unless otherwise indicated.

3. **Origination Fee.** The parties agree that the Origination Fee that Seller shall pay to Buyer pursuant to Section 20 of the Agreement shall be:

   ___$ 250.00___

4. **Authorization.** Seller hereby authorizes Buyer to apply a portion of the Purchase Price due to Seller pursuant to the Agreement toward satisfaction of Seller's obligation to pay the Origination Fee pursuant to Section 20 of theAgreement by deducting the amount of the Origination Fee from the Purchase Price prior to delivering it to Seller.

5. **No Reduction of Purchase Amount.** Seller hereby agrees that deduction of the Origination Fee from the Purchase Price shall not be deemed to reduce the Purchased Amount.

**Seller and Buyer agree that this Rider shall be attached to the Agreement and shall be madea part thereof.**

**AGREED AND ACCEPTED:**

| **OWNER/GUARANTOR #1** | **OWNER/GUARANTOR #2** |
|---|---|
| By: _____ | By: _____ |
| **Name:** CHARITHA I  SAMARASINGHE | **Name:** |

**Panthers Capital LLC**

**By:** _____

## EARLY DELIVERY ADDENDUM

### TO THE ___6/4/2025___

### FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT

("Agreement")

### Between Panthers Capital LLC ("Buyer")

**and** CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OTHER ENTITIES **("Seller")**


### EARLY DELIVERY OPTION


1. **Qualification.** As long as no Event of Default has taken place during the term of the Agreement, Seller may opt-in to obtain a discounted Purchased Amount.


2. **Thirty (30) Day Option.** If paid in full within 30 calendar days, payback will be at a discounted rate of ___1.1___.


3. **Sixty (60) Day Option.** If paid in full within 60 calendar days, payback will be at a discounted rate of ___1.15___.


4. **Ninety (90) Day Option.** If paid in full within 90 calendar days, payback will be at a discounted rate of _____.


5. **One hundred twenty (120) Day.** If paid in full within 120 calendar days, payback will be at a discounted rate of _____.


Seller and Buyer agree that this Addendum shall be attached to the Agreement and shall be madea part thereof.


**AGREED AND ACCEPTED:**

**OWNER/GUARANTOR #1**                                    **OWNER/GUARANTOR #2**

By: _____          By: _____
086ED1260399401...

**Name:** CHARITHA I  SAMARASINGHE          **Name:** _____


**Panthers Capital LLC**


By: _____

Docusign Envelope ID: 5268E2DB-AAC8-46BC-AEC4-6B2A20EFA633



**PANTHERS CAPITAL**

**List of top 5 clients – Please list the top 5 clients that you are currently providing services for / have provided services for in the past 30 days.**

Business Name: ███████

Contact Name: ███████

Phone Number: _____

Does the client owe you money? Yes __✔__ If so, Amount: $ 1,800,000.00 _____


Business Name: ███████ _____

Contact Name: _____

Phone Number: _____

Does the client owe you money? Yes __✔__ If so, Amount: $ 50,000.00 _____


Business Name: _____

Contact Name: _____

Phone Number: _____

Does the client owe you money? Yes _____ If so, Amount: $_____


Business Name: _____

Contact Name: _____

Phone Number: _____

Does the client owe you money? Yes _____ If so, Amount: $_____


Business Name: _____

Contact Name: _____

Phone Number: _____

Does the client owe you money? Yes _____ If so, Amount: $_____


Signature here: _____

Signed by: _____ 086ED1260399401...

# OFFER SUMMARY - Sales-Based Financing

| | | |
|---|---|---|
| Funding Provided | $ 1,020,569.00 | This is how much funding Panthers Capital _____ will provide. Due to deductions or payments to others, the total funds that will be provided to you directly is _____ $ 0.00 _____ . For more information on what amounts will be deducted, please review the attached document "Itemization of Amount Financed." The amount paid directly to Merchant may change where the required disbursements to satisfy Merchant's other obligations change. |
| Estimated Annual Percentage Rate (APR) | % 114.00 | APR is the estimated cost of your financing expressed as a yearly rate. APR incorporates the amount and timing of the funding you receive, fees you pay, and the periodic payments you make. This calculation assumes your estimated average monthly income through revenue of CIS INTERNATIONAL HOLDINGS (N.A.) CORP will be ___ $ 1,500,000.00 ___ . Since your actual income may vary from our estimate, your effective APR may also vary. APR is not an interest rate. The cost of this financing is based upon fees charged by Panthers Capital _____ rather than interest that accrues over time. |
| Finance Charge | $ 479,667.00 | This is the dollar cost of your financing. Your finance charge will not increase if you take longer to pay off what you owe. |
| Estimated Total Payment Amount | $ 1,500,236.00 | This is the total dollar amount of payments we estimate you will make under the contract. |
| Estimated Monthly Cost | $ 210,042.00 | Although you do not make payments on a monthly basis, this is Panthers Capital _____ 's calculation of your average monthly cost based upon the payment amounts disclosed below. |
| Estimated Payment | _____ $ 10,002.00 _____ / _____ Daily _____ Panthers Capital _____ | is not aware of any reasonably anticipated true-ups. |
| Payment Terms | _____ Daily _____ ACH withdrawals of the Estimated Payment described above will be made from the bank account you provided to us for this purpose. The Estimated Payment is based on our estimate of _____ Daily _____ of your ( CIS INTERNATIONAL HOLDINGS (N.A.) CORP 's) daily revenue, based upon your average monthly revenue income of ___ $ 1,500,000.00 ___ for the last four months. You have the right to receive refunds of all or part of your payments if you demonstrate that your payments have exceeded _____ Daily _____ of your | |

Docusign Envelope ID: 5258E2DB-AA68-46BC-AEC4-6B2A20E5A633

| | | total income during any given month. For more details on your rights, see section 10. Seller's Right of Reconciliation and 11. Request for Reconciliation Procedure of your revenue purchase agreement. |
|---|---|---|
| Estimated Term | __150__ days | This is our estimate of how long it will take to collect amounts due to Panthers Capital under the revenue purchase agreement based upon the assumption that you will receive __$ 1,500,000.00__ in monthly income through your revenue stream. |
| Prepayment | | If you pay off the financing faster than required, you still must pay all or a portion of the finance charge, up to ____$ 479,667.00____ based upon our estimates. |
| | | If you pay off the financing faster than required, you will not be required to pay additional fees. |

Applicable law requires this information to be provided to you to help you make an informed decision. By signing below, you are confirming that you received this information.

_____            _____
Recipient Signature                                        Recipient Signature


_____            _____
Date                                                              Date


- By checking this box, you are confirming that you have read and understand the Offer Summary provided to you.

# EXHIBIT A
## <u>CROSS COLLATERAL ADDENDUM</u>

This addendum shall serve to modify the Agreement of Sale o**f Future Receivables ("Merchant Agreement")** which was entered into between _____Panthers Capital_____ (hereafter **"Purchaser")** and ___CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OT__ (Hereafter the **"Merchants" or "Affiliates") Dated:** ___6/4/2025___

**Whereas**, the Merchants have individually entered into a Merchant Agreement with Purchaser to sell a portion of their future receivables at a discount;

**Whereas**, the Merchants are affiliated and hereby pledge to assume any and all liability of the other owned entities in the event that one fails to perform or defaults under the terms and conditions the Merchant Agreement.  Affiliated entity or collateral is as follows:

1.  CIS INTERNATIONAL HOLDINGS (N.A.) CORP          CHARITHA I SAMARSINGHE

2.  CIS INTERNATIONAL DISTRIBUTOR          CHARITHA I SAMARSINGHE

3.  SIAM TROPICAL FISH LTD          CHARITHA I SAMARSINGHE

4.  TROPICAL FISH INTERNATIONAL EUROPE          CHARITHA I SAMARSINGHE

5.  TROPICAL AQUARIUM FISH (FIJI) LTD          CHARITHA I SAMARSINGHE

6.  LIVE AQUARIA HOLDINGS CORP          CHARITHA I. SAMARASINGHE

7.  T3 AQUATICS          CHARITHA I. SAMARASINGHE

8.  LIONSROCK INVESTMENTS LLC          CHARITHA I. SAMARASINGHE

9.  LIONSROCK WISCONSIN LLC          CHARITHA I. SAMARASINGHE

10. _____

11. _____

12. _____

13. _____

14. _____

15. _____

16. _____

17. _____

18. _____

19. _____

20. _____

**("Corporate Guarantor(s)")**

Docusign Envelope ID: 5258E2DB-AA68-46BC-AEC4-6B2A20E5A633

Additionally, the Merchants and Affiliates individually hereby grant cross collateral to each other and all the affiliated entities included in this addendum.

Merchants and Corporate Guarantor(s) hereby grant Purchaser a security interest in, and authorizes Purchaser **to file a UCC financing statement covering, all of Merchants and Corporate Guarantor(s)' present and future** accounts, chattel paper, deposit accounts, personal property, assets and fixtures, general intangibles, instruments, equipment, inventory wherever located, and proceeds now or hereafter owned or acquired by Merchant and Corporate Guarantor(s).

This addendum does not alter the terms and conditions of the original Merchant Agreement and that all terms remain in full force and effect.

By executing this addendum, the undersigned represent that it has authority to enter into this agreement on behalf of the above-named Corporate Guarantors.

**Agreed & Accepted:**

**For:** CIS INTERNATIONAL HOLDINGS (N.A.) CORP AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A"
**(as member, manager, or authorized agent of Corporate Guarantor(s))**

Signed by:

_____    6/4/2025        _____

086ED1260399401...

Name: CHARITHA I SAMARASINGHE          Name: _____

Title: OWNER                              Title: _____

Docusign Envelope ID: 5258E2DB-AA68-46BC-AEC4-6B2A20E5A633

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| 1. Amount Given Directly to You | **$ 1,020,569.00** |
| 2. Amount Paid on your Account with Us | $ 1,020,319.00 |
| 3. Disbursement paid to a third-party on your behalf to _____ | |
| 4. Amount Provided to You or on Your Behalf (Sum of Items 1-3) | $ 2,040,888.00 |
| 5. Prepaid Finance Charge: Brokerage Fee | |
| 6. Prepaid Finance Charge: Origination Fee | **$ 250.00** |
| 7. Amount Financed (Item 4 minus Items 5 and 6) | **$ 2,040,638.00** |

# EXHIBIT B



# State of Connecticut Judicial Branch
# Superior Court Case Look-up



Superior Court Case Look-up
  Civil/Family
  Housing
  Small Claims

Attorney/Firm Juris Number Look-up

Case Look-up
  By Party Name
  By Docket Number
  By Attorney/Firm Juris Number
  By Property Address

Short Calendar Look-up
  By Court Location
  By Attorney/Firm Juris Number
  Motion to Seal or Close
  Calendar Notices

Court Events Look-up
  By Date
  By Docket Number
  By Attorney/Firm Juris Number

Legal Notices

Pending Foreclosure Sales

Understanding
Display of Case Information

Contact Us

**Comments**

 FST-CV25-6075223-S

**Prefix/Suffix:** [none]

**PANTHERS CAPITAL LLC v. CIS INTERNATIONAL HOLDINGS (N.A.) CORP. D/B/A E TR Et Al**

**Case Type:** C40    **File Date:** 08/05/2025    **Return Date:** 08/12/2025

Case Detail | Notices | History | Scheduled Court Dates | E-Services Login | Screen Section Help ▶

To receive an email when there is activity on this case, click here.

**Information Updated as of:** 03/19/2026

### Case Information

| | |
|---|---|
| **Case Type:** | C40 - Contracts - Collections |
| **Court Location:** | STAMFORD JD |
| **List Type:** | No List Type |
| **Trial List Claim:** | |
| **Last Action Date:** | 03/16/2026  (The "last action date" is the date the information was entered in the system) |

### Disposition Information

| | |
|---|---|
| **Disposition Date:** | |
| **Disposition:** | |
| **Judge or Magistrate:** | |

### Party & Appearance Information

| Party | Party Details | No Fee Party | Category |
|---|---|---|---|
| P-01 | **PANTHERS CAPITAL LLC**<br>Attorney:  NEUBERT PEPE & MONTEITH PC (407996) File Date: 08/05/2025<br>195 CHURCH ST<br>13TH FLOOR<br>NEW HAVEN , CT 06510 | | Plaintiff |
| D-01 | **CIS INTERNATIONAL HOLDINGS (N.A.) CORP. D/B/A E TROPICAL FISH**<br>Attorney:  PETER A LUCCARELLI III (433492)    File Date: 09/17/2025<br>777 S. HARBOUR IS. BLVD.<br>SUITE 320<br>TAMPA , FL 33602 | | Defendant |
| D-02 | **CHARITHA I SAMARASINGHE**<br>Attorney:  PETER A LUCCARELLI III (433492)    File Date: 09/17/2025<br>777 S. HARBOUR IS. BLVD.<br>SUITE 320<br>TAMPA , FL 33602 | | Defendant |
| D-03 | **CIS INTERNATIONAL DISTRIBUTORS INC.**<br>Attorney:  PETER A LUCCARELLI III (433492)    File Date: 09/17/2025<br>777 S. HARBOUR IS. BLVD.<br>SUITE 320<br>TAMPA , FL 33602 | | Defendant |
| D-04 | **LIVE AQUARIA HOLDINGS CORP**<br>Attorney:  PETER A LUCCARELLI III (433492)    File Date: 09/17/2025<br>777 S. HARBOUR IS. BLVD.<br>SUITE 320<br>TAMPA , FL 33602 | | Defendant |
| D-05 | **LIONSROCK INVESTMENTS LLC**<br>Attorney:  PETER A LUCCARELLI III (433492)    File Date: 09/17/2025<br>777 S. HARBOUR IS. BLVD.<br>SUITE 320<br>TAMPA , FL 33602 | | Defendant |
| D-06 | **LIONSROCK WISCONSIN LLC**<br>Attorney:  PETER A LUCCARELLI III (433492)    File Date: 09/17/2025<br>777 S. HARBOUR IS. BLVD. | | Defendant |

SUITE 320
TAMPA , FL 33602

**D-07  T3 AQUATICS**                                                                    Defendant

Attorney: 🅮 PETER A LUCCARELLI III (433492)          File Date: 09/17/2025
777 S. HARBOUR IS. BLVD.
SUITE 320
TAMPA , FL 33602

**D-08  SIAM TROPICAL FISH LTD**                                                         Defendant

Attorney: 🅮 PETER A LUCCARELLI III (433492)          File Date: 09/17/2025
777 S. HARBOUR IS. BLVD.
SUITE 320
TAMPA , FL 33602

**D-09  TROPICAL AQUARIUM FISH (FIJI) LTD**                                              Defendant

Attorney: 🅮 PETER A LUCCARELLI III (433492)          File Date: 09/17/2025
777 S. HARBOUR IS. BLVD.
SUITE 320
TAMPA , FL 33602

**Viewing Documents on Civil, Housing and Small Claims Cases:**

If there is an 🅮 in front of the docket number at the top of this page, then the file is electronic (paperless).

- Documents, court orders and judicial notices in electronic (paperless) civil, housing and small claims cases with a return date on or after January 1, 2014 are available publicly over the internet.* For more information on what you can view in all cases, view the Electronic Access to Court Documents Quick Card.

- For civil cases filed prior to 2014, court orders and judicial notices that are electronic are available publicly over the internet. Orders can be viewed by selecting the link to the order from the list below. Notices can be viewed by clicking the **Notices** tab above and selecting the link.*

- Documents, court orders and judicial notices in an electronic (paperless) file can be viewed at any judicial district courthouse during normal business hours.*

- Pleadings or other documents that are not electronic (paperless) can be viewed only during normal business hours at the Clerk's Office in the Judicial District where the case is located.*

- An Affidavit of Debt is not available publicly over the internet on small claims cases filed before October 16, 2017.*

*Any documents protected by law Or by court order that are Not open to the public cannot be viewed by the public online And can only be viewed in person at the clerk's office where the file is located by those authorized by law or court order to see them.

| | | | **Motions / Pleadings / Documents / Case Status** | |
|---|---|---|---|---|
| **Entry No** | **File Date** | **Filed By** | **Description** | **Arguable** |
| | 08/05/2025 | P | **SUMMONS** 📝 | |
| | 08/05/2025 | P | **COMPLAINT** 📝 | |
| | 08/05/2025 | P | **ADDITIONAL PARTIES PAGE** 📝 | |
| | 09/17/2025 | D | **APPEARANCE** 📝  Appearance | |
| 100.30 | 08/05/2025 | P | **RETURN OF SERVICE** 📝 | No |
| 101.00 | 08/27/2025 | P | **AMENDED COMPLAINT** 📝 | No |
| 102.00 | 08/27/2025 | P | **AMENDED COMPLAINT AS SERVED** 📝 | No |
| 103.00 | 08/27/2025 | P | **RETURN OF SERVICE** 📝 | No |
| 104.00 | 09/12/2025 | P | **MOTION FOR DEFAULT -FAILURE TO APPEAR PB 17-20** 📝  *RESULT:* Denied 9/19/2025 BY THE CLERK | No |
| 104.01 | 09/19/2025 | C | **ORDER** 📝  *RESULT:* Denied 9/19/2025 BY THE CLERK | No |
| 105.00 | 09/30/2025 | P | **NOTICE OF BANKRUPTCY** 📝 | No |

| 106.00 | 10/03/2025 | P | DEMAND FOR DISCLOSURE OF DEFENSE PB 13-19 📝 | No |
|---|---|---|---|---|
| 107.00 | 10/24/2025 | P | MOTION FOR DEFAULT FOR FAILURE TO DISCLOSE DEFENSE 📝 | No |
| 108.00 | 10/30/2025 | D | DISCLOSURE OF DEFENSE 📝 | No |
| 109.00 | 11/12/2025 | P | MOTION FOR DEFAULT-FAILURE TO PLEAD 📝 <br> *RESULT:* Denied 12/16/2025 BY THE CLERK | No |
| 109.01 | 12/16/2025 | C | ORDER 📝 <br> *RESULT:* Denied 12/16/2025 BY THE CLERK | No |
| 110.00 | 11/20/2025 | D | MOTION FOR EXTENSION OF TIME 📝 <br> to Respond to Motion for Default | No |
| 111.00 | 11/26/2025 | D | MOTION FOR EXTENSION OF TIME 📝 <br> Second Motion to Respond to Motion for Default and Amended Complaint | No |
| 112.00 | 12/11/2025 | D | ANSWER AND SPECIAL DEFENSE AND COUNTERCLAIM 📝 | No |
| 113.00 | 12/11/2025 | D | EXHIBITS 📝 <br> Exhibits to Answer and Special Defense and Counterclaim, Entry No. 112.00 | No |
| 114.00 | 12/31/2025 | P | MOTION TO DISMISS PB 10-30 📝 <br> Motion to Dismiss Counterclaim <br> *RESULT:* Take Papers 3/16/2026 HON JOHN KAVANEWSKY | Yes |
| 114.01 | 02/11/2026 | C | ORDER 📝 <br> *RESULT:* Order 2/11/2026 HON JOHN KAVANEWSKY | No |
| 114.02 | 03/16/2026 | C | ORDER 📝 ! NEW <br> *RESULT:* Take Papers 3/16/2026 HON JOHN KAVANEWSKY | No |
| 115.00 | 12/31/2025 | P | MEMORANDUM IN SUPPORT OF MOTION 📝 <br> Memorandum of Law in Support of Motion to Dismiss Counterclaim | No |
| 116.00 | 01/08/2026 | P | NOTICE OF SERVICE OF REQUEST FOR ADMISSION PB 13-22 📝 | No |
| 117.00 | 01/30/2026 | D | OBJECTION TO MOTION 📝 <br> To Dismiss Counterclaim | No |
| 118.00 | 02/05/2026 | P | REPLY 📝 <br> Reply to 117.00 Objection to Motion to Dismiss | No |
| 119.00 | 02/09/2026 | D | ANSWER AND/OR OBJECTIONS TO REQUEST FOR ADMISSIONS PB 13-23(a) 📝 | No |
| 120.00 | 03/09/2026 | P | NOTICE 📝 ! NEW <br> Notice of Supplemental Authority re 114.00 and 115.00 | No |

| Scheduled Court Dates as of 03/18/2026 |
|---|
| FST-CV25-6075223-S - PANTHERS CAPITAL LLC v. CIS INTERNATIONAL HOLDINGS (N.A.) CORP. D/B/A E TR Et Al |

| # | Date | Time | Event Description | Status |
|---|---|---|---|---|
| | | | No Events Scheduled | |

Judicial ADR events may be heard in a court that is different from the court where the case is filed.  To check location information about an ADR event, select the **Notices** tab on the top of the case detail page.

Matters that appear on the Short Calendar are shown as scheduled court events on this page. The date displayed on this page is the date of the calendar.

The status of a Short Calendar matter is not displayed because it is determined by markings made by the parties as required by the calendar notices and the civil🔗 standing orders. Markings made electronically can be viewed by those who have electronic access through the Markings History link on the Civil/Family Menu in E-Services. Markings made by telephone can only be obtained through the clerk's office. If more than one motion is on a single short calendar, the calendar will be listed once on this page. You can see more information on matters appearing on

Short Calendars by going to the Civil/Family Case Look-Up page and Short Calendars By Juris Number or By Court Location.

Periodic changes to terminology that do not affect the status of the case may be made.

This list does not constitute or replace official notice of scheduled court events.

**Disclaimer:** For civil and family cases statewide, case information is displayed and is available for inquiry on this website for a period of time, one year to a maximum period of ten years, after the disposition date. To the extent that Connecticut Practice Book Sections 7-10 and 7-11 provide for a shorter period of time, this information will be displayed for the shorter period.

In accordance with the Federal Violence Against Women Act of 2005, cases involving relief from physical abuse (restraining orders), civil protection orders, foreign protective orders, and motions that would be likely to publicly reveal the identity or location of a protected party may not be displayed and may be available only at the courts.

Pursuant to section 47a-26j of the Connecticut General Statutes, certain eviction cases will be removed from this website 30 days after disposition or other final activity of the case.

Attorneys | Case Look-up | Courts | Directories | EducationalResources | E-Services | FAQ's | Juror Information | News & Updates | Opinions | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2026, State of Connecticut Judicial Branch

Page Created on 3/19/2026 at 3:47:04 PM

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1000 Wilshire Blvd., Suite 1500, Los Angeles, California 90017.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1452(a)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 20, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

SEE ATTACHED

☑    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) March 20, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SEE ATTACHED

☑    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 20, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 20, 2026 | Elizabeth Hernandez | /s/ Elizabeth Hernandez |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

BUCHALTER 107181026v1

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Ismail Amin    iamin@talglaw.com,
pgilmore@talglaw.com;kvescera@talglaw.com;shalberstadt@talglaw.com;cstark@talglaw.com;ckim@talglaw.com;
eavakian@talglaw.com

Tanya Behnam    tbehnam@polsinelli.com,
tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com

Christopher Beyer    cab@replevin.com, ecf@writofseizure.com

Michael D Breslauer    mbreslauer@swsslaw.com, sdurazo@swsslaw.com

Dennis A Dressler    ddressler@dresslerpeters.com

David M Goodrich (TR)    dgoodrich@go2.law, c143@ecfcbis.com;dgoodrich11@ecf.axosfs.com;lrobles@go2.law

Michael Jones    michael.jones4@usdoj.gov

Raffi Khatchadourian    raffi@hemar-rousso.com

Ron Maroko    ron.maroko@usdoj.gov

Byron Z Moldo    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com

Scott Olson    solson@seyfarth.com, chidocket@seyfarth.com

Amitkumar Sharma    amit.sharma@aisinfo.com

Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com

Chase Aleksander Stone    cstone@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com,cmacan@ecjlaw.com

United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

Cranston J Williams    cwilliams3@socalgas.com

Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

**2. SERVED BY UNITED STATES MAIL:**

Honorable Barry Russell
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

DEBTOR
CIS International Holdings (N.A.) Corporation
1405 W. 178th Street
Gardena, CA 90248

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

BUCHALTER 107181026v1