ANGELA N. GILL –SBN 260928
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
agill@hrhlaw.com

Attorneys for Creditor and Party in Interest,
TOKYO CENTURY (USA) INC.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 2:25-bk-18374-BR |
| CIS INTERNATIONAL HOLDINGS (N.A.) CORPORATION, | CHAPTER 7 |
| Debtor. | **MOTION FOR EXAMINATION UNDER RULE 2004; DECLARATION OF ANGELA N. GILL AND TITO CABRERA IN SUPPORT THEREOF** |
| | **[No Hearing Set Pursuant to Local Bankruptcy Rule 2004-1; 9013-1(p)]** |

Proposed Examination Date:
Date:        July 30, 2026
Time:        11:00 a.m.
Location:    Hemar Rousso & Heald
             15910 Ventura Blvd., 12th Fl.
             Encino, California 91436

TO THE HONORABLE BARRY RUSSELL UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, CHAPTER 7 TRUSTEE, DEBTOR AND ALL PARTIES IN INTEREST:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1, TOKYO CENTURY (USA) INC. ("Movant") moves the Court for an order authorizing the examination of CIS INTERNATIONAL HOLDINGS (N.A.)

1

MOTION FOR RULE 2004 EXAMINATION

CORPORATION through CHARITHA SAMARASINGHE, President and Authorized Representative of CIS INTERNATIONAL HOLDINGS (N.A.) CORPORATION  (hereinafter referred to as "Debtor"). The Motion for Examination Under Rule 2004 ("Motion")  is based upon the following facts and circumstances:

1.      Movant is a creditor and party in interest in the above-captioned Chapter 7 bankruptcy case of Debtor ("Bankruptcy Case").  The Bankruptcy Case was commenced by Debtor's voluntary Chapter11 petition, filed September 22, 2025 ("Petition Date").

2.      On October 22, 2025, the Bankruptcy Case was converted to Chapter 7. (Dkt. 80).

3.      On November 17, 2025, Movant timely filed a proof of claim in the amount of $65,096.08. The claim is secured by two (2) vehicles specifically described as:

      a.   2021 Isuzu NPR-HD, VIN 54DC4W1D8MS209725

      b.   2021 Isuzue NPR-HD, VIN 54DC4W1D7MS209733

(Attached hereto and incorporated by reference is a true and correct copy of the filed proof of claim as **Exhibit "1"**).

4.      On January 6, 2026, Movant filed an Amended Motion for Relief from the Automatic Stay to enforce its rights under applicable non-bankruptcy law to repossess both vehicles due to Debtor's failure to provide adequate protection and proof of insurance for the vehicles. (Dkt. 163).

5.      The Court granted Movant's request and entered two Orders Granting Motion for Relief from the Automatic Stay (the "Orders") on February 4, 2026. (Dkt. Nos. 181, 182).

6.      Specifically, the Orders terminated the stay as to Debtor and the Debtor's bankruptcy estate and permitted Movant to enforce its remedies to repossess or obtain possession and dispose of the vehicles in accordance with applicable non-bankruptcy law. (Dkt. Nos. 181, 182).

7.      After obtaining the Order, Movant was able to repossess the 2021 Isuzu NPR-HD, VIN 54DC4W1D8MS209725.

MOTION FOR RULE 2004 EXAMINATION

8. Despite many attempts to do so, Movant has not been able to repossess the 2021 Isuzu NPR-HD VIN 54DC4W1D7MS209733 (hereinafter "Isuzu 9733").

9. Movant's agents have made attempts to retrieve and repossess the Isuzu 9733 at the following addresses at the following dates, without success:

a. On or around March 22, 2026 agents went to 4501 Air Park Road., Rhinelander, WI 54501 but were not able to locate the Isuzu 9733.

b. On or around April 22, 2026, agents went to 1405 W. 178th St., Gardena, CA 90248 but were unable to locate the Isuzu 9733.

c. On or about May 24, 2026, agents went to 2389 Air Park Rd., Rhinelander, WI 54501 but were unable to locate the Isuzu 9733.

10. At this time, Movant needs to conduct the Debtor's 2004 examination in order to investigate and determine where the Isuzu 9733 is located, and how to retrieve it.

11. The examination cannot proceed under F.R.B.P. Rules 7030 and 9014 because there is pending no adversary proceeding or contested matter wherein the merits of the matters referred to hereinabove may be scrutinized.  Discovery may not proceed in the State Court Litigation because of the strictures of 11 U.S.C. § 362.

12. Pursuant to LBR 2004-1(a), Movant's counsel has communicated with Debtor's counsel, Byron Moldo and Chase Stone at Ervin, Cohen and Jessup regarding a mutually agreeable date to conduct the examination.

13. Over the course of communication between June 3, 2026 and July 15, 2026, including telephone conversations on July 8, 2026 and July 15, 2026,  Movant's counsel was informed by Debtor's counsel Byron Moldo that he was not able to obtain a response from Debtor's principal regarding either the location of the vehicle or availability for a 2004 exam.

WHEREFORE, the Movant prays that an Order be entered under F.R.B.P. Rule 2004 authorizing the examination of CHARITHA SAMARASINGHE, President and Authorized Representative of CIS INTERNATIONAL HOLDINGS (N.A.) CORPORATION, on any topic subject to inquiry pursuant to that rule, at the law offices of Hemar, Rousso and Heald, LLP,

MOTION FOR RULE 2004 EXAMINATION

located at **15910 Ventura Blvd., 12th Floor, Encino, CA 91436**, beginning on **July 30, 2026**, at **11:00 a.m.**, in person, and thereafter to be continued from day to day, weekends and holidays excepted, as necessary to complete the examination.

DATED:  July 16, 2026                    HEMAR, ROUSSO & HEALD, LLP


                                                    /s/ Angela N. Gill
                                         BY: _____
                                             ANGELA N. GILL
                                             Attorneys for Creditor/Movant
                                             TOKYO CENTURY (USA) INC.

MOTION FOR RULE 2004 EXAMINATION

**DECLARATION OF TITO CABRERA**

I, TITO CABRERA, declare as follows:

1. I am employed by Isuzu Finance of America Inc. /Tokyo Century (USA) Inc. ("Movant") as the Vice President of Operations. I am a custodian of the books, records and files of the Movant, as those records pertain to loans or extensions of credit by Movant to CIS INTERNATIONAL HOLDINGS (N.A.) CORPORATION (hereinafter, "Debtor"). I have personally worked on said records, and as to the facts contained herein, I know them to be true of my own personal knowledge or I have gained knowledge of them from the records of Movant which are prepared and maintained in the ordinary course of its business, at or near the time of the acts or occurrences depicted or represented by such records. If called upon as a witness, I could and would competently testify to the fact contained herein, as I have personal knowledge thereof.

2. On November 17, 2025, Movant timely filed a proof of claim in the amount of $65,096.08. The claim is secured by two (2) vehicles specifically described as:

      a. 2021 Isuzu NPR-HD, VIN 54DC4W1D8MS209725

      b. 2021 Isuzue NPR-HD, VIN 54DC4W1D7MS209733

(Attached hereto and incorporated by reference is a true and correct copy of the filed proof of claim as **Exhibit "1"**).

3. On January 6, 2026, Movant filed an Amended Motion for Relief from the Automatic Stay to enforce its rights under applicable nonbankruptcy law to repossess both vehicles due to Debtor's failure to provide adequate protection and proof of insurance for the vehicles. (Dkt. 163).

4. The Court granted Movant's request and entered two Orders Granting Motion for Relief from the Automatic Stay (the "Orders") on February 4, 2026. (Dkt. Nos. 181, 182).

5. Specifically, the Orders terminated the stay as to Debtor and the Debtor's bankruptcy estate and permitted Movant to enforce its remedies to repossess or obtain possession and dispose of the vehicles in accordance with applicable nonbankruptcy law. (Dkt. Nos. 181, 182). After obtaining the Order, Movant was able to repossess the 2021 Isuzu NPR-HD, VIN 54DC4W1D8MS209725.

MOTION FOR RULE 2004 EXAMINATION

5. Despite many attempts to do so, Movant has not been able to repossess the 2021 Isuzu NPR-HD VIN 54DC4W1D7MS209733 (hereinafter "Isuzu 9733").

6. Movant's agents have made attempts to retrieve and repossess the Isuzu 9733 at the following addresses at the following dates, without success:

a. On or around March 22, 2026, agents went to 4501 Air Park Road, Rhinelander, WI 54501 but were not able to locate the Isuzu 9733.

b. On or around April 22, 2026, agents went to 1405 W. 178th St., Gardena, CA 90248 but were unable to locate the Isuzu 9733.

c. On or about May 24, 2026, agents went to 2389 Air Park Rd., Rhinelander, WI 54501 but were unable to locate the Isuzu 9733.

7. At this time, Movant needs to conduct the Debtor's 2004 examination in order to investigate and determine where the Isuzu 9733 is located, and how to retrieve it.

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on June 9, 2026, at __Purchase__ , __NY__

_____
TITO CABRERA

6

MOTION FOR RULE 2004 EXAMINATION

## DECLARATION OF ANGELA N. GILL

I, ANGELA N. GILL, declare as follows:

I am an attorney licensed to practice law in all of the courts in the State of California.  I am an attorney at the law firm  of Hemar, Rousso & Heald, LLP, attorneys of record for Tokyo Century (USA) Inc. ("Movant") and I am not a party to this action.  I make this declaration based upon my personal knowledge of this case and as a custodian of records of the legal file as it relates to Movant's claims against CIS INTERNATIONAL HOLDINGS (N.A.) Corporation ("Debtor").

1.  On November 17, 2025, Movant timely filed a proof of claim in the amount of $65,096.08. The claim is secured by two (2) vehicles specifically described as:

      a.   2021 Isuzu NPR-HD, VIN 54DC4W1D8MS209725

      b.   2021 Isuzu NPR-HD, VIN 54DC4W1D7MS209733

(Attached hereto and incorporated by reference is a true and correct copy of the filed proof of claim as **Exhibit "1"**).

2.  On January 6, 2026, Movant filed an Amended Motion for Relief from the Automatic Stay to enforce its rights under applicable nonbankruptcy law to repossess both vehicles due to Debtor's failure to provide adequate protection and proof of insurance for the vehicles. (Dkt. 163).

3.  The Court granted Movant's request and entered two Orders Granting Motion for Relief from the Automatic Stay (the "Orders") on February 4, 2026. (Dkt. Nos. 181, 182).

4.  Specifically, the Orders terminated the stay as to Debtor and the Debtor's bankruptcy estate and permitted Movant to enforce its remedies to repossess or obtain possession and dispose of the vehicles in accordance with applicable nonbankruptcy law. (Dkt. Nos. 181, 182).

5.  Movant needs to conduct the Debtor's 2004 examination in order to investigate and determine where the 2021 Isuzu NPR-HD identified by VIN 54DC4W1D7MS209733 is located and how to retrieve it.

6.  The examination cannot proceed under F.R.B.P. Rules 7030 and 9014 because there is pending no adversary proceeding or contested matter wherein the merits of the matters referred to hereinabove may be scrutinized.  Discovery may not proceed in the State Court

MOTION FOR RULE 2004 EXAMINATION

Litigation because of the strictures of 11 U.S.C. § 362.

7.  Pursuant to LBR 2004-1, I have communicated with Debtor's counsel, Byron Moldo and Chase Stone of Ervin, Cohen and Jessup regarding a mutually agreeable date to conduct the examination.

8.  I communicated with Debtor's counsel Byron Moldo telephonically on July 8, 2026, and on July 15, 2026.

9.  I have also been in communication with Debtor's counsel Chase Stone and Byron Moldo via email between June 3, 2026, and July 14, 2026.

10. I was informed by Debtor's counsel Byron Moldo that he was not able to obtain a response from Debtor's principal regarding either the location of the vehicle or availability for a 2004 exam.

11.  Since the parties were not able to agree upon a date and time to conduct the examination, I am requesting that the examination be conducted on July 30, 2026, at 11:00 a.m. at the law firm of Hemar, Rousso and Heald, located at 15910 Ventura Blvd., 12th Floor, Encino, CA 91436, to be conducted in person.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on  July 16, 2026, at Encino, California.


    /s/ Angela N. Gill
ANGELA N. GILL

MOTION FOR RULE 2004 EXAMINATION

# EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1    CIS International Holdings Corporation

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Central District of California

Case number   2:25-bk-18374-BR

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

1. **Who is the current creditor?**

Tokyo Century (USA) Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  Isuzu Finance of America, Inc.

2. **Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

c/o Dressler Peters LLC
Name

101 W. Grand Ave., Ste. 404
Number       Street

Chicago              IL         60654
City                State           ZIP Code

Contact phone  (312) 602-7360

Contact email  ddressler@dresslerpeters.com

**Where should payments to the creditor be sent?** (if different)

Name

Number       Street

City                State           ZIP Code

Contact phone  _____

Contact email  _____

Uniform claim identifier (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

☑ No
☐ Yes.   Claim number on court claims registry (if known) _____

Filed on _____
        MM  /  DD  /  YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.   Who made the earlier filing? _____

Official Form 410                              **Proof of Claim**                                    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|-------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**

$_____65,096.08. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Secured Promissory Notes

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.    The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:    2021 Isuzu NPR-HD, 2021 Isuzu NPR-HDG

**Basis for perfection:**    Certificates of Title

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____51,100.00

**Amount of the claim that is secured:**    $_____51,100.00

**Amount of the claim that is unsecured:** $_____13,996.08 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410    **Proof of Claim**    page 2

| | |
|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* |

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  __11/17/2025_____
MM / DD / YYYY

/s/ Dennis A. Dressler
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Dennis A. Dressler |
| | First name          Middle name          Last name |
| Title | Attorney |
| Company | Dressler Peters, LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 101 W. Grand Ave., Ste. 404 |
| | Number          Street |
| | Chicago                                         IL          60654 |
| | City                                         State     ZIP Code |
| Contact phone | (312) 602-7360          Email  ddressler@dresslerpeters.com |

1110

# Isuzu Finance of America, Inc.                    **Secured Promissory Note**

| Borrower: | CIS International Holdings (N.A.) Corp. | Lender/Creditor: | **ISUZU FINANCE OF AMERICA, INC.** | Date: | 05/17/2022 |
| Address: | 1405 W. 178th Street | Address: | 2500 Westchester Ave., Suite 312 | | |
| | Gardena, CA  90248 | | Purchase, New York  10577 | | |
| | | | Attention: Operations | | |

| Year | Make | Model | Vehicle Identification Number | License Number (if applicable) | | Use For Which Purchased |
|---|---|---|---|---|---|---|
| 2021 | Isuzu | NPR-HD | 54DC4W1D8MS209725 | | ☒ NEW ☐ Demonstrator ☐ Other | ☒ BUSINESS OR COMMERCIAL |

Description of Vehicle's Body/Attachments:     16' Morgan Dry Van Body with Maxon TE-25L Tuckunder Liftgate
Vehicle Body/Attachments Serial Numbers:     2111625279
Gross Vehicle Weight:     14500
**Address where Vehicle will be located:**
Street Address:     1405 W. 178th Street
City/State/Zip:     Gardena, CA 90248

**Interest Rate:**  5.74 % per annum.

| | | | |
|---|---|---|---|
| 1. Vehicle Cash Sales Price | | $63,485.00 | |
| 2. Net Trade-in Less Liens | | $0.00 | |
| 3. Cash Down Payment | | $6,500.00 | |
| 4. Net Vehicle Cash Sales Price (1-2-3) | $56,985.00 | | |
| 5. Service Fee | $350.00 | | |
| 6. Sales Tax | $0.00 | | |
| 7. Registration/Title Fees | $177.50 | | |
| 8. Other Charges | | | |
|    Acquisition Fee | $250.00 | | |
|    Dealer Doc Fee | $695.00 | | |
| 9. Total Itemized Charges (5 through 8) | | $1,472.50 | |
| 10. Amount Financed (4 + 9) | | $58,457.50 | |
| 11. Finance Charge | | $8,927.90 | |
| 12. Other (Explain) | | | |
| 13. Total Obligation (10+11+12) | | $67,385.40 | |

Borrower agrees to pay the "Total Obligation" (Item 13) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | First Payment Date | Payment Amount | Total |
|---|---|---|---|
| 60 | | $1,123.09 | $67,385.40 |

If shown below, Borrower has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Borrower agrees that Lender collects such fees and charges for the service provider only as an accommodation to Borrower and such agreements are not part of this Contract. The Lender is not responsible for any services, disposables or insurance obligations.

| Service | Term (mos.) | Total Charge |
|---|---|---|
| Extended Warranty | 60/150,000 | $995.00 |
| | | |

**Total Charge Is Included In "Vehicle Cash Sales Price"**

1.        **Promise to Pay and Interest.** The below-signed borrower, and if more than one, each below-signed borrower, jointly and severally (the "**Borrower**"), promises to pay in full the Total Obligation set forth in Item 13 above to Isuzu Finance of America, Inc. ("**Lender**") in lawful money of the United States of America, with interest thereon as herein provided, to be paid in the manner set forth herein.  All interest due under the Loan Documents (as defined below) shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of days elapsed.  Borrower agrees to pay an effective rate of interest that is the Interest Rate set forth on page 1 (the "**Interest Rate**").  Borrower shall also be liable for and shall pay when due any other charges or fees paid or to be paid in connection with the Loan Documents.  In addition to the Total Obligation, Borrower agrees to pay all other amounts owed to Lender under this Note and the other Loan Documents (collectively with the Total Obligation, the "**Indebtedness**") when due.  Payment of the Indebtedness shall be made to Lender at such place as Lender or its successor may designate from time to time in writing.  Lender reserves the right to require payment on this Secured Promissory Note to be made by wired federal funds or other immediately available funds.  "**Loan Documents**" shall mean this Secured Promissory Note (this "**Note**"); all other notes (or other instruments) made by, or other obligations of, Borrower to Lender; any guaranty(ies) of any payment or performance of the Indebtedness; and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note or the credit evidenced hereby, as any or all of such documents may be executed or amended from time to time.

2.        **Security Interest.** In order to secure payment of the Indebtedness and complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into (the "**Secured Obligations**"), Borrower hereby grants to Lender a security interest in and to the Vehicle and such other equipment and goods as are described above (collectively, the "**Equipment**"), together with all present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory loans, warranties, service contracts, documents, and records now or hereafter arising from the Equipment (collectively, the "**Collateral**").  Borrower authorizes Lender to file a financing statement, or a photocopy or other reproduction of this Note, or of any financing statement, to perfect its security interest.  Principal shall bear interest at the Interest Rate from the date of disbursement until the applicable due date, whether due by acceleration or otherwise.  Any payment due on a date which is a date when banking institutions are not open to the public under the laws of the State of New York shall be due on the next succeeding date on which such institutions are open.  All Indebtedness not paid when due shall bear interest from the due date, until paid at a rate (the "**Default Rate**") which is the lesser of sixteen percent (16%) per annum or the maximum rate permitted under applicable law.  Borrower is responsible for assuring that a lien on the Collateral in favor of the Lender is properly recorded on any title to the Collateral and that such lien remains in full force and effect until all amounts due Lender hereunder shall have been paid in full.

1110

3.      **Receipt and Application of Payments**. Payments shall not be deemed received by Lender until good funds are actually received by Lender. Payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Lender in cash or its equivalent, will be applied in reduction of the Secured Obligations in such order and manner as Lender may direct in its sole discretion, and Borrower irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Lender shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Lender's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

4.      **Prepayment**. So long as no Default or Event of Default shall have occurred and be continuing and Borrower shall have given Lender at least fourteen (14) days prior written notice, Borrower shall have the option to prepay this Note on any installment Due Date set forth on page 1 of this Note (or any accompanying schedule referred to on page 1 of this note) (each, an "**Installment Due Date**") for an amount (the "Prepayment Amount") equal to (1) any unpaid Payment Amounts and all other amounts due on or before such Installment Due Date, plus (2) the principal outstanding on the books and records of the Lender on such Installment Due Date, plus (3) any applicable sales taxes. Payment of the Prepayment Amount, together with all other amounts due and owing by Borrower under the Note (including, without limitation, the scheduled Payment Amount) on or before the Installment Due Date, shall be made on the Installment Due Date in immediately available funds. If Borrower shall fail to pay all amounts required to be paid under the Note on the Installment Due Date, the Note shall continue in full force and effect and Borrower agrees to reimburse Lender for all reasonable attorney's fees, costs, expenses and liabilities incurred in connection therewith.

5.      **Late Charges**. If any payment of principal and interest or any other Indebtedness is not received in full by Lender within ten (10) days after its due date, then in addition to all other rights and remedies of Lender, a late charge equal to ten percent (10%) of the amount due and unpaid will be charged to Borrower or such lesser amount as shall be the maximum permissible late charge thereon. Such late charge shall be immediately due and payable upon receipt of written notice from Lender and constitute "**Indebtedness**" and a "**Secured Obligation**" under this Note.

6.      **No Counterclaims, Deductions, or Offsets**. All payments and obligations of Borrower under the Loan Documents will be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction.

7.      **Insurance and Risk of Loss**. All risk of loss, damage or destruction of the Equipment will at all times be on Borrower. Borrower will keep the Equipment insured at Borrower's expense against liability in an amount as required by Lender or, if in excess thereof, the amount required under applicable law, and loss or damage by fire, theft and other customary risks for the greater of the Equipment's full insurable value or the Indebtedness, with a deductible not to exceed $2,500 per item of Equipment, or such lesser amount as shall be required by applicable law. Coverage and insurer will be subject to Lender's reasonable approval. Each policy shall name Lender as loss payee and will further provide that Lender's interest can not be invalidated by any act, omissions or neglect of any party other than Lender and that the insurer will give Lender thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Borrower or insurer. Borrower will promptly deliver a copy of each policy or an insurance certificate acceptable to Lender prior to any advancement of funds hereunder, and will later provide proof of renewal at least 30 days prior to expiration or cancellation. If Borrower fails to so insure the Equipment, Lender may purchase such insurance at Borrower's expense, the purchase of which need not include liability or protection of Borrower's interest. Borrower hereby authorizes and irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution, to execute and endorse all documents, checks, or drafts in Borrower's name and to submit any proof of loss to collect such insurance.

8.      **Borrower's Representations, Warranties, and Agreements**. Borrower represents, warrants, and agrees that: (a) this Note evidences a loan obtained by it, and the Equipment is to be used by it, solely for business or commercial purposes; (b) prior to signing this Note, Borrower read and understood the provisions hereof, and agrees to all the terms and conditions contained herein; (c) except for the security interest granted to Lender, the Collateral will remain free from all liens and security interests; (d) all information supplied by Borrower in any financial, credit, or accounting statement to Lender is and will be true, correct and genuine, and Borrower consents to the Lender's prior review of Borrower's credit reports prior to the date of this Note and to the ongoing review of Borrower's credit reports during the term of the credit evidenced by this Note; (e) Borrower has full authority to borrow the credit evidenced by this Note for the purposes provided for herein and to enter into each Loan Document to which it is a party, and in so doing it is not violating any law, regulation or agreement; and (f) Borrower has duly executed and delivered this Note and has taken all necessary and appropriate actions to make each Loan Document to which it is a party binding and enforceable against Borrower in accordance with its terms. Borrower covenants and agrees that: (i) it shall not allow a Blocked Person to have an ownership interest in or control of Borrower, (ii) it shall defend at its own cost any action, proceeding or claim affecting the Collateral; (iii) it shall maintain each item of the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and any warranties; (iv) it shall promptly pay all taxes, assessment, license fees and other public or private charges when levied against the Collateral or any Loan Document; (v) it shall obtain a certificate of title on each item of Equipment showing Lender's first priority security interest and preserve and perfect Lender's security interest, such that such security interest shall at all times be a first priority perfected security interest subject to no other liens or encumbrances by authorizing Lender to file financing statements covering the Collateral and also execute any required financing statements; (vi) it shall not misuse, secrete, sell, rent, encumber or transfer any item of Equipment; (vii) that Lender may enter any premises at any reasonable time to inspect the Equipment; (viii) it shall provide Lender with quarterly and annual financial statements upon request of Lender; and (ix) it shall reimburse Lender immediately after written notice for any expenses incurred by Lender in enforcing Borrower's obligations under any Loan Document. [As used herein, the term "Blocked Person" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) a person or entity whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law.]

9.      **Events of Default**: Each of the following shall be an event of default under this Note and the other Loan Documents (an "**Event of Default**"): (a) failure by the Borrower, or any other person (each, a "**Loan Party**"; and collectively with the Borrower, the "**Loan Parties**") that from time to time is obligated to Lender under any of the Loan Documents, to pay when due (i) any amount due by such Loan Party under any of the Loan Documents, or (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or indebtedness of any kind; (b) failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to such Loan Party, in any of the Loan Documents and such obligation or term or condition remains unsatisfied after ten (10) days' written notice to such Loan Party; (c) the breach of any covenant, or any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party to Lender in obtaining or hereafter in connection with the credit evidenced by this Note is materially incomplete, incorrect, or misleading as of the date made or delivered; (d) any Loan Party (i) is unable or admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors or (iii) applies for or acquiesces in the appointment of a trustee, receiver, or other custodian for such Loan Party or any of the property of such Loan Party or a trustee, receiver or other custodian is appointed for such Loan Party or any of the property of such Loan Party; (e) commencement of any insolvency or bankruptcy proceeding, or any similar proceeding under any federal, state, local, or foreign law by or against any Loan Party; (f) the death, incompetence, dissolution, or liquidation of any Loan Party; the consolidation or merger of any Loan Party with any other person or entity; or the taking of any action by any Loan Party toward a dissolution, liquidation, consolidation, or merger; (g) any Loan Party or any other person on behalf of any Loan Party claims that any Loan Document or any lien or security interest in any of the Collateral is not legal, valid, binding, or enforceable against any Loan Party, or that that the priority of any lien or security interest securing any of the Secured Obligations is different than the priority represented and warranted in the Loan Documents; (h) any of the Collateral is lost or destroyed; (i) Lender in good faith believes that the prospect of payment or performance hereunder is impaired; (j) there shall be a material change in the management, ownership or control of any Loan Party; (k) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder collectively be referred to as "**Governmental Authority**"); (l) if anyone in the control, custody or possession of any Collateral or any Loan Party is accused, alleged or charged

IFAI – Secured Prom Note                              2 of 4

1110

(whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (m) the occurrence of any condition or event that is a default or is designated as a default or event of default or an "**Event of Default**" under any other Loan Document or in any other agreement, contract, or indebtedness of any Loan Party to Lender.

10. **Rights and Remedies of Lender**. Upon the occurrence of an Event of Default, Lender may, at its option, and without demand or notice: (a) declare the Indebtedness to be immediately due and payable, whereupon all of the Indebtedness shall be immediately due and payable; (b) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower; (c) require Borrower to make the Collateral available to Lender at a place to be designated by Lender; (d) at the expense of Borrower, make repairs to any item of Equipment deemed necessary by Lender; and (e) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses) shall be applied to the Indebtedness or any other indebtedness of Borrower to Lender and any surplus remaining thereafter shall be paid to Borrower or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Lender may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Lender and its successors and assigns. No liability shall be asserted or enforced against Lender under this section except for Lender's intentional wrongful acts. Lender may in its sole discretion waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default. Delay, discontinuance, or failure to exercise any remedy shall not be a waiver of such remedy or of any other right or remedy of Lender, or of the TIME IS OF THE ESSENCE provision. To the extent permitted under applicable law, Borrower expressly consents to and authorizes a court with jurisdiction to issue, by hearing without notice, such orders as may be necessary to enforce the terms of this Note, granting to Lender such powers as Lender shall need to enforce this Note. Any such court is directed to not require a bond of Lender, the parties agreeing that time is of the essence to protect Lender. To the extent permitted under applicable law, Borrower expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Lender existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Note (or to such other address as provided in writing by Borrower) by registered or certified mail at least five (5) days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Borrower.

11. **Transfer or Assignment**. Lender may at any time transfer its rights and/or delegate its obligations under the Loan Documents or otherwise negotiate this Note in whole or in part, without any notice to or the consent of any Loan Party. The rights and obligations of Borrower may not be assigned or delegated.

12. **Binding Effect**. This Note shall be binding upon Borrower and inure to the benefit of Lender and its successors and assigns. In addition and as permitted under applicable law, NO LOAN PARTY SHALL ASSERT AGAINST ANY ASSIGNEE OR TRANSFEREE OF LENDER ANY CLAIMS OR DEFENSES SUCH LOAN PARTY MAY HAVE AGAINST LENDER.

13. **Collection Costs and Other Costs, Expenses and Fees.** In addition to the principal, interest, and late payment charges (if any), Borrower shall pay Lender on demand, and Lender shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Lender's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed. If this Note is terminated for any reason prior to the expiration of the original Term, then Borrower shall pay to Lender $300.00 on demand for processing the early termination. All such costs, expenses, and fees shall constitute "**Indebtedness**" and "**Secured Obligations**" and shall be payable on demand.

14. **Usury; Partial Invalidity.** At no time shall the interest rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for the type of loan evidenced hereby. Should Lender ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the outstanding principal balance of the loan evidenced hereby.

15. **Severability**. If any provision of any of the Loan Documents is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected.

16. **Choice of Law**. The Loan Documents (including all matters of construction, validity, performance and the creation, validity, enforcement or priority of the lien of, and security interests created by, this Note in or upon the Collateral) and all related controversies shall be governed in all respects by, and construed in accordance with, the laws of the State of New York, without reference to conflicts of law (other than Section 5-1401 of the New York General Obligations Law), except as required by mandatory provisions of law and except to the extent that the validity or perfection of the lien and security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17. **Notices and Demands**. All demands or notices under the Loan Documents shall be in writing (including, without limitation, telecopy or facsimile - receipt confirmed) and mailed, telecopied, or delivered to the address specified on page 1 of this Note or in writing by the party to which such notice is given. Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested. Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee, or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

18. **Rescission or Return of Payments**. If at any time or from time to time, whether before or after payment and performance of the Indebtedness in full, all or any part of any amount received by the Lender as payment of any Indebtedness, must or is claimed to be subject to avoidance, rescission, or return to Borrower or any other party for any reason whatsoever, such Indebtedness and any liens, security interests, and other encumbrances that secured such Indebtedness at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

19. **Waivers**. Borrower hereby (a) waives, to the fullest extent permitted under applicable law, the right to assert any statutes of limitations as a defense to any of the Indebtedness, (b) waives, to the fullest extent permitted under applicable law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents), and (c) agrees that Lender may enforce this Note and any other Loan Document against Borrower without first having sought enforcement against any other Loan Party or any Collateral securing the Indebtedness.

BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH LENDER, BORROWER OR ANY LOAN PARTY MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY, AND BORROWER ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

IFAI – Secured Prom Note         3 of 4

1110

20.    **Power of Attorney**  Borrower grants Lender a power of attorney to correct obvious errors and fill in such blanks as serial numbers, date of first payment and similar provisions, for registering, transferring, titling, or perfecting Lender's interest in the Equipment and for obtaining repossession certificates of title with respect to the Equipment  Such power of attorney is coupled with an interest, is delegable to an agent, and is irrevocable during the term of the credit evidenced by this Note  Borrower agrees that a photocopy of this Note shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to act pursuant to this and any other power of attorney granted hereby.

21.    **Miscellaneous**  The Loan Documents constitute the entire agreement and understanding of Lender and Borrower and supersede all prior agreements  No provision of any Loan Document can be amended, waived, discharged, or terminated except in writing executed by the parties thereto.  Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lender to require that subsequent payments be made when due, or the right of Lender to declare an Event of Default if subsequent payments are not made when due  Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing  This Note may be authenticated in one or more counterparts each of which when authenticated shall be deemed an original but all of which together shall constitute one and the same instrument  This Note may  (i) take electronic form (constituting an "Electronic Document") pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act and/or other applicable law, if generated and stored within a secure electronic medium approved by Lender designed for creating and facilitating transactions entered into using so-called "electronic signatures", (ii) take paper form bearing an ink signature, (iii) take the form of a photocopy of such a paper form, (iv) be delivered in PDF or other fixed-file format, (v) be an electronic facsimile, or (vi) be in any other format deemed acceptable by Lender  Each version of this Note originally authenticated in paper form shall constitute a "Counterpart", and must constitute a true, complete, faithful and legible representation hereof  Borrower agrees that all signatures transmitted by facsimile, email or other electronic means, including, but not limited to, Electronic Documents and Counterpart(s) (as applicable) shall be deemed binding and effective for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Borrower in accordance with its terms in any and all appropriate forums.  Lender may choose to authenticate a Counterpart(s) in writing, through the use of a stamp, or through some other means selected by Lender  (In no event shall any acceptance or acknowledgment be deemed to constitute an indorsement hereof without express use of words to that effect.)  Notwithstanding anything contained herein to the contrary, the version of this Note bearing Lender's original signature, or, if the Note is fully executed electronically, the authoritative copy as defined by the Uniform Commercial Code, shall constitute the sole record of "chattel-paper" for Code purposes.  Perfection by possession (control) of same may only be accomplished by: (i) maintaining possession and control of the Counterpart of this Note authenticated by a duly authorized representative of Lender and not otherwise marked "customer copy" (or words to that effect) or (ii) maintaining, as provided in Article 9 of the Uniform Commercial Code, control of the single authoritative copy of this Note, if in the form of an Electronic Document.  *TIME IS OF THE ESSENCE IN THIS NOTE AND THE OTHER LOAN DOCUMENTS.*

BORROWER HEREBY CERTIFIES, UNDER PENALTY OF PERJURY, THAT ONE HUNDRED PERCENT (100%) OF THE USE OF THE EQUIPMENT IS TO BE IN A TRADE OR BUSINESS OF BORROWER AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

*SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY*

| Borrower: | Co-Borrower [IF APPLICABLE]: |
|---|---|
| CIS International Holdings (N.A.) Corp. | |
| X _Charitha (signature)_ | |
| Signature | Signature |
| Charitha Samarasinghe / CEO | |
| Printed Name and Title(s) | Printed Name and Title(s) |
| 5/17/22 | |
| Date | Date |
| Lender: | Lender's Name & Mailing Address: |
| ISUZU FINANCE OF AMERICA, INC. | ISUZU FINANCE OF AMERICA, INC. |
| (Not an indorsement) | Address:   2500 Westchester Ave., Suite 312 |
| By | Purchase, New York  10577 |
| (Duly Authorized) | Attention  OPERATIONS |

Borrower(s) Name & Address:
Legal Name(s)    CIS International Holdings (N A ) Corp
Street Address (Place of Business).    1405 W  178th Street, Gardena, CA  90248                    County  _____
Mailing Address.    1405 W  178th Street, Gardena, CA  90248
Telephone:  _____                        Fax  _____                State of [Formation/Residence]:    California
                                                        Organization Type    Corporation

## Delivery and Acceptance Certificate

On  5/17/22  (the "Date of Acceptance"), each item of Equipment listed in this Note was delivered to Borrower, in conjunction with Borrower's purchase of the Equipment, and Borrower acknowledges its receipt and irrevocable acceptance of each item of the Equipment.  Borrower represents and warrants to Lender that Borrower has accepted delivery of and inspected each item of Equipment, determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception.  Borrower understands and acknowledges that Lender is entering into the Loan Documents based on Borrower's representation and warranty that Borrower will pay in full to Lender all payments when due as required by the Loan Documents.  Borrower also represents and warrants to Lender that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Loan Documents has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Borrower in the Loan Documents are correct and complete as though made on and as of the date of this Note.

Borrower's Initials:  X _(initials)_   [Co-Borrower's Initials:  _____  ]

## PURCHASE OF LOAN CONTRACT

This Purchase of Loan Contract (this "Purchase Contract") is executed pursuant to the Master Loan and Sale and Assignment Agreement dated as of May 16, 2007 (the "Agreement"), by and between ISUZU FINANCE OF AMERICA, INC., as Assignor, and TOKYO CENTURY (USA) INC., as Assignee.

This Purchase Contract is dated, and the assignment described below is effective, as of the date set forth below and hereby expressly incorporates the terms and conditions of the Agreement.

| | |
|---|---|
| 1.  Dealer | Isuzu Truck Of La Crosse |
| 2.  Obligor (Borrower) | CIS International Holdings (N.A.) Corp. |
| 3.  Guarantor | |
| 4.  Date of (Loan) Contract | 5/16/2022 |
| 5.  Contract Documents (See Schedule A) | |
| 6.  Total Invoice Cost (Amount Financed) | $58,457.50 |
| 7.  Payments to be due under Purchase Contract | |
| (a)  Term | 60 |
| (b)  Amount of each payment | $1,123.09 |
| (c)  Balloon Payment | $1,123.09 |
| 8.  Consideration (6) | $58,457.50 |
| 9.  Acquisition Fee to Assignee (TCUSA) | $250.00 |
| 10. Referral Fee | $700.00 |
| 11. Dealer Markup | $2,240.70 |
| 12. Purchase Amount (8-9+10+11) | $61,148.20 |

Date of Execution:  May 24, 2022

ASSIGNOR:  ISUZU FINANCE OF AMERICA, INC.

By:  _____
Name: _____
Title: _____

ASSIGNEE:  TOKYO CENTURY (USA) INC.

By:  _____
Name: _____
Title: _____

**TO PROPERLY RELEASE YOUR LIABILITY — COMPLETE AND READ INSTRUCTIONS ON REVERSE SIDE**

SECTIONS A-J MUST BE COMPLETED IN FULL — PRINT IN CAPITAL LETTERS — USE BLACK OR BLUE INK

## NOTICE OF TRANSFER AND RELEASE OF LIABILITY

*MAIL THIS PORTION TO DMV-OR-FILE ONLINE AT dmv ca gov*

A NEW OWNER S *LAST* NAME (OR) COMPANY NAME          FIRST

B NEW OWNER S ADDRESS                    APT NUMBER

C ODOMETER READING (NO TENTHS)

D CITY          STATE    ZIP CODE

E DATE OF SALE OR LEASE RETURN   MO  DAY  YR

F SELLER S OR LESSEE S *LAST* NAME (OR) COMPANY NAME   FIRST

G SELLING PRICE (NO CENTS)   WHOLE DOLLARS

H SELLER S OR LESSEE S ADDRESS            APT NUMBER

I SELLER S OR LESSEE S SIGNATURE   X

J CITY          STATE    ZIP CODE

VEHICLE ID NUMBER        YR MODEL  MAKE     PLATE NUMBER

54DC4W1D8MS209725        2021 ISU       36884R3

REG 138A (REV 10/2012)

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

60823070615                              VEHICLE HISTORY

COMMERCIAL

VEHICLE ID NUMBER          YR MODEL  MAKE    PLATE NUMBER
54DC4W1D8MS209725          2021 ISU         36884R3

| BODY TYPE MODEL | UNLADEN AX WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|
| CY | 2 09300 | G | | $9554 | 07/31/2024 |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| 2022 | RV | | 00 | | 07/06/23 |

MOTORCYCLE ENGINE NUMBER

ODOMETER DATE       ODOMETER READING
07/14/2022          11932 MI
ACTUAL MILEAGE

REGISTERED OWNER(S)
CIS INTERNATIONAL HOLDINGS
NA CORP
1405 W 178TH ST
GARDENA CA 90248

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE**

1a_____ DATE ____ X _____ SIGNATURE OF REGISTERED OWNER

1b_____ DATE ____ X _____ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership Failure to complete or providing a false statement may result in fines and/or imprisonment

The odometer now reads |_|_|_|_|_|_|_| (no tenths) miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked Mileage is VOID if altered or erased

**WARNING**  ☐ Odometer reading is **not** the actual mileage  ☐ Mileage exceeds the odometer mechanical limits

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct*

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days

LIENHOLDER(S)

ISUZU FIN AMERICA INC
3268 PROGRESS WAY BLDG 12
WILMINGTON
OH 45177

2 X _____
Signature releases interest in vehicle (Company names must be countersigned)

Release Date _____

017567

CA 220130984

REG 17 30RS (REV 02/2016)

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

KEEP IN A SAFE PLACE - VOID IF ALTERED

**IMPORTANT NOTICE—DO NOT DETACH UNTIL SOLD**

COMPLETE THIS FORM ONLINE AT dmv ca gov
AND PRINT A RECEIPT FOR YOUR RECORDS
IF YOU MAIL THIS FORM KEEP A COPY FOR YOUR RECORDS

You are required by law to notify the Department of Motor Vehicles within five (5) days from the date you sell or otherwise dispose of a vehicle This form is provided for use in reporting the sale or transfer to the Department and does not constitute application for transfer of ownership (title) *This form is to be used ONLY for the vehicle described on the attached title*

When this form is properly completed and the information is recorded by DMV (see WARNING below) liability for parking and/or traffic violations and civil litigation resulting from operation after the date of sale becomes the responsibility of the subsequent purchaser(s)

**WARNING** **If you provide incomplete, inaccurate or unclear information, the information shall not be updated or retained**

TO REMOVE YOUR NAME FROM DMV'S RECORDS THE NEW OWNER MUST APPLY FOR TRANSFER USING THE ENDORSED CERTIFICATE OF TITLE (OWNERSHIP) RECEIVED FROM YOU

**INSTRUCTIONS FOR COMPLETING NOTICE OF TRANSFER AND RELEASE OF LIABILITY**

(A) Print name of new owner
(B) Print new owner's address
(C) Enter odometer reading at the time of sale (motor vehicles only)
(D) Print new owner's city, state and ZIP code
(E) Enter date you sold or transferred the described vehicle
(F) Print your name
(G) Enter selling price (in whole dollars no cents) If vehicle is a gift enter 0"
(H) Print your address
(I) Sign your name where designated
(J) Print your city state and ZIP code

**FILE ONLINE OR MAIL THIS COMPLETED NOTICE TO**

**DEPARTMENT OF MOTOR VEHICLES
P O BOX 942859
SACRAMENTO, CA 94259 0001**

## APPLICATION FOR TRANSFER BY NEW OWNER    *(Please print or type )*

Any change of registered owner or lienholder must be recorded with the Department of Motor Vehicles (DMV) within ten (10) days The title, transfer fee and in most instances, use tax and a smog certificate must be presented to DMV to record the ownership change

**NEW REGISTERED OWNER**

3a TRUE FULL NAME(S) OF NEW REGISTERED OWNER(S) *(LAST FIRST MIDDLE) AS IT APPEARS ON DRIVER S LICENSE OR I D CARD*

3b ☐ AND ☐ OR *(LAST FIRST MIDDLE)*

4 RESIDENCE OR BUSINESS STREET ADDRESS — APT /SP /STE NUMBER

5 CITY — STATE — ZIP CODE

6 COUNTY OF RESIDENCE OR COUNTY WHERE VEHICLE IS PRIMARILY GARAGED OR FOR TRAILER COACHES, ADDRESS OR LOCATION WHERE KEPT

7 MAILING ADDRESS STREET OR P O BOX NUMBER (DO NOT COMPLETE IF SAME AS RESIDENCE ABOVE)

8 CITY — STATE — ZIP CODE

**OWNER**

If there is a mailing address entered on this form it is a valid existing and accurate address I consent to receive service of process at this mailing address pursuant to Code of Civil Procedure Sections 415 20(b) 415 30(a) and 416 90
**I declare under penalty of perjury under the laws of the State of California that the information entered on this application is true and correct**

9a DATE — SIGNATURE OF NEW REGISTERED OWNER X — DRIVER LICENSE OR ID CARD NO — PURCHASE DATE

9b DATE — SIGNATURE OF NEW REGISTERED OWNER X — DRIVER LICENSE OR ID CARD NO — PURCHASE PRICE OR IF GIFT SO STATE

**LEASED VEH ONLY** 10 ADDRESS OF NEW LESSEE IF DIFFERENT FROM LINE 4 ABOVE (WILL NOT BE PRINTED ON TITLE)

**NEW LIENHOLDER**

11 NAME OF **LIENHOLDER** – FIRM OR INDIVIDUAL HOLDING SECURITY INTEREST (IF NO LIEN WRITE NONE ) DO NOT ENTER NAME OF REGISTERED OWNER(S) ABOVE ELECTRONIC LIENHOLDER ID     ELT #

12 STREET ADDRESS OR PO BOX NUMBER

13 CITY — STATE — ZIP CODE

### TITLE REASSIGNMENTS BY LICENSED CALIFORNIA DEALERS

FEDERAL LAW REQUIRES that you state the mileage upon transfer of ownership Failure to complete or making a false statement may result in fines and / or imprisonment
The signature below releases my interest in this vehicle acknowledges the odometer mileage recorded by the seller and certifies to the odometer reading entered above my signature in compliance with Federal law

**DEALER TRANSACTIONS ONLY**

14 Odometer now reads ⌞_⌟_⌞_⌟, ⌞_⌟_⌞_⌟ (no tenths) miles and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked **WARNING** - Mileage ☐ is not the actual mileage ☐ exceeds the odometer mechanical limits
**I declare under penalty of perjury under the laws of the State of California that the information entered on this application is true and correct**
R/S NUMBER

DATE — SIGNATURE OF AUTHORIZED AGENT X — PRINTED NAME OF AGENT — DEALER NAME — DEALER NUMBER

DATE — BUYER S SIGNATURE ACKNOWLEDGES ODOMETER READING X — PRINTED NAME OF BUYER OR AGENT — SALESPERSON S NUMBER

**SOLD THROUGH AUCTION IF APPLICABLE** — DATE OF AUCTION — AUCTION NAME — DEALER NUMBER

15 Odometer now reads ⌞_⌟_⌞_⌟, ⌞_⌟_⌞_⌟ (no tenths) miles and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked **WARNING** - Mileage ☐ is not the actual mileage ☐ exceeds the odometer mechanical limits
**I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct**
R/S NUMBER

DATE — SIGNATURE OF AUTHORIZED AGENT X — PRINTED NAME OF AGENT — DEALER NAME — DEALER NUMBER

DATE — BUYER S SIGNATURE ACKNOWLEDGES ODOMETER READING X — PRINTED NAME OF BUYER OR AGENT — SALESPERSON S NUMBER

16 Odometer now reads ⌞_⌟_⌞_⌟, ⌞_⌟_⌞_⌟ (no tenths) miles and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked **WARNING** - Mileage ☐ is not the actual mileage ☐ exceeds the odometer mechanical limits
**I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct**
R/S NUMBER

DATE — SIGNATURE OF AUTHORIZED AGENT X — PRINTED NAME OF AGENT — DEALER NAME — DEALER NUMBER

DATE — BUYER S SIGNATURE ACKNOWLEDGES ODOMETER READING X — PRINTED NAME OF BUYER OR AGENT — SALESPERSON S NUMBER

4337

# Isuzu Finance of America, Inc.                         Secured Promissory Note

| Borrower: | CIS International Holdings (N.A.) Corp. | Lender/Creditor: | **ISUZU FINANCE OF AMERICA, INC.** | Date: | 12/27/2022 |
| Address: | 1405 W. 178th Street | Address: | 2500 Westchester Ave., Suite 312 | | |
| | Gardena, CA 90248 | | Purchase, New York 10577 | | |
| | | | Attention: Operations | | |

| Year | Make | Model | Vehicle Identification Number | License Number (if applicable) | | Use For Which Purchased |
|------|------|-------|------------------------------|-------------------------------|---|-------------------------|
| 2021 | Isuzu | NPR-HD | 54DC4W1D7MS209733 | | ☒ NEW<br>☐ Demonstrator<br>☐ Other | ☒ BUSINESS OR COMMERCIAL |

Description of Vehicle's Body/Attachments:     16' Morgan Dry Van Body with Maxon Liftgate
Vehicle Body/Attachments Serial Numbers:
Gross Vehicle Weight:     14500
Address where Vehicle will be located:
Street Address:     2389 Air Park Road
City/State/Zip:     Rhinelander, WI 54501

Interest Rate:  6.77% per annum.

| | | |
|---|---|---|
| 1. Vehicle Cash Sales Price | | $62,490.00 |
| 2. Net Trade-in Less Liens | | $0.00 |
| 3. Cash Down Payment | | $6,500.00 |
| 4. Net Vehicle Cash Sales Price (1-2-3) | $55,990.00 | |
| 5. Other Taxable Charges (Explain) | $0.00 | |
| 6. Sales Tax | $3,456.20 | |
| 7. Registration/Title Fees | $834.08 | |
| 8. Other Charges | | |
|    Acquisition Fee | $250.00 | |
|    Documentation Fee | $795.00 | |
| 9. Total Itemized Charges (5 through 8) | | $5,335.28 |
| 10. Amount Financed (4 + 9) | | $61,325.28 |
| 11. Finance Charge | | $11,139.12 |
| 12. Other (Explain) | | |
| 13. Total Obligation (10+11+12) | | $72,464.40 |

Borrower agrees to pay the "Total Obligation" (Item 13) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | First Payment Date | Payment Amount | Total |
|---------------------|--------------------|----------------|-------|
| 60 | | $1,207.74 | $72,464.40 |

If shown below, Borrower has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Borrower agrees that Lender collects such fees and charges for the service provider only as an accommodation to Borrower and such agreements are not part of this Contract. The Lender is not responsible for any services, disposables or insurance obligations.

| Service | Term (mos.) | Total Charge |
|---------|-------------|--------------|
| | | |
| | | |

**Total Charge Is Included In "Vehicle Cash Sales Price"**

1.     **Promise to Pay and Interest.** The below-signed borrower, and if more than one, each below-signed borrower, jointly and severally (the "Borrower"), promises to pay in full the Total Obligation set forth in Item 13 above to Isuzu Finance of America, Inc. ("Lender") in lawful money of the United States of America, with interest thereon as herein provided, to be paid in the manner set forth herein. All interest due under the Loan Documents (as defined below) shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of days elapsed. Borrower agrees to pay an effective rate of interest that is the Interest Rate set forth on page 1 (the "Interest Rate"). Borrower shall also be liable for and shall pay when due any other charges or fees paid or to be paid in connection with the Loan Documents. In addition to the Total Obligation, Borrower agrees to pay all other amounts owed to Lender under this Note and the other Loan Documents (collectively with the Total Obligation, the "Indebtedness") when due. Payment of the Indebtedness shall be made to Lender at such place as Lender or its successor may designate from time to time in writing. Lender reserves the right to require payment on this Secured Promissory Note to be made by wired federal funds or other immediately available funds. "Loan Documents" shall mean this Secured Promissory Note (this "Note"); all other notes (or other instruments) made by, or other obligations of, Borrower to Lender; any guaranty(ies) of any payment or performance of the Indebtedness; and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note or the credit evidenced hereby, as any or all of such documents may be executed or amended from time to time.

2.     **Security Interest.** In order to secure payment of the Indebtedness and complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into (the "Secured Obligations"), Borrower hereby grants to Lender a security interest in and to the Vehicle and such other equipment and goods as are described above (collectively, the "Equipment"), together with all present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory loans, warranties, service contracts, documents, and records now or hereafter arising from the Equipment (collectively, the "Collateral"). Borrower authorizes Lender to file a financing statement, or a photocopy or other reproduction of this Note, or of any financing statement, to perfect its security interest. Principal shall bear interest at the Interest Rate from the date of disbursement until the applicable due date, whether due by acceleration or otherwise. Any payment due on a date which is a date when banking institutions are not open to the public under the laws of the State of New York shall be due on the next succeeding date on which such institutions are open. All Indebtedness not paid when due shall bear interest from the due date, until paid at a rate (the "Default Rate") which is the lesser of sixteen percent (16%) per annum or the maximum rate permitted under applicable law. Borrower is responsible for assuring that a lien on the Collateral in favor of the Lender is properly recorded on any title to the Collateral and that such lien remains in full force and effect until all amounts due Lender hereunder shall have been paid in full.

IFAI – Secured Prom Note                         1 of 4



3.     **Receipt and Application of Payments.** Payments shall not be deemed received by Lender until good funds are actually received by Lender. Payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Lender in cash or its equivalent, will be applied in reduction of the Secured Obligations in such order and manner as Lender may direct in its sole discretion, and Borrower irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Lender shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Lender's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

4.     **Prepayment.** So long as no Default or Event of Default shall have occurred and be continuing and Borrower shall have given Lender at least fourteen (14) days prior written notice, Borrower shall have the option to prepay this Note on any installment Due Date set forth on page 1 of this Note (or any accompanying schedule referred to on page 1 of this note) (each, an **"Installment Due Date"**) for an amount (the "Prepayment Amount") equal to (1) any unpaid Payment Amounts and all other amounts due on or before such Installment Due Date, plus (2) the principal outstanding on the books and records of the Lender on such Installment Due Date, plus (3) any applicable sales taxes. Payment of the Prepayment Amount, together with all other amounts due and owing by Borrower under the Note (including, without limitation, the scheduled Payment Amount) on or before the Installment Due Date, shall be made on the Installment Due Date in immediately available funds. If Borrower shall fail to pay all amounts required to be paid under the Note on the Installment Due Date, the Note shall continue in full force and effect and Borrower agrees to reimburse Lender for all reasonable attorney's fees, costs, expenses and liabilities incurred in connection therewith.

5.     **Late Charges.** If any payment of principal and interest or any other Indebtedness is not received in full by Lender within ten (10) days after its due date, then in addition to all other rights and remedies of Lender, a late charge equal to ten percent (10%) of the amount due and unpaid will be charged to Borrower or such lesser amount as shall be the maximum permissible late charge thereon. Such late charge shall be immediately due and payable upon receipt of written notice from Lender and constitute **"Indebtedness"** and a **"Secured Obligation"** under this Note.

6.     **No Counterclaims, Deductions, or Offsets.** All payments and obligations of Borrower under the Loan Documents will be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction.

7.     **Insurance and Risk of Loss.** All risk of loss, damage or destruction of the Equipment will at all times be on Borrower. Borrower will keep the Equipment insured at Borrower's expense against liability in an amount as required by Lender or, if in excess thereof, the amount required under applicable law, and loss or damage by fire, theft and other customary risks for the greater of the Equipment's full insurable value or the Indebtedness, with a deductible not to exceed $2,500 per item of Equipment, or such lesser amount as shall be required by applicable law. Coverage and insurer will be subject to Lender's reasonable approval. Each policy shall name Lender as loss payee and will further provide that Lender's interest can not be invalidated by any act, omissions or neglect of any party other than Lender and that the insurer will give Lender thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Borrower or insurer. Borrower will promptly deliver a copy of each policy or an insurance certificate acceptable to Lender prior to any advancement of funds hereunder, and will later provide proof of renewal at least 30 days prior to expiration or cancellation. If Borrower fails to so insure the Equipment, Lender may purchase such insurance at Borrower's expense, the purchase of which need not include liability or protection of Borrower's interest. Borrower hereby authorizes and irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution, to execute and endorse all documents, checks, or drafts in Borrower's name and to submit any proof of loss to collect such insurance.

8.     **Borrower's Representations, Warranties, and Agreements.** Borrower represents, warrants, and agrees that: (a) this Note evidences a loan obtained by it, and the Equipment is to be used by it, solely for business or commercial purposes; (b) prior to signing this Note, Borrower read and understood the provisions hereof, and agrees to all the terms and conditions contained herein; (c) except for the security interest granted to Lender, the Collateral will remain free from all liens and security interests; (d) all information supplied by Borrower in any financial, credit, or accounting statement to Lender is and will be true, correct and genuine, and Borrower consents to the Lender's prior review of Borrower's credit reports prior to the date of this Note and to the ongoing review of Borrower's credit reports during the term of the credit evidenced by this Note; (e) Borrower has full authority to borrow the credit evidenced by this Note for the purposes provided for herein and to enter into each Loan Document to which it is a party, and in so doing it is not violating any law, regulation or agreement; and (f) Borrower has duly executed and delivered this Note and has taken all necessary and appropriate actions to make each Loan Document to which it is a party binding and enforceable against Borrower in accordance with its terms. Borrower covenants and agrees that: (i) it shall not allow a Blocked Person to have an ownership interest in or control of Borrower, (ii) it shall defend at its own cost any action, proceeding or claim affecting the Collateral; (iii) it shall maintain each item of the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and any warranties; (iv) it shall promptly pay all taxes, assessment, license fees and other public or private charges when levied against the Collateral or any Loan Document; (v) it shall obtain a certificate of title on each item of Equipment showing Lender's first priority security interest and preserve and perfect Lender's security interest, such that such security interest shall at all times be a first priority perfected security interest subject to no other liens or encumbrances by authorizing Lender to file financing statements covering the Collateral and also execute any required financing statements; (vi) it shall not misuse, secrete, sell, rent, encumber or transfer any item of Equipment; (vii) that Lender may enter any premises at any reasonable time to inspect the Equipment; (viii) it shall provide Lender with quarterly and annual financial statements upon request of Lender; and (ix) it shall reimburse Lender immediately after written notice for any expenses incurred by Lender in enforcing Borrower's obligations under any Loan Document. [As used herein, the term "Blocked Person" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) a person or entity whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law.]

9.     **Events of Default:** Each of the following shall be an event of default under this Note and the other Loan Documents (an **"Event of Default"**): (a) failure by the Borrower, or any other person (each, a **"Loan Party"**; and collectively with the Borrower, the **"Loan Parties"**) that from time to time is obligated to Lender under any of the Loan Documents, to pay when due (i) any amount due by such Loan Party under any of the Loan Documents, or (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or indebtedness of any kind; (b) failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to such Loan Party, in any of the Loan Documents and such obligation or term or condition remains unsatisfied after ten (10) days' written notice to such Loan Party; (c) the breach of any covenant, or any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party to Lender in obtaining or hereafter in connection with the credit evidenced by this Note is materially incomplete, incorrect, or misleading as of the date made or delivered; (d) any Loan Party (i) is unable or admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors or (iii) applies for or acquiesces in the appointment of a trustee, receiver, or other custodian for such Loan Party or any of the property of such Loan Party or a trustee, receiver or other custodian is appointed for such Loan Party or any of the property of such Loan Party; (e) commencement of any insolvency or bankruptcy proceeding, or any similar proceeding under any federal, state, local, or foreign law by or against any Loan Party; (f) the death, incompetence, dissolution, or liquidation of any Loan Party; the consolidation or merger of any Loan Party with any other person or entity; or the taking of any action by any Loan Party toward a dissolution, liquidation, consolidation, or merger; (g) any Loan Party or any other person on behalf of any Loan Party claims that any Loan Document or any lien or security interest in any of the Collateral is not legal, valid, binding, or enforceable against any Loan Party, or that that the priority of any lien or security interest securing any of the Secured Obligations is different than the priority represented and warranted in the Loan Documents; (h) any of the Collateral is lost or destroyed; (i) Lender in good faith believes that the prospect of payment or performance hereunder is impaired; (j) there shall be a material change in the management, ownership or control of any Loan Party; (k) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder collectively be referred to as **"Governmental Authority"**); (l) if anyone in the control, custody or possession of any Collateral or any Loan Party is accused, alleged or charged

4337

(whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (m) the occurrence of any condition or event that is a default or is designated as a default or event of default or an "Event of Default" under any other Loan Document or in any other agreement, contract, or Indebtedness of any Loan Party to Lender.

10.     **Rights and Remedies of Lender.** Upon the occurrence of an Event of Default, Lender may, at its option, and without demand or notice: (a) declare the Indebtedness to be immediately due and payable, whereupon all of the Indebtedness shall be immediately due and payable; (b) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower; (c) require Borrower to make the Collateral available to Lender at a place to be designated by Lender; (d) at the expense of Borrower, make repairs to any item of Equipment deemed necessary by Lender; and (e) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses) shall be applied to the Indebtedness or any other indebtedness of Borrower to Lender and any surplus remaining thereafter shall be paid to Borrower or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Lender may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Lender and its successors and assigns. No liability shall be asserted or enforced against Lender under this section except for Lender's intentional wrongful acts. Lender may in its sole discretion waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default. Delay, discontinuance, or failure to exercise any remedy shall not be a waiver of such remedy or of any other right or remedy of Lender, or of the TIME IS OF THE ESSENCE provision. To the extent permitted under applicable law, Borrower expressly consents to and authorizes a court with jurisdiction to issue, by hearing without notice, such orders as may be necessary to enforce the terms of this Note, granting to Lender such powers as Lender shall need to enforce this Note. Any such court is directed to not require a bond of Lender, the parties agreeing that time is of the essence to protect Lender. To the extent permitted under applicable law, Borrower expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Lender existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Note (or to such other address as provided in writing by Borrower) by registered or certified mail at least five (5) days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Borrower.

11.     **Transfer or Assignment.** Lender may at any time transfer its rights and/or delegate its obligations under the Loan Documents or otherwise negotiate this Note in whole or in part, without any notice to or the consent of any Loan Party. The rights and obligations of Borrower may not be assigned or delegated.

12.     **Binding Effect.** This Note shall be binding upon Borrower and inure to the benefit of Lender and its successors and assigns. In addition and as permitted under applicable law, NO LOAN PARTY SHALL ASSERT AGAINST ANY ASSIGNEE OR TRANSFEREE OF LENDER ANY CLAIMS OR DEFENSES SUCH LOAN PARTY MAY HAVE AGAINST LENDER.

13.     **Collection Costs and Other Costs, Expenses and Fees.** In addition to the principal, interest, and late payment charges (if any), Borrower shall pay Lender on demand, and Lender shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Lender's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed. If this Note is terminated for any reason prior to the expiration of the original Term, then Borrower shall pay to Lender $300.00 on demand for processing the early termination. All such costs, expenses, and fees shall constitute "**Indebtedness**" and "**Secured Obligations**" and shall be payable on demand.

14.     **Usury; Partial Invalidity.** At no time shall the interest rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for the type of loan evidenced hereby. Should Lender ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the outstanding principal balance of the loan evidenced hereby.

15.     **Severability.** If any provision of any of the Loan Documents is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected.

16.     **Choice of Law.** The Loan Documents (including all matters of construction, validity, performance and the creation, validity, enforcement or priority of the lien of, and security interests created by, this Note in or upon the Collateral) and all related controversies shall be governed in all respects by, and construed in accordance with, the laws of the State of New York, without reference to conflicts of law (other than Section 5-1401 of the New York General Obligations Law), except as required by mandatory provisions of law and except to the extent that the validity or perfection of the lien and security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17.     **Notices and Demands.** All demands or notices under the Loan Documents shall be in writing (including, without limitation, telecopy or facsimile - receipt confirmed) and mailed, telecopied, or delivered to the address specified on page 1 of this Note or in writing by the party to which such notice is given. Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested. Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee, or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

18.     **Rescission or Return of Payments.** If at any time or from time to time, whether before or after payment and performance of the Indebtedness in full, all or any part of any amount received by the Lender as payment of any Indebtedness, must or is claimed to be subject to avoidance, rescission, or return to Borrower or any other party for any reason whatsoever, such Indebtedness and any liens, security interests, and other encumbrances that secured such Indebtedness at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

19.     **Waivers.** Borrower hereby (a) waives, to the fullest extent permitted under applicable law, the right to assert any statutes of limitations as a defense to any of the Indebtedness, (b) waives, to the fullest extent permitted under applicable law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents), and (c) agrees that Lender may enforce this Note and any other Loan Document against Borrower without first having sought enforcement against any other Loan Party or any Collateral securing the Indebtedness.

    BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH LENDER, BORROWER OR ANY LOAN PARTY MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY, AND BORROWER ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

4337

20.    **Power of Attorney.** Borrower grants Lender a power of attorney to correct obvious errors and fill in such blanks as serial numbers, date of first payment and similar provisions, for registering, transferring, titling, or perfecting Lender's interest in the Equipment and for obtaining repossession certificates of title with respect to the Equipment. Such power of attorney is coupled with an interest, is delegable to an agent, and is irrevocable during the term of the credit evidenced by this Note. **Borrower agrees that a photocopy of this Note shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to act pursuant to this and any other power of attorney granted hereby.**

21.    **Miscellaneous.** The Loan Documents constitute the entire agreement and understanding of Lender and Borrower and supersede all prior agreements. No provision of any Loan Document can be amended, waived, discharged, or terminated except in writing executed by the parties thereto. Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lender to require that subsequent payments be made when due, or the right of Lender to declare an Event of Default if subsequent payments are not made when due. Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing. This Note may be authenticated in one or more counterparts each of which when authenticated shall be deemed an original but all of which together shall constitute one and the same instrument. This Note may: (i) take electronic form (constituting an "Electronic Document") pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act and/or other applicable law, if generated and stored within a secure electronic medium approved by Lender designed for creating and facilitating transactions entered into using so-called "electronic signatures", (ii) take paper form bearing an ink signature, (iii) take the form of a photocopy of such a paper form, (iv) be delivered in PDF or other fixed-file format, (v) be an electronic facsimile, or (vi) be in any other format deemed acceptable by Lender. Each version of this Note originally authenticated in paper form shall constitute a "Counterpart", and must constitute a true, complete, faithful and legible representation hereof. Borrower agrees that all signatures transmitted by facsimile, email or other electronic means, including, but not limited to, Electronic Documents and Counterpart(s) (as applicable) shall be deemed binding and effective for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Borrower in accordance with its terms in any and all appropriate forums. Lender may choose to authenticate a Counterpart(s) in writing, through the use of a stamp, or through some other means selected by Lender. (In no event shall any acceptance or acknowledgment be deemed to constitute an indorsement hereof without express use of words to that effect.) **Notwithstanding anything contained herein to the contrary, the version of this Note bearing Lender's original signature, or, if the Note is fully executed electronically, the authoritative copy as defined by the Uniform Commercial Code, shall constitute the sole record of "chattel-paper" for Code purposes. Perfection by possession (control) of same may only be accomplished by: (i) maintaining possession and control of the Counterpart of this Note authenticated by a duly authorized representative of Lender and not otherwise marked "customer copy" (or words to that effect) or (ii) maintaining, as provided in Article 9 of the Uniform Commercial Code, control of the single authoritative copy of this Note, if in the form of an Electronic Document.** _TIME IS OF THE ESSENCE IN THIS NOTE AND THE OTHER LOAN DOCUMENTS._

**BORROWER HEREBY CERTIFIES, UNDER PENALTY OF PERJURY, THAT ONE HUNDRED PERCENT (100%) OF THE USE OF THE EQUIPMENT IS TO BE IN A TRADE OR BUSINESS OF BORROWER AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

_**SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY**_

**Borrower:**
CIS International Holdings (N.A.) Corp.

X_____
Signature
Charitha Samarasinghe /CEO
Printed Name and Title(s)
__12/28/22_____
Date

**Lender:**
ISUZU FINANCE OF AMERICA, INC.
            (Not an indorsement)
By:_____
                    (Duly Authorized)

**Co-Borrower [IF APPLICABLE]:**

_____
Signature
_____
Printed Name and Title(s)
_____
Date

**Lender's Name & Mailing Address:**
ISUZU FINANCE OF AMERICA, INC.
Address:  2500 Westchester Ave., Suite 312
                Purchase, New York   10577
                Attention: OPERATIONS

**Borrower(s) Name & Address:**
Legal Name(s):    CIS International Holdings (N.A.) Corp.
Street Address (Place of Business):    2389 Air Park Road, Rhinelander, WI 54501          County: _____
Mailing Address:    1405 W. 178th Street, Gardena, CA  90248
Telephone: ▓▓▓▓▓_____    Fax: _____          State of [Formation/Residence]:    California
                                                    Organization Type:    Corporation

## Delivery and Acceptance Certificate

On _12/28/22_____ (the "**Date of Acceptance**"), each item of Equipment listed in this Note was delivered to Borrower, in conjunction with Borrower's purchase of the Equipment, and Borrower acknowledges its receipt and irrevocable acceptance of each item of the Equipment. Borrower represents and warrants to Lender that Borrower has: accepted delivery of and inspected each item of Equipment; determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception. Borrower understands and acknowledges that Lender is entering into the Loan Documents based on Borrower's representation and warranty that Borrower will pay in full to Lender all payments when due as required by the Loan Documents. Borrower also represents and warrants to Lender that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Loan Documents has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Borrower in the Loan Documents are correct and complete as though made on and as of the date of this Note.

**Borrower's Initials:** X CS        **[Co-Borrower's Initials:** _____ ]

IFAI – Secured Prom Note                              4 of 4

PURCHASE OF LOAN CONTRACT

This Purchase of Loan Contract (this "Purchase Contract") is executed pursuant to the Master Loan and Sale and Assignment Agreement dated as of May 16, 2007 (the "Agreement"), by and between ISUZU FINANCE OF AMERICA, INC., as Assignor, and TOKYO CENTURY (USA) INC., as Assignee.

This Purchase Contract is dated, and the assignment described below is effective, as of the date set forth below and hereby expressly incorporates the terms and conditions of the Agreement.

| | | |
|---|---|---|
| 1. | Dealer | Isuzu Truck Of La Crosse |
| 2. | Obligor (Borrower) | CIS International Holdings (N.A.) Corp. |
| 3. | Guarantor | |
| 4. | Date of (Loan) Contract | 12/27/2022 |
| 5. | Contract Documents (See Schedule A) | |
| 6. | Total Invoice Cost (Amount Financed) | $61,325.28 |
| 7. | Payments to be due under Purchase Contract | |
| | (a) Term | 60 |
| | (b) Amount of each payment | $1,207.74 |
| | (c) Balloon Payment | $1,207.74 |
| 8. | Consideration (6) | $61,325.28 |
| 9. | Acquisition Fee to Assignee (TCUSA) | $250.00 |
| 10. | Referral Fee | $700.00 |
| 11. | Dealer Markup | $2,387.28 |
| 12. | Purchase Amount (8-9+10+11) | $64,162.56 |

Date of Execution:   December 30, 2022

ASSIGNOR:  ISUZU FINANCE OF AMERICA, INC.

By:        _____
Name:   _____
Title:      _____

ASSIGNEE:  TOKYO CENTURY (USA) INC.

By:        _____
Name:   _____
Title:      _____

# WISCONSIN

**MAILING LABEL ONLY**

0000511
ISUZU FINANCE OF AMERICA, INC
3268 PROGRESS WAY / BLDG  12
WILMINGTON, OH 45177

Amount Received  $      00

MAILING LABEL ONLY

## WISCONSIN CERTIFICATE OF TITLE

| Vehicle Identification Number | | Year | Make | | | |
|---|---|---|---|---|---|---|
| 54DC4W1D7MS209733 | | 2021 | ISUZU | | | |

| Title Number | Issue Date | Chassis Type | Odometer Reading | Odometer Status | | Odometer Date |
|---|---|---|---|---|---|---|
| T5260L305001-9 | 09/17/2025 | TRUK | 189 | ACTUAL | | 12/27/2022 |

| Product Number | Body Style | Color | | Fleet No |
|---|---|---|---|---|
| 77381223600 | STRAIGHT TRUCK | WHITE | | |

**Titled Owner(s)**

CIS INTERNATIONAL HOLDINGS NA CORP
2389 AIR PARK RD
RHINELANDER, WI 54501-8426

**LENDER Certifies Release of Lien**

Lien holder _____
Title _____
Printed name _____
Signature _____
Date _____

The person firm or corporation named on this Title is the lawful owner of the vehicle described subject to any Security Interest (liens) shown  The order in which the Lien Holders appear on this Title does not necessarily represent their priority  The Wisconsin Department of Transportation will not be responsible for false or fraudulent odometer statements made in the assignment of the Certificate of Title or for errors in reporting mileage  brand disclosures or the history of the vehicle  The department has no actual knowledge about the history of the vehicle and makes no warranty that the title brands or mileage disclosures on prior titles have been carried forward onto this document                                                                                                        54DC4W1D7MS209733

**Lien Holder(s)**

00113149    ISUZU FINANCE OF AMERICA INC, PURCHASE

**Additional Vehicle Detail**

**SELLER**  When the vehicle is sold, complete the ASSIGNMENT OF CERTIFICATE OF TITLE on the top back of this title and deliver the title to the purchaser with the vehicle  You may wish to retain a copy of this title with the purchaser s information and signature as proof of sale for your records

**PURCHASER**  Apply for a new title with the Wisconsin Division of Motor Vehicles immediately  To legally operate this vehicle, you are required to register it with the Division of Motor Vehicles

**MAIL ADDRESS**
Wisconsin Department of Transportation
PO Box 7949 Madison WI 53707 7949
981

24 - 2 - 8302051

**QUESTIONS**
Contact the Division of Motor Vehicles at
414 266-1000 608 264 7447
wisconsindmv gov
113149

**KEEP IN SAFE PLACE**                    **DO NOT KEEP IN VEHICLE**

*This document void without watermark — Hold to light to view*
*Any alteration, correction (fluid) or erasure voids this title*

## ASSIGNMENT OF CERTIFICATE OF TITLE
1/2023

The **seller is required** to state the mileage and provide written vehicle disclosure in connection with the transfer of ownership  Failure to complete a mileage statement or providing a false mileage statement  disclose required information  or providing a false statement may result in fines and/or imprisonment and may make you liable for damages to the purchaser  See Federal 49 USC and Ch  342 Wisconsin laws

I  the seller  certify that to the best of my knowledge the information contained on this document is true and correct and that I have entered the vehicle odometer reading brand disclosure  and selling price in compliance with federal and state law as referenced above  For value received  I sell  assign or transfer the vehicle described on this document and warrant title to purchaser

**1**

**ODOMETER NOW READS** (No Tenths) and to the best of my knowledge is actual mileage of this vehicle unless one of the following statements is checked

☐ The odometer reading reflects the amount of mileage in excess of its mechanical limit

☐ The odometer reading is NOT actual mileage  WARNING ODOMETER DISCREPANCY

**BRAND DISCLOSURE** (will be printed on future titles) Check all that apply

☐ Salvage vehicle   ☐ Flood damaged   ☐ Hail damaged   ☐ Previous police vehicle   ☐ Previous taxicab

Selling Price

| Print Purchaser Name | Print Seller Name |
|---|---|
| Print Purchaser Address  City  State  ZIP Code | Print Seller Address  City  State  ZIP Code |
| Signature of Purchaser                    Date <br> X <br> X | Signature of Seller(s)  See below                    Date <br> X <br> X |

## Sections 2-3 For Dealer Use Only
Dealer  Photocopy front and back for your records  Federal  49 CFR 580 8

Seller(s)  If joint ownership  with  or  only one seller s signature is required  with  and  all sellers signatures are required

**2**

| Print Consigning Auction Dealer Name or Consigning Salvage Pool (If Applicable) | Auction or Salvage Pool Dealer No | Sale Date |
|---|---|---|

**ODOMETER NOW READS** (No Tenths) and to the best of my knowledge is actual mileage of this vehicle unless one of the following statements is checked

☐ The odometer reading reflects the amount of mileage in excess of its mechanical limit

☐ The odometer reading is NOT actual mileage  WARNING ODOMETER DISCREPANCY

**BRAND DISCLOSURE** (will be printed on future titles) Check all that apply

☐ Salvage vehicle   ☐ Flood damaged   ☐ Hail damaged   ☐ Previous police vehicle   ☐ Previous taxicab   ☐ Manufacturer buyback

| Print Purchaser Name | Print Selling Dealer Name |
|---|---|
| Print Purchaser Address  City  State  ZIP Code | Print Seller Address  City  State  ZIP Code |
| Print Name of Purchaser s Authorized Agent Signing Below | Print Name of Selling Dealer s Authorized Agent Signing Below |
| Signature of Purchaser s Authorized Agent                    Date <br> X | Signature of Selling Dealer s Authorized Agent                    Date <br> X |

**3**

| Print Consigning Auction Dealer Name or Consigning Salvage Pool (If Applicable) | Auction or Salvage Pool Dealer No | Sale Date |
|---|---|---|

**ODOMETER NOW READS** (No Tenths) and to the best of my knowledge is actual mileage of this vehicle unless one of the following statements is checked

☐ The odometer reading reflects the amount of mileage in excess of its mechanical limit

☐ The odometer reading is NOT actual mileage  WARNING ODOMETER DISCREPANCY

**BRAND DISCLOSURE** (will be printed on future titles) Check all that apply

☐ Salvage vehicle   ☐ Flood damaged   ☐ Hail damaged   ☐ Previous police vehicle   ☐ Previous taxicab   ☐ Manufacturer buyback

| Print Purchaser Name | Print Selling Dealer Name |
|---|---|
| Print Purchaser Address  City  State  ZIP Code | Print Seller Address  City  State  ZIP Code |
| Print Name of Purchaser s Authorized Agent Signing Below | Print Name of Selling Dealer s Authorized Agent Signing Below |
| Signature of Purchaser s Authorized Agent                    Date <br> X | Signature of Selling Dealer s Authorized Agent                    Date <br> X |

**NO additional dealer reassignments permitted**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  15910 Ventura Blvd., 12th Floor, Encino, California 91436

A true and correct copy of the foregoing document described as **MOTION FOR EXAMINATION UNDER RULE 2004; DECLARATION OF ANGELA N. GILL AND TITO CABRERA IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 16, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL** (indicate method for each person or entity served)**:**
On **July 16, 2026,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 16, 2026,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

<u>Judge's Copy</u>
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| July 16, 2026 | Sanaz Adnani | */s/ Sanaz Adnani* |
| *Date* | *Type Name* | *Signature* |

9

MOTION FOR RULE 2004 EXAMINATION

## NOTICE OF ELECTRONIC FILING (NEF):

- **Ismail Amin**    iamin@talglaw.com, pgilmore@talglaw.com; kvescera@talglaw.com; shalberstadt@talglaw.com; cstark@talglaw.com; ckim@talglaw.com; eavakian@talglaw.com; knarh@talglaw.com; kmeade@talglaw.com; kanderson@talglaw.com
- **Christopher Beyer**    cab@replevin.com, ecf@writofseizure.com
- **Michael D Breslauer**    mbreslauer@swsslaw.com, sdurazo@swsslaw.com
- **Steve Burnell**    Steve.Burnell@gmlaw.com, sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com;patricia.dillamar@gmlaw.com;CourtMail@gmlaw.com
- **Richard P Cook**    richard@capefeardebtrelief.com
- **Caroline Djang**    cdjang@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com
- **Dennis A Dressler**    ddressler@dresslerpeters.com
- **James R Felton**    jfelton@gblawllp.com, ystotland@gblawllp.com;msingleman@gblawllp.com
- **David M Goodrich (TR)**    dgoodrich@go2.law, c143@ecfcbis.com;dgoodrich11@ecf.axosfs.com;lrobles@go2.law
- **Michael Jones**    michael.jones4@usdoj.gov
- **Raffi Khatchadourian**    raffi@hemar-rousso.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Byron Z Moldo**    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com,scarson@ecjlaw.com
- **Christopher S Murphy**    bk-cmurphy@oag.texas.gov
- **Scott Olson**    solson@seyfarth.com, chidocket@seyfarth.com
- **Kurt Ramlo**    RamloLegal@gmail.com, kr@ecf.courtdrive.com;ramlo@recap.email
- **Patrick J Schurr**    patrick.schurr@solidcounsel.com
- **Amitkumar Sharma**    amit.sharma@aisinfo.com
- **Chase Aleksander Stone**    cstone@ecjlaw.com, aantonio@ecjlaw.com, dperez@ecjlaw.com, scarson@ecjlaw.com, elivermore@ecjlaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Cranston J Williams**    cwilliams3@socalgas.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

## SERVICE LIST BY U.S. MAIL:

CIS International Holdings (N.A.) Corporation
Attn: President, Charitha Samarasinghe
1405 W. 178th Street
Gardena, CA 90248

Lauren T Attard
Baker & Hostetler LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067

Ervin Cohen & Jessup LLP
Attn: Byron Z. Moldo
9401 Wilshire Blvd., 12th Floor
Beverly Hills, CA 90212

Panthers Capital LLC
Benjamin Isaacov, CEO & President
9 W Broad St, Suite 320
Stamford, CT 06902

10

MOTION FOR RULE 2004 EXAMINATION